EXHIBIT F

Fernando Gaytan (SBN 224712) fgaytan@lafla.org
Paul J. Estuar (SBN 167764) pestuar@lafla.org
Shayla R. Myers (SBN 264054) smyers@lafla.org
**LEGAL AID FOUNDATION OF LOS ANGELES**
7000 S. Broadway
Los Angeles, CA 90003
Tel:   (213) 640-3831
Fax:   (213) 640-3988


Paul L. Hoffman (SBN 71244)
Catherine Sweetser (SBN 271142) catherine.sdshhh@gmail.com
**SCHONBRUN DeSIMONE SEPLOW HARRIS & HOFFMAN, LLP**
723 Ocean Front Walk, Suite 100
Venice, CA 90291
Tel: (310) 396-0731
Fax: (310) 399-7040

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| LOS ANGELES CATHOLIC WORKER, an unincorporated association; CANGRESS, a non-profit corporation; HARRY JAMES JONES, LOUIS GRADY, LLOYD HINKLE, WALTER SHOAF, individuals<br><br>Plaintiffs,<br><br>vs.<br><br>LOS ANGELES DOWNTOWN INDUSTRIAL DISTRICT BUSINESS IMPROVEMENT DISTRICT, CENTRAL CITY EAST ASSOCIATION, INC., CITY OF LOS ANGELES; DOES 1 -10<br><br>Defendants. | Case No.<br><br>**COMPLAINT: CIVIL RIGHTS**<br><br>**42 U.S.C. § 1983 AND FOURTH, FIFTH AND FOURTEENTH AMENDMENTS**<br><br>**CALIFORNIA CONSTITUTION ARTICLE I, §§ 7 AND 13**<br><br>**CALIFORNIA CIVIL CODE §§ 52, 52.1**<br><br>**CONVERSION**<br><br>**TRESPASS TO PROPERTY** |

## JURISDICTION AND VENUE

1.      This is an action for injunctive relief and damages pursuant to 42 U.S.C. § 1983, based upon ongoing violations by the defendants of the rights secured to plaintiffs by the Fourth, Fifth and Fourteenth Amendments of the United States Constitution. Jurisdiction exists based on 28 U.S.C. §§ 1331 and 1343 in that this case is brought pursuant to 42 U.S.C. § 1983 and raises questions of federal constitutional law. The court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

2.      Venue is proper in the Central District in that the events and conduct complained of in this action occurred in the Central District.

## PRELIMINARY STATEMENT

3.      The City of Los Angeles is currently enjoined from seizing property from homeless people in violation of their Fourth and Fourteenth Amendment rights. *See Lavan v. City of Los Angeles*, 797 F. Supp. 2d 1005 (C.D.Cal. 2011) *affirmed by Lavan v. City of Los Angeles*, 693 F.3d 1022 (9th Cir. 2012).  This is the third time in the past thirty years that the Court has restrained the City of Los Angeles from seizing homeless people's property in the Skid Row area of Downtown Los Angeles. *See also Adam Young Bennion v. City of Los Angeles*, C637718 (LA Sup. Ct., February 25, 1987); *Justin v. City of Los Angeles*, CV 00-12352 LGB (C.D.Cal. 2001) (AIJx).)  The current injunction against the City is the result of explicit holdings by both the District Court and the Ninth Circuit Court of Appeals that it is a violation of the Fourth and Fourteenth Amendments to seize a homeless person's property that is not abandoned, or to seize abandoned property without notice or due process. *Lavan*, 797 F. Supp. 2d at 1020; *Lavan v. City of Los Angeles*, 693 F.3d at 1030.

4.      Despite clear language from the Court that such behavior is unconstitutional, the Los Angeles Downtown Industrial District Business Improvement District, a special assessment district created by the City of Los

Angeles pursuant to California Streets and Highways Code § 36600, and its agent, the Central City East Association, with cooperation and participation by the City of Los Angeles, have engaged in a long-running campaign to seize homeless people's unattended property.  BID officers take property they have no reason to believe is abandoned or creating a health and safety risk.  They do so with no notice of any kind to individuals that their property will be taken.  By design, the seizures serve no purpose other than to make life even harder for homeless residents in the BID, and individuals who live on the street cannot reasonably predict when their property will be taken or prevent it from happening.  These actions are in clear violation of individuals' rights under the United States Constitution.

5.      In the face of these violations, yet another group of plaintiffs is forced to come before a Court to seek protection against these violations and the conditions created by defendants because of the seizure of their possessions.

6.      Plaintiffs are four homeless individuals and two organizational plaintiffs who live or operate in the area of Los Angeles known as Skid Row, which is largely encompassed by the Los Angeles Downtown Industrial District (LADID). It also has one of the largest concentrations of homeless people in the area as well as one of the largest concentrations of service providers that provide food, shelter, and other services to homeless people in the area.

7.      Like many other homeless individuals in Skid Row, the plaintiffs keep all of their worldly possessions with them during the day and use blankets and tents to shelter themselves at night.  Although they each attempt to stay with their property as much as possible during the day, it is virtually impossible for them to stay in one place at all times, or to take their possessions with them wherever they go.  They have no choice but to leave their property unattended to get food, use the restroom, attend court proceedings, and get medical treatment for ailments that are by all accounts made worse by their life on the streets.  Defendants are aware that

homeless people must leave their property unattended at times during the day to attend to the necessities of life.

8.      When plaintiffs do leave their property, they risk having their property seized by the LADID and the CITY, which with no notice and seemingly at random, seize homeless people's unattended but clearly not abandoned property. Over the course of the last two years, the individual plaintiffs have all had their property seized by LADID's public safety officers who are performing municipal services in the LADID.  In each instance, the plaintiffs' property was neatly packed up, and plaintiffs were gone for only a short period of time.  When they returned, they each found their property had been seized.  They had no way of knowing their property would be taken when they were gone, and they had no way to prevent it. In one instance, one of the plaintiffs left a sign on his property, as he was told to do by the BID, stating that his property was not abandoned, yet his property was taken none-the-less.

9.      When their property is taken, individuals are often not given notice where their property is taken or how to retrieve it.  When they do discover that their property is being held at a storage facility, they are then forced to retrieve it from the facility, which is located more than a half mile away from where many homeless people stay.  What was hauled away in a truck, plaintiffs must then carry back, unassisted, to the place where they reside.  In the heat of the day or for individuals with mobility issues or health problems, this is a nearly impossible task.  It is made even more difficult because defendants seize and will not return any shopping carts used by individuals to cart or store their property or which were used as ambulatory assistance.  This includes carts given to people by the Los Angeles Catholic Worker specifically for this purpose.

10.     These BID officers, acting under color of law, seize this property in accordance with the LADID's policy of taking unattended property in the BID. The CITY has conspired with LADID and participated in and ratified these actions.

Case 2:14-cv-07344-PSG-AJW   Document 60-2   Filed 12/08/15   Page 6 of 128   Page ID
Case 2:14-cv-07344   Document 1   Filed 09/19/14   Page 5 of 32   Page ID #:5
#:569

1  Together, the LADID and the CITY have deprived the individual plaintiffs of their
2  property, in complete disregard of plaintiffs' Fourth and Fourteenth Amendment
3  rights and in direct contravention of the Ninth Circuit's mandate in *Lavan* to ensure
4  that these rights are protected.  Defendants are doing so as part of an ongoing
5  campaign to make the streets less hospitable to the homeless residents of Skid
6  Row, and as a result of these seizures, which plaintiffs cannot predict or prevent,
7  they are more hesitant to leave their property during the day to seek medical care,
8  get case management, attend court hearings, or even get food or perform personal
9  tasks.

**PLAINTIFFS**

11      11.    Plaintiff Los Angeles Catholic Worker (LACW), founded in 1970, is
12  an unincorporated lay Catholic community of women and men providing services
13  to homeless residents of Skid Row since its founding. Each week LACW provides
14  free meals to as many residents as resources allow.  They provide these meals at
15  their building on the corner of 6th Street and Gladys Avenue, which is nicknamed
16  the "Hippie Kitchen" and is located in the area covered by the Los Angeles
17  Downtown Industrial District Business Improvement District.  In addition to
18  providing meals through the Hippie Kitchen, LACW provides hospice care for the
19  dying, operates a dental clinic, and provides much-needed foot care to homeless
20  people who spend significant time on their feet, often in worn and ill-fitting shoes.
21  LACW provides toiletries, over-the-counter medications, and other tangible items
22  to people in need.

23      12.    LACW also provides shopping carts to homeless residents of Skid
24  Row.  The carts are loaned to homeless individuals who use the carts to move and
25  store their personal possessions and as assistance for the many individuals in Skid
26  Row with ambulatory disabilities. LACW purchases the bright red carts with their
27  name embossed on the handle, and places laminated signs indicating they are
28  "Shopping Carts for the Homeless".  The signs are attached in accordance with

5

Case 2:14-cv-07344-PSG-AJW   Document 60-2   Filed 12/08/15   Page 7 of 128   Page ID
Case 2:14-cv-07344   Document 1   Filed 09/19/14   Page 6 of 32   Page ID #:6
#:3569

1   Business and Professions Code § 22435.1 and provide notice to law enforcement

2   and others, including the LADID officers that the shopping cart is owned by Los

3   Angeles Catholic Worker and used with permission by homeless individuals in

4   Skid Row.

5        13.    As a result of the policies and the practices of the LADID, CCEA and

6   the CITY to illegally seize people's property, including their shopping carts, the

7   LACW has had to expend worker time and resources to get their carts back from

8   the LADID.  In addition, because carts are rarely returned after being seized by the

9   BID officers, LACW has had to replace these carts.  LACW has also had to replace

10  toiletries and other tangible items that are taken when property is seized.  These

11  expenditures have diverted resources from other activities.  In addition,

12  defendants' illegal policies and practices have frustrated LACW's mission of

13  providing food and services to homeless residents of Skid Row.  Defendants'

14  policies of seizing unattended property make it more difficult for people to leave

15  their belongings when they seek services in Skid Row, including getting food from

16  the Hippie Kitchen.  Finally, these policies have frustrated LACW's mission of

17  ensuring that that homeless people are treated with dignity and respect by, among

18  other things, disrespecting their rights and creating a hostile environment for

19  homeless people living in Skid Row.

20       14.    Plaintiff CANGRESS, aka The Los Angeles Community Action

21  Network ("LA CAN") is a grassroots, non-profit organization operating and

22  organized under the laws of the State of California.  Its members include over 800

23  poor people in Skid Row, many of whom are homeless residents in Skid Row. The

24  organization's main purpose is to organize and empower community residents to

25  work collectively to address systemic poverty and oppression in their community.

26  Since its founding in 1999, LA CAN has operated as the only member-driven

27  organization in Skid Row whose goal is to protect the rights and prevent the further

28  disenfranchisement of homeless and poor people in Los Angeles.  LA CAN brings

this action on behalf of its members whose property has been seized by BID officers as part of defendants' policies and practices of seizing unattended property in Skid Row.

15.     Plaintiff Harry James Jones is a 63-year-old disabled Vietnam War veteran who suffers from chronic medical conditions such as high blood pressure, glaucoma, diabetes, and PTSD.  He was homeless for nearly 40 years, since he was honorably discharged from the Marine Corps in 1975.  He resided in the Skid Row area for most of that time.  Mr. Jones has had all of his personal property seized by LADID officers on at least three occasions.  Each time, the BID officers failed to leave him notice that his property was taken, and as a result, he was unable to retrieve his property.

16.     Plaintiff Louis Grady is a 51-year-old homeless man who fell on hard times last year and has been living on the streets of Skid Row since then.  Although he works to support himself by doing odd jobs and collecting recycling, he does not earn enough to afford an apartment. Mr. Grady has had his personal property seized by BID officers on at least two separate occasions in the past year while he momentarily stepped away to perform life-sustaining activities.

17.     Plaintiff Lloyd Hinkle is a 61-year-old Vietnam War veteran who has lived in Skid Row for approximately a year. Since he started living on the streets, he has kept all of his personal belongings with him in shopping carts, but leaves them to get food and run other errands because he cannot take them with him into the missions or other agencies from which he receives services.  On or about June 30, 2014, BID officers and LAPD officers took Mr. Hinkle's property.  He was provided no notice of the seizure, and the BID and LAPD officers were repeatedly informed that his property was not abandoned but took it anyway.

18.     Plaintiff Walter Shoaf is a 62-year-old veteran who suffers from chronic pain and Post Traumatic Stress Disorder as well as other mental health issues.  He has been homeless and residing in the Skid Row area since he was

7

1  discharged from the army nearly 40 years ago.  In February 2014, Mr. Shoaf left
2  his property for a short time to run an errand.  As he was returning to his property,
3  he saw the BID officers loading all of it into a truck.  By the time he got to the
4  place where he stays, they had loaded up his things, taking his property, including
5  his military identification card and his tent.  Although he tried to stop them, the
6  BID officers ignored him, and they left him no notice where to retrieve his
7  possessions.

8                                    **DEFENDANTS**

9          19.     Defendant Los Angeles Downtown Industrial District (LADID) is a
10  Business Improvement District (BID) initially created by the City of Los Angeles
11  in 1998, pursuant to California Streets and Highways Code Section 36600 *et seq.*
12  *See* Los Angeles Municipal Ord. 172155.  LADID's boundaries are roughly
13  between 3rd St. and 8th St. and Olympic to the North and South, and San Pedro and
14  Alameda to the west and east.  The current BID was authorized through the
15  passage of Los Angeles Municipal Ordinance 180801. The LADID is funded by
16  the City of Los Angeles through an assessment on property owners located within
17  the BID.

18          20.     Defendant Central City East Association ("CCEA") is a 501(c)(6) not-
19  for-profit business corporation contracted by the City of Los Angeles to manage
20  the LADID.  CCEA maintains offices in the City of Los Angeles. At all times
21  relevant to this action, the LADID and CCEA, operating as the agent of LADID,
22  acted under color of state law.

23          21.     Defendant the City of Los Angeles ("CITY") is a municipal entity
24  organized under the laws of the State of California. The CITY is a legal entity with
25  the capacity to sue and be sued. The CITY created the LADID and has authorized
26  and/or ratified all of the actions of the LADID alleged herein.  The LADID and the
27  CCEA act as agents of the CITY and have conspired with the CITY to violate
28  plaintiffs' rights.  The departments of the City of Los Angeles include the Los

                                          8
                                    COMPLAINT

Case 2:14-cv-07344-PSG-AJW Document 60-2 Filed 12/08/15 Page 10 of 128 Page ID
Case 2:14-cv-07344 Document 1 Filed 09/19/14 Page 9 of 32 Page ID #:9
#:3609

Angeles Police Department, employees of which have also engaged in acts constituting the violations of plaintiffs' rights alleged in this action.

22. The identities and capacities of defendants DOES 1 through 10 are unknown to plaintiffs. Plaintiffs, therefore, sue these defendants by fictitious names. As to all defendants sued by fictitious names, plaintiffs will give notice of this Complaint and their true names and capacities when ascertained. Plaintiffs are informed, believe, and thereon allege that DOES 1 through 10 are, and were at all times relevant herein, other corporate or business entities, agents, successors in interest, assigns, representatives, principals and/or employees of the defendants and are responsible for the acts and omissions resulting in the violations alleged in this complaint. Defendants DOES 1 through 10 are sued in both their official and individual capacities.

23. Each of the defendants acted as joint actors with joint obligations, and each defendant was and is responsible for the conduct and injuries herein alleged.

24. Each of the defendants acted, alone or together jointly, under color of law. The CITY has delegated traditional municipal functions, including additional sanitation and security services, to the LADID through the adoption of ordinances and pursuant to state law, and the CCEA, acting as an agent of the LADID, performs those municipal functions.

### HISTORY AND STRUCTURE OF THE LADID

25. The Los Angeles Downtown Industrial District Business Improvement District was created by the City of Los Angeles pursuant to the Property and Business Improvement Area Law, codified as California Streets & Highways Code §§ 36600 *et seq.*[1]

---

[1] All statutory citations are to the California Streets and Highways Code unless otherwise noted.

1      26.    The purpose of the Property and Business Improvement Area Law is

2   to promote the economic revitalization and physical maintenance of the business

3   districts of its cities in order to create jobs, attract new businesses, and prevent

4   erosion of the business districts and promote tourism. § 36601(b). To facilitate this,

5   the law "provides an alternative method of financing certain improvements and

6   activities" in an area of a city by allowing it to create BIDs.  Cities are then

7   authorized to levy assessments on businesses in the area. § 36617.  The funds

8   collected are in turn used to finance the improvement of public facilities within the

9   district,[2] including maintaining or creating public parks, trash receptacles and

10   public restrooms, widening city streets, and creating facilities or equipment to

11   enhance security of persons or property within the area.  Funds can also be used for

12   maintenance and activities[3] in the district.  § 36601(b).  Activities specifically

13   contemplated include providing security, sanitation, graffiti removal, street and

14

15

16  [2] Improvement under the statute is defined as "the acquisition, construction, installation, or maintenance of any tangible property with an estimated useful life

17  of five years or more."  § 36610.  Contemplated public facilities include parking facilities, benches, trash receptacles and public restrooms, street lighting,

18  decorations, parks and fountains, closing, opening, widening or narrowing of

19  existing streets, facilities or equipment, or both, to enhance security of persons and

20  property within the area. *Id.*

21  "'Activities' means, but is not limited to, all of the following:
    (a) Promotion of public events which benefit businesses or real property in the

22  district.

23  (b) Furnishing of music in any public place within the district.
    (c) Promotion of tourism within the district.

24  (d) Marketing and economic development, including retail retention and

25  recruitment.

26  (e) Providing security, sanitation, graffiti removal, street and sidewalk cleaning, and other municipal services supplemental to those normally provided by the

27  municipality.

28  (f) Activities which benefit businesses and real property located in the district.
  § 36613.

sidewalk cleaning, and other municipal services supplemental to those normally provided by the municipality. § 36613.

27.    The CITY established the LADID pursuant to § 36600 with the passage of Ordinance 172155 in 1997. The LADID was subsequently renewed by the CITY in 2003 and 2009. Los Angeles Municipal Ord. 175398, 180801.  The present BID was renewed through December 31, 2014. *See* Los Angeles Municipal Ord. 180801.  On July 30, 2014, the CITY approved the renewal of the LADID for a period to run through December 31, 2021. *See* Los Angeles Municipal Ord. 183156; *see also* Los Angeles Municipal Ord. 183068 (incorporating the 2014-2021 Management District Plan).  As required under the state statute, the enabling ordinance incorporated a Management District Plan, which outlined the approved activities of the BID for the duration of the BID.  Only the CITY has the authority to approve or change the LADID's Management District Plan.

28.    When the CITY approved the current BID, it approved a yearly levy of approximately $1.8 million in special assessments on businesses in the district in order to pay for the services outlined in the Management District Plan. *See* Ord. 180699.  Under state law and the operating ordinance, those funds can only be used to perform the municipal services outlined in the Management District Plan, which is incorporated by reference into the enabling ordinance. *See* Ord. 180801, Sect. 11; Ord. 180,699.

29.    According to the Management District Plan, CCEA is designated as the Owner's Association, which contracts with the CITY to administer the LADID in accordance with the Management District Plan.

30.    The special assessments levied by the CITY to pay for LADID activities are collected by the County of Los Angeles through its annual property tax assessment, and failure to pay the assessment results in a tax lien on the property.  All municipal services provided by the LADID are paid for by the CITY

1 with funds collected pursuant to the special assessment.  Los Angeles Municipal

2 Ord. 18086.

3    31.    Under the current Management District Plan, a vast majority of the

4 LADID's focus is on its Clean and Safe Programs.  Seventy seven percent of the

5 assessments on a yearly basis go to Clean and Safe Programs.

6    32.    The Clean and Safe program includes two components: an enhanced

7 security program dealing with crime prevention and inappropriate conduct in the

8 district, and an enhanced maintenance program, which provides amongst other

9 services, sanitation and maintenance services to the public streets and sidewalks in

10 the District.

11    33.    The LADID provides personnel to patrol the streets of the LADID and

12 to perform the municipal services outlined in the Management District Plan, as

13 approved by the CITY.  These "BID officers" are frequently referred to as "Red

14 Shirts" because of the red shirts they wear to signify that they are BID officers for

15 the LADID, although supervisors wear black shirts.  As provided for in the current

16 Management District Plan, BID officers provide both public safety and

17 maintenance in the public areas of the district.

18    34.    BID public safety officers wear red shirts that say "Public Safety" on

19 the back and wear badges.  These officers patrol the streets in the 44 block area of

20 the district on bicycles.  Pursuant to the Management District Plan, the purpose of

21 the public safety officers is to "prevent, deter, and report illegal activities taking

22 place on the streets, sidewalks, storefronts, parking lots and alleys."  According to

23 CCEA, BID officers are tasked with "controlling unsuitable street and alley

24 behavior" and "enforcing cleanliness and other street code compliances."  The

25 officers routinely cooperate with LAPD in the apprehension and arrest of violators

26 of these laws and provide police assistance as needed.  BID officers assist in crime

27 suppression and prevention, including assisting in the "prevention of break-ins,

28 automobile-related crimes and generally disruptive street elements."  BID officers

COMPLAINT

1  are connected via two-way radio to a dispatcher who can dispatch the BID officers
2  to locations throughout the BID.  The BID officers and dispatch maintain
3  communication with the LAPD area patrols.

4       35.    Other BID officers perform sanitation services for the district,
5  including trash removal, graffiti removal, sidewalk cleaning/weed abatement and
6  abandoned property removal.

7       36.    LADID also employs a fleet of trucks, which are dispatched to assist
8  BID officers and LAPD with the seizure, storage, and destruction of homeless
9  individuals' personal belongings.

**HISTORY OF PROPERTY SEIZURES AND INJUNCTIONS**
10
**IN DOWNTOWN LOS ANGELES**
11

12       37.    The deploying of LADID BID officers and their trucks to seize
13  homeless people's property is only the latest step by the CITY to "clean up the
14  streets of Skid Row."  Over the past 30 years, the CITY has repeatedly engaged in
15  campaigns purportedly to address public health and sanitation in the area, but in
16  doing so, has repeatedly implemented its programs in a way that has repeatedly led
17  to the deprivation of the rights of homeless people living on the streets in
18  Downtown Los Angeles.

19       38.    In 1987, homeless residents of Skid Row filed a lawsuit to enjoin the
20  CITY from illegally seizing their property, which resulted in a restraining order
21  against the CITY's seizures of people's property.  *See Young Bennion v. City of*
22  *Los Angeles*, C637718, Exh. A. The terms of the restraining order included a
23  requirement that the City give 12 hours written notice before removing property on
24  the presupposition that it has been abandoned on the public streets of Skid Row.
25  Exh. A, p.2("III. Notice Requirements"). The *Bennion* Order required City
26  employees to post a "prominent notice in a conspicuous place at the site before the
27  property is seized. The notice shall include the specific citation to the law allegedly
28

Case 2:14-cv-07344-PSG-AJW   Document 60-2   Filed 12/08/15   Page 15 of 128   Page ID
Case 2:14-cv-07344   Document 1   Filed 09/19/14   Page 14 of 32   Page ID #:14
#:594

1   violated and state that the property will be subject to disposal if the violation is not

2   corrected within twelve hours from the time the notice is posted." *Id.*

3       39.   In 2000, the CITY again began a campaign of confiscating the

4   property of homeless persons, ordering them to move away from their belongings,

5   and then immediately crushing all of the property in dump trucks. In response,

6   several individuals filed a lawsuit entitled *Justin v. City of Los Angeles*, CV 00-

7   12352 LGB (AIJx), Exh. B. On November 5, 2001, Judge Lourdes Baird entered a

8   permanent injunction against the CITY, incorporating the terms of the *Bennion*

9   restraining order and enjoining the CITY to

10       not confiscate personal property that does not appear abandoned and destroy

11       it without notice. Where applicable, defendants will give notice in

12       compliance with the temporary restraining order issued in *Bennion v. City of*

13       *Los Angeles* (C637718). Any personal property that does not appear

14       intentionally abandoned collected by defendants will be retained for 90 days

15       as provided in California Civil Code section 2080.2.

16   Exh. B, p.2.

17       40.   At the request of the CITY, the injunction expired after 48 months.

18   *Id.*

19       41.   Yet again, in February 2011, CITY employees from the LAPD and

20   the Bureau of Street Services began seizing and summarily destroying property

21   they came upon on the public sidewalks of Skid Row, without any evidence that

22   the property had been abandoned, and without any notice or due process to the

23   owners of the property.

24       42.   In April 2011, eight homeless individuals filed another lawsuit against

25   the CITY on behalf of themselves and all others similarly situated.  The lawsuit,

26   *Tony Lavan, et.al. v. City of Los Angeles* (CV1102874), alleged, *inter alia*, that the

27   CITY violated their Fourth and Fourteenth Amendment rights by seizing and

28

1   destroying their property, which they temporarily left on the public sidewalks

2   while they attended to necessary tasks.

3       43.    On June 21, 2011, U.S. District Court Judge Phillip Gutierrez granted

4   the plaintiffs' request for a preliminary injunction and enjoined the City from

5       a.   Seizing property in Skid Row absent an objectively reasonable belief

6            that it is abandoned, presents an immediate threat to public health or

7            safety, or is evidence of a crime, or contraband; and

8       b.   Absent an immediate threat to public health or safety, destruction of said

9            seized property without maintaining it in a secure location for a period

10           of less than 90 days.

11  *Lavan,* 797 F. Supp. 2d at 1020, Exh. C, p. 16.

12      44.    The injunction was affirmed by the Ninth Circuit on the ground that

13  the taking of unabandoned property constituted a seizure under the Fourth

14  Amendment, and that it was a deprivation of the plaintiffs' due process rights to

15  take people's property without notice:  "Government may not take property like a

16  thief in the night; rather, it must announce its intentions and give the property

17  owner a chance to argue against the taking."  693 F.3d at 1032.  As a result, the

18  injunction remains in effect today, and the litigation is ongoing.

### PROPERTY SEIZURE BY THE LADID

20      45.    Although the CITY remains enjoined from seizing property that is not

21  abandoned, presents an immediate threat to public health or safety, or is evidence

22  of a crime, or contraband, and from destroying abandoned property without notice

23  and due process of law, BID officers, acting under color of law and in coordination

24  with the CITY and its agent, the LAPD, have continued the CITY's campaign of

25  seizing homeless people's property.

26      46.    As part of the municipal services provided by the LADID, BID public

27  safety officers routinely seize unattended property on the streets.  The property the

28  BID officers seize is often left for only minutes at a time by individuals who have

1    no choice but to leave their property on the streets while they are getting a meal at

2    a mission in the District, attending an appointment, or even using the restroom.

3           47.    The BID officers make no effort to determine how long property has

4    been unattended or whether property is abandoned before they remove the

5    property.  Property could be unattended for as little as a few minutes or a few hours

6    before it is seized. They seize property that no reasonable person could believe is

7    abandoned.  On information and belief, the BID officers do not take into account

8    any indicia that property is not abandoned, such as its appearance or whether it is

9    packed neatly in a shopping cart, before property is seized.  Nor do BID officers

10   ask individuals in the vicinity whether the property is abandoned.  BID officers

11   ignore statements from neighbors that property is not abandoned or that the owner

12   of the property has stepped away for only a moment.

13          48.    BID officers provide no notice of any kind to the community that it is

14   conducting sweeps at any particular time, and the seizures are not pursuant to any

15   established maintenance schedule that is made public in any way.  Nor do BID

16   officers provide notice to any individuals that their property will be taken prior to

17   its seizure.  The BID officers will seize a single person's property on a block but

18   leave all the other property alone.  An individual who is living on the street has no

19   way of discerning when or if his or her property will be taken, and has no way of

20   avoiding a seizure by the BID officers if they must leave their property to perform

21   vital tasks like going to the restroom, getting a meal, or receiving medical care or

22   case management services from entities that frequently do not allow people to

23   bring in their property when they are accessing services.

24          49.    BID officers routinely seize property at times that they know or

25   should know that individuals will be away from their property for brief periods of

26   time, including at times when area missions provide meals.

27          50.    Unlike when property is seized by the CITY's Bureau of Street

28   Services, which the CITY has previously contended is not fast-moving and as

Case 2:14-cv-07344-PSG-AJW   Document 60-2   Filed 12/08/15   Page 18 of 128   Page ID
Case 2:14-cv-07344   Document 1   Filed 09/19/14   Page 17 of 32   Page ID #:17
#:509

such, it is therefore apparent that street cleaning is underway, when BID officers seize property, it is extremely fast.  BID officers can identify, tag, and seize a person's property in five minutes.  If a person returns while the BID is removing the property, BID officers will not give the property back, and if individuals attempt to intervene either on their own behalf or on behalf of others, LAPD is called or stop on their own and prevent people from intervening or protesting with threats of arrest.

51.     When BID officers take property, they sometimes, although not always, leave an "unattended property receipt" which states that property can be reclaimed from the LADID's warehouse on 7th Street and Central Avenue.  The notice provides no other information about why the property was taken and states only that the property was "unattended."  When the BID officers leave a receipt, they may stick it on a wall above the location from where the property was seized, but individuals often do not receive the receipt.  On information and belief, BID officers do not consistently make any other attempts to ensure that the individual whose property was taken is notified that the property was seized.  This is true even though the BID officers ride or walk through the same streets frequently and interact with the owners of the property.

52.     LAPD officers conspire with the LADID in the seizure of property. They alert BID officers where and when homeless individuals' property is unattended.  They also directly participate in the seizures by standing at attention while the property is seized, interfering with individuals' protests when property is taken, and threatening individuals with arrest if they interfere with the BID officers' attempts to take property.  LAPD has also repeatedly refused to take statements or file reports for theft by individuals whose unabandoned property has been taken by the BID officers.  These actions were taken pursuant to an official custom and policy of the LAPD.

53.     According to CCEA, after BID officers seize individuals' property, it is taken to a warehouse on 7th Street and Central, where facility staff go through the items seized by the BID officers.  Items the staff deem perishable, soiled or wet are destroyed.  CCEA claims that other items are re-bagged and held at the facility for no more than 90 days.

54.     Although the Unattended Property Receipt directs individuals to the "Personal Property Storage Facility," a facility operated by CCEA which allows people to store a single bin of property during the day, property that is seized is not stored in the same area as the bin storage, and it cannot be accessed through the entrance on 7th Street.

55.     Instead, seized property is stored in a separate section of the storage facility, which is controlled by the LAPD.  Individuals picking up property confiscated by the BID are instructed to pick up their property from the LAPD Property Pickup section of the facility located on Industrial Street.  This entrance is also controlled by the LAPD.   The receipt indicates that property can be retrieved Monday through Friday from 8:00 a.m. to 4:00 p.m.; however, the posted hours of the facility are more circumscribed and states that it is closed on Monday, Saturday and Sunday, and only open only from 8:00 a.m. to 1:00 p.m. on Tuesday through Friday.

56.     An individual seeking to retrieve their property must present the "unattended property receipt".  On information and belief, without a receipt, the CCEA is frequently unable or unwilling to return an individual's possessions.

57.     When individuals whose property is seized and who are able to locate an unattended property receipt attempt to retrieve their property, they are not informed why their property was taken.  Nor are they shown or given a copy of any inventory taken of property seized or destroyed.  They are however required to sign a form which states that "I have examined the contents of the bag containing

Case 2:14-cv-07344-PSG-AJW   Document 60-2   Filed 12/08/15   Page 20 of 128   Page ID
Case 2:14-cv-07344   Document 1   Filed 09/19/14   Page 19 of 32   Page ID #:19
#:509

1  my property and confirmed that all property is accounted for." and it is defendants'

2  policy not to return any property unless an individual signs that statement.

3      58.    Defendants operate a strict "all of it or none" rule, in which

4  individuals retrieving seized property may only take all of their possessions or

5  none of their possessions.  An individual is not allowed to retrieve critical items

6  like a wallet or medication without either taking all of his or her property or

7  surrendering the property they cannot retrieve at that time and allowing it to be

8  destroyed.  Therefore, if an individual has too much property to carry in one trip,

9  he or she must leave the property unattended on the street or surrender it for

10  destruction.

11      59.    Unattended property that is seized and taken to the facility is retained

12  for 90 days.  If it is not claimed during that time period, it is destroyed.

## INDIVIDUAL PLAINTIFFS' SPECIFIC ALLEGATIONS

### HARRY JAMES JONES

15      60.    On or about March 1, 2013, plaintiff Harry James Jones stepped away

16  from his property, as he did every day in order to get food or to receive the vital

17  services necessary to survive.  As he did every day, he left his property neatly

18  packed in the area where he stayed every night, on Towne Avenue near 3rd Street.

19      61.    There were no posted signs indicating that the streets would be

20  cleaned or cleared while he was gone.  He was away from his property for only a

21  short period of time. While he was gone, BID officers seized all of his personal

22  property, including his identification card, his life-saving medication, his tent, and

23  his clothing.  The BID officers provided Mr. Jones with no notice that his property

24  would be taken before they took his property, and when he returned, there was no

25  notice posted on the wall where his items were previously located.  Based on the

26  way his property was packed at the time, there was no objectively reasonable basis

27  to believe that the property was abandoned.  Nor was there any objectively

28  reasonable basis to believe that the property caused an immediate threat to public

health or safety, or was evidence of a crime, or contraband.  On the contrary, the seizure of Mr. Jones's property, including his medication, created a threat to Mr. Jones's health.

62.     Because he had his property taken by the BID officers before, Mr. Jones understood that he should be able to obtain the property from the warehouse at 7th and Central.  However, when he went to retrieve his belongings, he was told they could not assist him because he did not have his "ticket."

63.     As a result of this seizure of his property, Mr. Jones went without his medication for approximately one month.  He was unable to refill his prescription because his identification card was seized along with his medication.  He became very ill as a result of his lack of medications and was hospitalized for several days.

64.     On or about December 30, 2013, Mr. Jones again stepped away from his property to get a meal, as he had done every day for the preceding months without incident.  While he was gone, BID officers once again came to the place he resided and seized all of his property.  There was again no notice given before his property was taken and no notice left afterwards, and Mr. Jones was once again unable to obtain his property after it was seized.

65.     As a result of the seizures of his property, including his military identification card and his medication, Mr. Jones suffered from severe health consequences.  He also suffered emotional distress and continues to suffer from severe anxiety that he will once again lose his property and suffer another medical setback as a result.

## LOUIS GRADY

66.     On or about January 15, 2014, Louis Grady left the area where he resides on the sidewalk at 531 Towne Avenue to get lunch at the Midnight Mission.  Before he left, he packed his belongings in two LACW carts.  He wrote a note and posted it in front of his belongings to inform the BID officers that his property was not abandoned, as was his practice every time he left his things.  He

left the note because he knew that BID officers randomly seized property and had been told by a BID supervisor that he should leave a note to alert the BID officers that his property was not abandoned.

67.     Mr. Grady was gone for approximately 30 to 45 minutes. When he returned, all of his possessions were gone, including the LACW carts, his tent, his blankets, his laptop computer and cell phone, and his personal journal. A notice was posted on the wall behind where his things had been located, indicating that BID officers had taken his belongings to a warehouse.

68.     When Mr. Grady attempted to retrieve his property from the warehouse, he discovered that several items were missing, including his tent, his laptop, his cell phone and his journal. The LACW carts were also not returned to him. He was not given an inventory of the property that had been seized, and when he complained about the missing items, he was asked to leave.

69.     Because Mr. Grady was not given any carts back, it was very difficult for him to transport his property back to the place he stays. He has a chronic knee condition that makes walking difficult. He uses a cane and relies on the carts from the Hippie Kitchen to provide ambulatory assistance when moving his belongings. Without the carts, it took him hours to transport the property returned to him to the place where he stays. He could not carry the property back in a single trip, and so he was forced to move his belongings one bag at a time. He left the remaining bags on the street, unattended.

70.     On another occasion several months later, Mr. Grady had other items seized by BID officers under similar circumstances. He attempted to submit a complaint to the LADID, but he never received a response to or even an acknowledgment of his complaint.

71.     As a result of the property seizures, Mr. Grady has suffered emotional distress and anxiety. He is less willing to leave his property on the street and as a

result, he has sometimes missed doctor's appointments and meals for fear that when he is gone, his things will be taken by the Red Shirts.

## WALTER SHOAF

72.     In February 2014, Mr. Shoaf stepped away from his property, which he kept neatly packed where he stays on Towne Avenue near 6th Street.

73.     He was gone for less than an hour.  As he was walking back to his property, Mr. Shoaf witnessed the BID officers seizing his property, including his identification card and his medication.  They were also packing up his tent, his extra clothing, and all of his other possessions.  Mr. Shoaf attempted to reach the BID officers and tell them that his property was not abandoned, that the things belonged to him and that he did not want them to take it.  By the time he reached them, the BID officers were almost finished loading it in the truck, and they drove away with his property.

74.     The BID officers did not provide Mr. Shoaf any information as to where they were taking his property or where he could retrieve it.  As a result, he did not know he should be able to retrieve his property from the warehouse.  He was forced to go without his medication for several weeks.  He was also forced to sleep in the cold without a tent or blankets.

75.     The loss of his property caused him extreme distress, discomfort, and pain.

## LLOYD HINKLE

76.     On June 30, 2014 at around 12:00 p.m., Lloyd Hinkle left his property neatly packed under a tarp on 5th Street between Gladys and Stanford.  Mr. Hinkle ensured that his property was out of the way and not blocking the sidewalk.  He then walked across the street to get lunch and on the way, passed BID officers.  He was not concerned that his property would be taken because it was clearly packed up, his neighbors knew he was in the area, and there was no notice anywhere of

Case 2:14-cv-07344-PSG-AJW   Document 60-2   Filed 12/08/15   Page 24 of 128   Page ID
Case 2:14-cv-07344   Document 1   Filed 09/19/14   Page 23 of 32   Page ID #:23
#:569

1   any street cleaning or that property could be seized if left unattended.  He also

2   knew that he would not be gone long.

3         77.    After Mr. Hinkle walked away, the BID officers approached the first

4   property on the corner of Fifth Street and Gladys and began writing a receipt for

5   the property, which belonged to Mr. Hinkle's neighbor.

6         78.    The BID officers placed the receipt on the fence behind the neighbor's

7   property and began to pack up the property.  However, the property owner  was

8   present and confronted the BID officers who instead placed the receipt on Mr.

9   Hinkle's property, which was down the block.  While the BID officers were

10  writing the receipt, they were joined by additional BID officers driving two pickup

11  trucks.  The BID officers then began packing up Mr. Hinkle's things.

12        79.    Mr. Hinkle's neighbor informed the BID officers that Mr. Hinkle's

13  property was not abandoned and that he was watching the property for Mr. Hinkle

14  but the BID officers ignored him.  Staff and members of LA CAN recorded the

15  incident on video; they also informed the BID officers that the property was not

16  abandoned, but they were ignored as well.

17        80.    The BID officers were joined by two Los Angeles Police Department

18  officers who parked their cruiser on the street and told the individuals present,

19  including Mr. Hinkle's neighbor and LA CAN members and staff, to move back

20  and allow the BID officers to do their jobs.  When the LA CAN staff member said

21  that the BID officers were stealing Mr. Hinkle's property, Officer Zambrano

22  informed them that no one was stealing any property.

23        81.    Officer Zambrano placed herself between Mr. Hinkle's neighbor and

24  the BID officers who were packing up the property.  She prevented him and LA

25  CAN from intervening.  She informed them that "we're going to take someone's

26  property that is abandoned."  During this interaction, another LAPD officer also

27  was present while the BID officers seized Mr. Hinkle's property.

28

COMPLAINT

82.     Within five minutes, the BID officers and the LAPD, acting in concert, loaded Mr. Hinkle's property in the back of the white trucks, and the trucks drove away.  The remainder of the BID officers rode away on their bicycles. The LAPD officers stood watch and remained on the scene until after all of the BID officers left.

83.     When Mr. Hinkle returned less than a half hour later, his possessions were gone, and he was left with only a receipt for his property. The items that were taken included shopping carts, tarps and his bed roll, his sleeping bag, clothes, toiletries and medicine.

84.     The seizure of his property caused Mr. Hinkle to suffer extreme discomfort and emotional distress as everything he owned including the items he used to create shelter had been taken.  Although he was able to ultimately retrieve most of his property from the facility on 7th and Central, it was extremely difficult for him to do so.  The CCEA did not return his shopping carts, and he had no way to transport his possessions.  What had taken two CCEA trucks to take to the facility, Mr. Hinkle was left on his own to bring back to the place where he stays. It took him multiple trips from the storage facility, and he was forced to leave his property unattended each time he went to get another load of his possessions.

**DEFENDANT CITY'S LIABILITY**

85.     These actions took place pursuant to the customs, practices, procedures, and policies of the defendants.  The LADID is a special assessment district created by the CITY pursuant to its authority under state law, to provide for the provision of municipal services, and CCEA is an agent of the LADID and the CITY.  Defendant CITY conspired with the LADID and CCEA to commit the above offenses.  Moreover, defendant CITY's employee police officers regularly participated, through threats and intimidation, in torts committed by the other defendants.

Case 2:14-cv-07344-PSG-AJW Document 60-2 Filed 12/08/15 Page 26 of 128 Page ID
Case 2:14-cv-07344 Document 1 Filed 09/19/14 Page 25 of 32 Page ID #:25
#:509

86. Defendants CITY and LADID have engaged in a conspiracy to remove unattended property from the streets of Skid Row. This conspiracy has continued since the *Lavan* injunction was imposed on the CITY. On information and belief, the CITY and its officers and/or agents urged the BID to remove homeless individuals' property on Skid Row. The CITY acts in concert with the BID to identify property to be removed and to ensure that the removals were not stopped or hindered.

87. In addition, the CITY failed to train its officers that they should not aid and abet the conversion or trespass of BID officers taking property that is not abandoned. The CITY failed to properly train officers to determine when property may or may not be removed. The CITY instead maintained a policy of removing homeless people's property from Skid Row, regardless whether it was not abandoned, not blocking the sidewalks, or otherwise constituting a health and safety violation. The CITY failed to adequately train its officers to take police reports concerning these actions, and instead maintained a policy that it would not take reports concerning BID officers' removal of property.

88. Plaintiffs have repeatedly placed the CITY on notice of the LADID's actions. The CITY has taken no actions to constrain defendants' illegal acts, despite authority under state law to do so and therefore ratified the actions of the LADID and the CCEA.

89. LAPD, a department of the CITY, have refused to take complaints from individuals whose personal property has been seized in the manner described above. LAPD intentionally conspired with the LADID in the removal and storage of property that was not abandoned. In the case of Mr. Hinkle, and in other cases like his, LAPD officers were present to aid in the removal of property. Officers working in Skid Row have provided materials to BID officers to assist in the seizure of property.

Case 2:14-cv-07344-PSG-AJW  Document 60-2  Filed 12/08/15  Page 27 of 128  Page ID
Case 2:14-cv-07344  Document 1  Filed 09/19/14  Page 26 of 32  Page ID #:26
#:508

90.     Plaintiffs Jones, Grady, Shoaf, and Hinkle provided notice of defendant LADID and CCEA's actions by submitting a Government Tort Claim to the CITY pursuant to Government Code Section 916.  On information and belief, defendant CITY has not taken any action on these claims.  During the summer of 2013, plaintiffs Los Angeles Catholic Worker and Louis Grady, as well as other homeless advocates and homeless individuals attended the July and August Los Angeles Homeless Services Authority, Board of Commissioner  meetings, where an extension of  a contract with the LADID was discussed.   At these meetings, plaintiffs LACW, Mr. Grady, and LA CAN and its members, and others testified, verbally and in writing, about the LADID's illegal practice of seizing personal property despite and in circumvention of the *Lavan* injunction.  They also testified that the BID officers were committing the common law tort of conversion. The Los Angeles City Attorney advised LAHSA regarding the seizure of property and testified that CCEA was in compliance with the *Lavan* injunction.  Despite the complaints articulated at the meeting and evidence of the unlawful seizures, the LAHSA Commission voted to renew the contracts, without adding any language regarding the storage of unlawfully seized property.

91.     Subsequent to the filing of claims against the CITY and the LADID, the CITY renewed the LADID on July 30, 2014 for another seven years.   As such and by not taking any action to disestablish the LADID as it retains the sole authority to do pursuant to § 36670, defendant CITY has ratified the actions of the LADID and its agent, CCEA.

# FIRST CAUSE OF ACTION
## Right to Be Secure From Unreasonable Seizures
## 42 U.S.C. §1983 - Fourth Amendment; Art. 1,
## §13, California Constitution
## Against All Defendants

COMPLAINT

92.     Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 91 as though fully set forth herein.

93.     Defendants violated plaintiffs' Fourth Amendment right to be free from unreasonable seizure of their property by taking plaintiffs' property without proper justification and without any authority to do so.

94.     Defendants' actions at all times were under color of law.

95.     Defendants' unlawful actions, through the conduct of their employees, were done with the specific intent to deprive plaintiffs of their constitutional rights to be secure in their property.

96.     Plaintiffs are informed and believe that Defendants' employees and agents are seizing property intentionally without a lawful justification or authority to do so, or at least defendants were deliberately indifferent to the likely consequence that the property would be seized without lawful justification or authority to do so, based on the past circumstances of similar constitutional and statutory violations of the law, and in light of an existing injunction against such actions.

97.     As a direct and proximate consequence of the acts of defendants' agents and employees, plaintiffs Harry James Jones, Lloyd Hinkle, Walter Shoaf, and Louis Grady have suffered and continue to suffer injury and loss.  These plaintiffs are entitled to compensatory damages for the loss of and damage to property and other injuries to their persons that resulted from the violation of their Fourth Amendment rights.

98.     Plaintiffs are also entitled to injunctive relief prohibiting defendants from seizing their property in the future.  Plaintiffs are informed and believe that unless restrained from doing so, defendants will continue to engage is said wrongful conduct for which plaintiffs have no adequate remedy at law. Members of LA CAN, and individual plaintiffs Lloyd Hinkle, Louis Grady, and Walter Shoaf continue to reside on or operate in Los Angeles' Skid Row and are frequently forced to leave some of

Case 2:14-cv-07344-PSG-AJW   Document 60-2   Filed 12/08/15   Page 29 of 128   Page ID
Case 2:14-cv-07344   Document 1   Filed 09/19/14   Page 28 of 32   Page ID #:28
#:599

their property behind, packed neatly and clearly not abandoned, when attending to their daily needs. LACW's mission is frustrated by these practices, and they continue to divert resources as a result of these practices. The practices detailed in the preceding paragraphs will continue to violate their constitutional rights.

## SECOND CAUSE OF ACTION
### Right to Due Process of Law
### 42 U.S. C. §1983, Fifth and Fourteenth Amendments; Art. I,
### §7 Calif. Constitution
### Against All Defendants

99.    Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 91 as though fully set forth herein.

100.   Defendants owed plaintiffs a duty under the due process clause of the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, sec. 7 of the California Constitution, to protect the personal property of plaintiffs that was known not to be abandoned.

101.   Defendants provided plaintiffs with no notice that their property was at risk of being seized and/or destroyed. Even when defendants were specifically put on notice that the property was not abandoned and given an opportunity to stop the seizure of plaintiffs' personal items, defendants proceeded with the seizure, denying plaintiffs any due process.

102.   Plaintiffs are informed and believe that defendants' employees and agents are seizing property intentionally without a lawful justification or authority to do so, or at least defendants were deliberately indifferent to the likely consequence that the property would be seized without lawful justification or authority to do so, based on the past circumstances of similar constitutional and statutory violations of the law, and in light of an existing injunction against such actions.

103.   Insofar as defendants rely on Los Angeles Municipal Code section 56.11[4] to justify the seizure of plaintiffs' property, defendant LADID and CCEA are without any authority to enforce such an ordinance.  To the extent the ordinance is enforced by the CITY or by defendants LADID or CCEA pursuant to a valid grant of authority, the ordinance is unconstitutional and violates the Fourteenth Amendment by failing to require the CITY and its agents to provide notice of the seizure of property that is unattended but not abandoned or otherwise creating a health and safety hazard.

104.   As a direct and proximate consequence of the acts of defendants' agents and employees, plaintiffs Harry James Jones, Lloyd Hinkle, Walter Shoaf, and Louis Grady have suffered and continue to suffer injury and loss.  These plaintiffs are entitled to compensatory damages for the loss of and damage to property and other injuries to their persons that resulted from the violation of their Fifth and Fourteenth Amendment rights.

105.   Plaintiffs are also entitled to injunctive relief prohibiting defendants from seizing their property in the future without due process. Plaintiffs are informed and believe that unless restrained from doing so, defendants will continue to engage in said wrongful conduct for which plaintiffs have no adequate remedy at law.  Members of LA CAN, and individual plaintiffs Lloyd Hinkle, Louis Grady, and Walter Shoaf continue to reside on or operate in Los Angeles's

---

[4] Los Angeles Municipal Code § 56.11 states

No person shall leave or permit to remain any merchandise, baggage or any article of personal property upon any parkway or sidewalk. Provided, that boxes, barrels and other receptacles for merchandise may be unpacked and their contents removed upon parkways or sidewalks outside of the Central Traffic District if such boxes, barrels and other receptacles for merchandise are removed immediately thereafter.

Case 2:14-cv-07344-PSG-AJW   Document 60-2   Filed 12/08/15   Page 31 of 128   Page ID
Case 2:14-cv-07344   Document 1   Filed 09/19/14   Page 30 of 32   Page ID #:30
#:599

1   Skid Row and are frequently forced to leave some of their property behind,

2   packed neatly and clearly not abandoned, when attending to their daily needs.

3   LACW's mission is still frustrated by these policies and practices, and they

4   continue to divert resources as a result of these policies and practices.  The

5   practices detailed in the preceding paragraphs will continue to violate their

6   constitutional rights.

7                              **THIRD CAUSE OF ACTION**

8   **Violation of Civil Rights: Interference By Threat, Intimidation or Coercion**

9                          **California Civil Code § 52.1**

10       106.   Plaintiffs reallege and incorporate the allegations set forth in

11  paragraphs 1 through 91 as though fully set forth herein.

12       107.   Defendants' agents and employees have used threats of arrest and

13  intimidation to interfere with plaintiffs' rights secured by the Constitution of the

14  United States, the Constitution of the State of California, and the statutory laws of

15  the State of California.

16       108.   Plaintiffs are entitled to an injunction pursuant to California Civil

17  Code § 52.1. Plaintiffs are informed and believe that unless restrained from doing

18  so, defendants will continue to engage is said wrongful conduct for which plaintiffs

19  have no adequate remedy at law. Plaintiffs are also entitled to damages pursuant to

20  Civil Code §§ 52 and 52.1.

21                              **FOURTH CAUSE OF ACTION**

22                                    **Conversion**

23       109.   Plaintiffs reallege and incorporate the allegations set forth in

24  paragraphs 1 through 91 as though fully set forth herein.

25       110.   Plaintiffs owned and had a right to the possession of their personal

26  property at the time that defendants' agents and employees seized their property

27  without notice. Plaintiffs' property was not abandoned at the time that defendants

28  seized it.

Case 2:14-cv-07344-PSG-AJW   Document 60-2   Filed 12/08/15   Page 32 of 128   Page ID
Case 2:14-cv-07344   Document 1   Filed 09/19/14   Page 31 of 32   Page ID #:31
#:509

111.   Defendant's agents and employees intentionally and substantially interfered with Plaintiffs' property rights by unlawfully taking possession of their property and preventing plaintiffs from securing their personal property and the personal property of others left in their care. Even when able to reclaim their property, plaintiffs found that some of it was broken or missing.

112.   Defendants had no legitimate interest, governmental or otherwise, justifying confiscation of plaintiffs' property without prior notice to plaintiffs.

113.   As a direct and proximate consequence of the acts of defendant's agents and employees, plaintiffs have suffered and continue to suffer loss of their personal property and are entitled to compensatory damages for their property and other injury to their person.

## FIFTH CAUSE OF ACTION

### Trespass to Personal Property

114.   Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 91 as though fully set forth herein.

115.   Defendants had no legal right or justification to remove plaintiffs' property from where it was found and to store it in their warehouse.  Upon finding plaintiffs' property on the public sidewalk, and without notice to plaintiffs, defendants took and carried away all of plaintiffs' personal effects. Defendants stored the property in a place where it was difficult for plaintiffs to obtain it,  in a facility where plaintiffs could only obtain it between certain hours of the day.

116.   This taking and carrying away of plaintiffs' property restricted plaintiffs' use of said property while it was in storage and outside of plaintiffs' control.  As a direct and proximate consequence of defendants' acts, plaintiffs suffered injury: namely, the deprivation of their property for a period of time and the expenditure of time and energy to retrieve the property.

117.   Plaintiffs are entitled to compensatory damages for the impairment of the right to use their property, including but not limited to any and all injuries and

Case 2:14-cv-07344-PSG-AJW   Document 60-2   Filed 12/08/15   Page 33 of 128   Page ID
#:591
Case 2:14-cv-07344   Document 1   Filed 09/19/14   Page 32 of 32   Page ID #:32

1  distress they suffered as a result of not having their property and for any damage to
2  their property while in storage.

3      **WHEREFORE**, plaintiffs pray as follows:

4      1. For an injunction, enjoining and restraining defendants from engaging in
5  the policies, practices and conduct complained of herein;

6      2. For a declaratory judgment that defendant's policies, practices and
7  conduct as alleged herein violates plaintiffs' rights under the United States
8  Constitution, the California Constitution and the laws of California;

9      3. For plaintiffs Harry James Jones, Lloyd Hinkle, Louis Grady, and Walter
10 Shoaf, damages in an amount to be determined according to proof but in no
11 event less than $4,000 per incident pursuant to Cal. Civ. Code §§ 52, 52.1 and
12 Cal. Government Code § 815.6.

13     5. For costs of suit and attorney fees as provided by law;

14     6. For such other relief as the Court deems just and proper.

15

16 Dated: September 19, 2014              Respectfully submitted,

17

18                                       Legal Aid Foundation of Los Angeles
                                         Schonbrun DeSimone Seplow
19                                       Harris and Hoffman

20

21                                       By:_____/s/_____
22                                             Fernando Gaytan
                                               Attorneys for Plaintiff
23

24

25

26

27

28

EXHIBIT G

1   **MICHAEL N. FEUER,** City Attorney
2   **THOMAS H. PETERS,** Chief Assistant City Attorney
    **RONALD S. WHITAKER,** Managing Assistant City Attorney
3   **ELIZABETH T. FITZGERALD,** Deputy City Attorney (SBN 158917)
    Email:  Elizabeth.Fitzgerald@lacity.org
4   200 North Main Street, City Hall East, 9th Floor
    Los Angeles, California 90012
5   Tel: (213) 473-6856
6   Fax: (213) 473-6818

7   *Attorneys for Defendant,* **CITY OF LOS ANGELES**

8

9                  **UNITED STATES DISTRICT COURT**

10          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11                         **WESTERN DIVISION**

12

13   LOS ANGELES CATHOLIC          )   **CASE NO.: CV14-07344 PSG (AJWx)**
14   WORKER, an unincorporated     )
     association; CANGRESS, a non-profit  )   **DEFENDANT CITY OF LOS**
15   corporation; HARRY JAMES JONES,  )   **ANGELES' NOTICE OF MOTION**
                                    )   **AND MOTION TO DISMISS**
16   LOUIS GRADY, LLOYD HINKLE,    )   **[FRCP 12(b)(6)];**
     WALTER SHOAF, individuals     )   **MEMORANDUM OF POINTS AND**
17                                 )   **AUTHORITIES**
18   Plaintiffs,                   )
                                   )   **Filed Concurrently with [Proposed]**
19                                 )   **Order**
            vs.                    )
20                                 )   Date:  January 12, 2015
21   LOS ANGELES DOWNTOWN          )   Time:  1:30 p.m.
                                   )   Courtroom: Roybal 880
22   INDUSTRIAL DISTRICT BUSINESS  )
     IMPROVEMENT DISTRICT,         )
23   CENTRAL CITY EAST             )
     ASSOCIATION, INC., CITY OF LOS  )
24   ANGELES; DOES 1-10            )
25                                 )
            Defendants.            )
26   _____)

27   TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

28


                                    1

1  PLEASE TAKE NOTICE that on January 12, 2015, at 1:30 p.m., or as soon

2  thereafter as counsel may be heard in Courtroom 880, located at 255 E. Temple

3  Street, Los Angeles, California 90012, Defendant City of Los Angeles will move

4  the Court to dismiss the entire action against Defendant City of Los Angeles

5  pursuant to Federal Rule 12(b)(6) for failure to state a claim upon which relief can

6  be granted. Plaintiffs' complaint is defective for the following reasons: (1) The

7  claims alleged against Defendant City of Los Angeles are vague and unclear; and

8  (2) Plaintiffs' claims against the City of Los Angeles are based upon incorrect legal

9  theories, and legal conclusions without sufficient factual support.

10  This motion is based upon this Notice of Motion and Motion, the

11  Memorandum of Points and Authorities filed herewith, and the pleadings and

12  papers filed herein.

13  This motion is made following a conference of counsel pursuant to Local

14  Rule 7-3 which took place on October 14, 2014.

15  DATED:  November 21, 2014

16
17  **MICHAEL N. FEUER**, City Attorney
   **THOMAS H. PETERS**, Chief Assistant City Attorney
18  **RONALD S. WHITAKER**, Managing Assistant City Attorney

19

20  By: _____

21  **ELIZABETH T. FITZGERALD**
   Deputy City Attorney, *Attorneys for Defendant*
22  **CITY OF LOS ANGELES**

23

24

25

26

27

28

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION AND BACKGROUND

### Summary of Argument

Defendant City of Los Angeles requests that the Court dismiss each of Plaintiffs' claims against the City pursuant to Federal Rule 12(b)(6).  Plaintiffs' complaint is defective for the following reasons: (1) The claims alleged against the City are vague and unclear; and (2) Plaintiffs' claims against the City are based upon incorrect legal conclusions, and legal conclusions without sufficient factual support.  Plaintiffs erroneously contend that the City of Los Angeles is legally responsible for alleged wrongful acts by private security officers who are not City employees.  Plaintiffs also claim that the City is conspiring with the other defendants in this action to deprive Plaintiffs of their constitutional rights. Plaintiffs' purported agency theory is incorrect, and Plaintiffs conspiracy theory has no factual support.  None of Plaintiffs' claims against the City of Los Angeles are plausible – they are both legally and factually insufficient. As such, the City should be dismissed from this litigation, forthwith.

### The Plaintiffs

Plaintiffs in this case are four homeless individuals and two organizations. The four individual Plaintiffs are Harry James Jones, Louis Grady, Walter Shoaf, and Lloyd Hinkle.  The two organizational Plaintiffs are "Los Angeles Catholic Worker" and "CANGRESS," also known as "The Los Angeles Community Action Network."  L.A. Catholic Worker is "an unincorporated lay Catholic community of women and men providing services to homeless residents of Skid Row." (Complaint, p.5:11-13)  CANGRESS is "a grassroots, non-profit organization," with members including "over 800 poor people in Skid Row." (Complaint, p.6:21-23). The "main purpose" of CANGRESS is "to organize and empower community residents to work collectively to address systemic poverty and oppression in their community" and to "protect the rights and prevent the further disenfranchisement

1 | of homeless and poor people in Los Angeles." (Complaint, p.6: 23-28).

2 | **The Defendants**

3 | Defendants are: (1) "The Los Angeles Downtown Industrial District

4 | Business Improvement District," a non-profit organization ("Business

5 | Improvement District" or "LADID"); (2) "Central City East Association,"

6 | ("CCEA") a non-profit organization of property owners that administers the

7 | Downtown Industrial District Business Improvement District; and (3) the City of

8 | Los Angeles.  As will be discussed below, the City of Los Angeles is the only

9 | defendant which is a government entity.  Both the Downtown Industrial Business

10 | Improvement District and CCEA are private entities.  Neither the Business

11 | Improvement District, nor the CCEA are agents of the City of Los Angeles.

12 | **Plaintiffs' Claims**

13 | Plaintiffs seek injunctive relief and damages against Defendants under 42

14 | U.S.C. Section 1983 for violations of their Fourth, Fifth and Fourteenth

15 | Amendments. (Complaint, p.2:1-5).  Plaintiffs also allege the following state law

16 | claims against Defendants:  Violation of State Law Civil Rights under Cal. Civil

17 | Code Section 52.1; Conversion; and Trespass to Personal Property. Plaintiffs seek

18 | relief in the form of compensatory damages, injunctive relief and declaratory relief.

19 | **II.  THE ESTABLISHMENT OF "BUSINESS  IMPROVEMENT**

20 | **DISTRICTS" PURSUANT TO THE PROPERTY AND BUSINESS**

21 | **IMPROVEMENT DISTRICT LAW OF 1994**

22 | In 1994, the California legislature enacted the "Property and Business

23 | Improvement District Law of 1994," (California Street and Highways Code

24 | Sections 36600 – 36671), with the goal of promoting revitalization in economically

25 | disadvantaged business districts through *improvements* and *activities* funded by

26 | special assessments. (Section 36601, *emphasis added*).  "Improvements" are

27 | defined by Section 36610 as "the acquisition, construction, installation, or

28 | maintenance of any tangible property with an estimated useful life of five years or

4

1   more" and include parks, fountains, sidewalks, plazas, pedestrian malls, and

2   planting areas, among other things. "Activities" under Section 36613(e) include

3   "Providing security, sanitation, graffiti removal, street and sidewalk cleaning, and

4   other municipal services supplemental to those normally provided by the

5   municipality." The activities and improvements of a Business Improvement

6   District are funded through a special assessment (Section 36606).

7        A city initiates proceedings to form a business improvement district "upon

8   the submission of a written petition, signed by the property or business owners in

9   the proposed district who will pay more than 50 percent of the assessments

10  proposed to be levied...(Section 36621(a)). The petition must include a summary

11  of a plan for the proposed operations of the business improvement district. (Section

12  36621(b)). The plan must include a description of the boundaries of the district, a

13  listing of each business and property that will be assessed, the improvements and

14  activities to be funded, sources of financing, a schedule for implementation of the

15  improvements and activities, and rules and regulations for the district. (Section

16  36622).

17       If the City supports the proposal, it holds public hearings on the plan with

18  notice to all property and business owners affected. (Sections 36623-36626). The

19  affected property and business owners then vote on the plan. (Section 36623 and

20  Govt. Code Section 53753).

21       Once a business improvement district is established, the district may be

22  administered directly by the city, or by an "owners' association" that is under

23  contract with the City.   (Section 36651).

24       California Street and Highways Code Section 36614.5 provides:  "Owners'

25  association" means a *private* nonprofit entity that is under contract with a city to

26  administer or implement activities and improvements specified in the management

27  district plan. (*emphasis added*). "An owners' association is a *private entity* and

28  *may not be considered a public entity for any purpose,* nor may its board

1  members or staff be considered to be public officials for any purpose." (*emphasis*

2  *added*). In the present case, the owners association that that administers the

3  "Downtown Industrial Business Improvement District" is the "Central City East

4  Association" (CCEA).

5  　　　The statutory scheme establishing and governing the Downtown Industrial

6  Business Improvement District, and the owners association, CCEA, provides in

7  unequivocal terms that these entities are private, and distinct from the City of Los

8  Angeles.  They are not public entities nor are they agents of the City.  Indeed,

9  CCEA and the Downtown Industrial Business Improvement district have their own

10  legal counsel, provided through a policy of insurance, and are not represented by

11  the Los Angeles City Attorney's Office.  Plaintiffs' attempt to characterize the

12  Defendants as "joint actors" having "joint obligations" (Complaint. p.9:13-14) is

13  misguided, and is contradicted by statute, and the factual realities of the

14  arrangement between these entities.  Because the claims of alleged wrongdoing, set

15  forth in the complaint, only involve employees of the Downtown Industrial

16  Business Improvement District, and CCEA, but not the City, all claims against the

17  City should be dismissed.

18  **II.    LEGAL STANDARDS PERTAINING TO FRCP 12(b)(6) MOTIONS**

19  　　　Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a

20  "short and plain statement of the claim showing that the pleader is entitled to

21  relief." A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)

22  challenges the sufficiency of allegations in the complaint.  Under Rule 12(b)(6) a

23  dismissal is proper where there is either a "lack of a cognizable legal theory" or

24  "the absence of sufficient facts alleged under the cognizable legal theory."

25  *Balisteri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1990).  When

26  considering a 12(b)(6) motion, "all allegations of material fact are accepted as true

27  and should be construed in the light most favorable to the plaintiff." *Resnick v.*

28  *Hayes,* 213 F.3d 443, 447 (9th Cir. 2000).

To survive a Rule 12(b)(6) motion to dismiss, plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, at 555.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly* at 556.

Two working principles underlie the Supreme Court's decision in *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to *legal conclusions*." (emphasis added) *Iqbal* at 678. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal* at 679, quoting *Twombly* at 556.   "While legal conclusions can provide the framework of a complaint, they must be supported by *factual allegations*." (emphasis added) *Ashcroft* at 679.

As discussed below, Plaintiffs' complaint is confusing and unclear, and contains incorrect legal conclusions as well as legal conclusions which lack factual support.

## III.  **DISCUSSION**

### A. **The Complaint is Confusing and Unclear**

The complaint contains five confusing claims, consisting of both state and federal law, mixed together, and styled as follows:

(1) " FIRST CAUSE OF ACTION: Right to Be Secure from Unreasonable Seizures, 42 U.S.C. Section 1983 – Fourth Amendment; Art. 1 Section 13, California Constitution" against "All Defendants" (Complaint, p.26:24-28);

(2) "SECOND CAUSE OF ACTION: Right to Due Process of Law, 42 U.S.C. Section 1983, Fifth and Fourteenth Amendments; Art. I, section 7 Calif. Constitution against "All Defendants" (Complaint, p.28:6-10);

1    (3) "THIRD CAUSE OF ACTION: Violation of Civil Rights: Interference By

2    Threat, Intimidation or Coercion, California Civil Code Section 52.1" (Complaint,

3    p. 30:7-9);

4    (4) "FOURTH CAUSE OF ACTION: Conversion" (Complaint, p. 30:21-22);

5    (5) "FIFTH CAUSE OF ACTION: Trespass to Personal Property" (Complaint,

6    p. 31:12-13).

7        While the first two claims are alleged against "All Defendants," it is unclear

8    whether the third, fourth and fifth claims (state claims) are alleged against the City or

9    CCEA or the Business Improvement District, or some combination of the three.

10   Beyond that, the complaint does not identify which Plaintiff or Plaintiffs bring each

11   of the five claims.  Is CANGRESS alleging conversion? Against whom? Is L.A.

12   Catholic Worker alleging trespass to real property?  A review of the lengthy 26 pages

13   worth of preliminary information in the complaint does not easily answer these

14   questions.

15       Adding to the confusion, the first page of the Complaint lists five claims,

16   which are *different* than the five listed above in the body of the complaint.  Those

17   claims listed on the first page are: (1) 42 U.S.C. Section 1983 and Fourth, Fifth and

18   Fourteenth Amendments; (2) California Constitution Article I, Sections 7 and 13;

19   (3) California Civil Code Sections 52, 52.1; (4)  Conversion; and (5) Trespass to

20   Personal Property.   On the first page, all alleged violations of the California

21   Constitution are grouped together as a single claim. But in the body of the

22   complaint, the State Constitutional claims are split between the First and Second

23   claims.   The title page of the Complaint groups together all of the Section 1983

24   claims (Fourth, Fifth and Fourteenth Amendment violations); however, in the body

25   of the complaint, alleged violations of the Fourth Amendment are part of the First

26   Claim, and violations of the Fifth and Fourteenth Amendment are part of the

27   Second Claim.

28       At pages 19 through 24 the complaint describes various incidents alleged by

8

1   individual plaintiffs Harry James Jones, Louis Grady, Walter Shoaf and Lloyd

2   Hinkle. Yet, nowhere is there a single allegation that any employee of the City of

3   Los Angeles took the property of any of these four plaintiffs in violation of the

4   Fourth Amendment. Nor are there any allegations that any City of Los Angeles

5   employee "converted" property belonging to any of these individual plaintiffs.

6        Additionally, the complaint does not identify whether individual Plaintiffs

7   Jones, Grady, Shoaf and Hinkle are members of CANGRESS. Nor does the

8   complaint identify whether the four individual Plaintiffs are clients of L.A.

9   Catholic Worker.

10        The prayer of the complaint does not provide any guidance either. For

11   example, paragraph "1" of the prayer (p.32:4-5) seeks injunctive relief against

12   "defendants" in the *plural,* restraining defendants from their "policies, practices,

13   and conduct", but does not specify *which* defendants. However, paragraph "2" of

14   the prayer at p.32:6-8 seeks declaratory relief that "defendant's policies, practices,

15   and conduct" are unconstitutional, referring to "defendant" in the *singular.*

16        The complaint is vague and conclusory, and only provides supporting factual

17   detail with respect to the hardships endured by plaintiffs Jones, Grady, Hinkle and

18   Shoaf. Indeed, none of the claims made by the individual plaintiffs involve the

19   City of Los Angeles or any of its employees – but rather, BID Officers who are

20   privately employed. The closest the complaint comes to providing any specific

21   factual detail about an employee of the City of Los Angeles interacting with a

22   Plaintiff at is p. 23:17-24:5. There, the complaint describes a dispute between

23   CANGRESS members and BID Officers who were seizing property they believed

24   to be abandoned. The complaint alleges that the property belonged to Plaintiff

25   Hinkle. LAPD officers intervened to keep the peace while BID Officers were

26   taking the property. This is the only specific factual allegation in the entire

27   complaint describing conduct by any employee of the City of Los Angeles. But,

28   these facts do not amount to "threats and intimidation" as alleged in the complaint.

These facts do not support any of the causes of action pled in the complaint.  The conduct described in the complaint is not sufficient to state a plausible claim against the City of Los Angeles and for this reason, each claim against the City should be dismissed.

**B.**     <u>**Plaintiffs' claims against the City of Los Angeles are based upon incorrect legal conclusions, and legal conclusions without sufficient factual support**</u>

The complaint fails to state claims against the City of Los Angeles which comply with Fed. Rule of Civ. Pro 8. The complaint states mere legal conclusions without factual support.  It alleges legal relationships between co-defendants that do not exist. Some of legal conclusions in the complaint are not only lacking in factual support, but are incorrect statements of law.

Plaintiffs appear to be arguing that the City is liable for alleged actions of the Business Improvement District, and the CCEA.  The complaint contains details of actions by private security guards employed by the Business Improvement District, referred to as "BID officers".  (Complaint, p.12:11-17).  Plaintiffs seem to suggest that these private employees are agents of the City and that the City is liable for their actions.

Various incorrect legal conclusions alleged throughout the complaint, and legal conclusions lacking factual support are listed and analyzed below:

(1) Plaintiffs contend that the LADID and the CCEA act as *agents* of the City (Complaint, p.8:26-27). Plaintiffs erroneously claim that LADID was created by the City and that the CCEA is an agent of the City. (Complaint, p. 24:21-24). This is incorrect.  Property owners, not the City, created LADID, pursuant to the statutes governing Business Improvement Districts.  The "Property and Business Improvement District Law of 1994 specifically provides that Business Improvement Districts and owners associations are private entities and may not be considered a public entity for any purpose.  LADID and CCEA are not agents of

1 | the City – as evidenced by the fact that they have their own counsel provided

2 | pursuant to a policy of insurance.

3 |     (2) Plaintiffs contend that defendants *conspired* together to deprive plaintiffs

4 | of their constitutional rights. (Complaint, p.8:26-28; p.25:1-7).  Plaintiffs' claims

5 | of conspiracy between the City and the other defendants are nothing more than

6 | conclusory allegations. A bare assertion of "conspiracy" is not sufficient to state a

7 | plausible claim of conspiracy, nor are conclusory allegations of "an agreement" at

8 | some unidentified point in time. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

9 | 556-557.  Indeed, the complaint provides no more than: "On *information and*

10 | *belief*, the CITY and its officers and/or agents urged the BID to remove homeless

11 | individuals' property on Skid Row." (Complaint at 25: 3-5).  "Information and

12 | belief" is not a specific factual allegation.

13 |     (3) Plaintiffs contend that defendants are violating the injunction in the case

14 | of *Lavan v. City of Los Angeles,* CV 11-2874 PSG (AJWx) (Complaint, p.5:1-4).

15 | First, of the three defendants in this case, only the City of Los Angeles is a party to

16 | the *Lavan* injunction.  Moreover, Plaintiffs' complaint provides no factual support

17 | whatsoever for Plaintiffs' claim that defendants are conspiring to violate the *Lavan*

18 | injunction.

19 |     (4) Plaintiffs contend that defendants are "joint actors" with "joint

20 | obligations" and each defendant is responsible for the conduct and injuries alleged

21 | in the complaint. (Complaint, p.9:14-15).  Plaintiffs' allegation that the City of Los

22 | Angeles is a "joint actor" with the other two defendants is not supported by law or

23 | by any of the facts. Are Plaintiffs contending that Defendants are "joint

24 | tortfeasors" or "co-conspirators" or "principal and agent"?  Plaintiffs use of the

25 | terms "joint actors" and "joint obligations" does not add any clarity to the

26 | complaint, and infuses confusing and unsubstantiated legal theories into the

27 | Compliant.

28 |

IV.   **CONCLUSION**

The City is not a proper party in this case.  Neither the LADID nor the CCEA are agents of the City.  Nor are they public entities. BID Officers are not employees of the City. The Complaint contains no facts to support any of the five causes of action pled against the City of Los Angeles. Accordingly, the entire action against the City of Los Angeles should be dismissed.

DATED:  November 21, 2014

**MICHAEL N. FEUER**, City Attorney
**THOMAS H. PETERS**, Chief Assistant City Attorney
**RONALD S. WHITAKER**, Managing Assistant City Attorney


By: _____
**ELIZABETH T. FITZGERALD**
Deputy City Attorney, *Attorneys for Defendant*
**CITY OF LOS ANGELES**

12

EXHIBIT H

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA       #22

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-7344 PSG (AJWx) | Date | January 13, 2015 |
|---|---|---|---|
| Title | Los Angeles Catholic Worker, *et al.* v. Los Angeles Downtown Industrial District Business Improvement District, *et al.* | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):**      **Order DENYING Defendant City of Los Angeles's motion to dismiss.**

Pending before the Court is Defendant City of Los Angeles's motion to dismiss Plaintiffs' complaint. Dkt. # 22. After considering the papers submitted by the parties and the arguments made during oral argument, the Court DENIES Defendant's motion.

I.     <u>Background</u>

Plaintiffs Los Angeles Catholic Worker (LACW), CANGRESS, aka The Los Angeles Community Action Network ("LA CAN"), Harry James Jones ("Jones"), Louis Grady ("Grady"), Lloyd Hinkle ("Hinkle"), and Walter Shoaf ("Shoaf") (collectively, "Plaintiffs") filed this action on September 19, 2014 against Defendants Los Angeles Downtown Industrial District Business Improvement District ("LADID" and "DID"), Central City East Association, Inc. ("CCEA"), and the City of Los Angeles (the "City") (collectively, "Defendants"). Dkt. # 1.

Plaintiffs are four homeless individuals – Jones, Grady, Hinkle, and Shoaf ("individual Plaintiffs") – who live in the City of Los Angeles's "Skid Row" area and two organizations that operate in this same area. *Id.* ¶ 6. According to Plaintiffs, Defendants have "engaged in a long-running campaign to seize homeless people's unattended property" which has resulted in violations of their rights under both Federal and California state law. *See Compl.* ¶ 4. Plaintiffs allege in the Complaint that Defendants, aware that homeless people leave their property unattended at times during the day to, *inter alia*, get food, use the restroom, attend court proceedings, and get medical treatment, have seized this property from Plaintiffs and other homeless individuals without notice. *Id.* ¶¶ 7, 8.

Plaintiffs plead that these seizures have been performed by individuals employed by the LADID and the CCEA acting under color of law. *Id.* ¶¶ 19-26. The LADID is an entity created

1

Case 2:14-cv-07344-PSG-AJW   Document 60-2   Filed 12/08/15   Page 49 of 128   Page ID
Case 2:14-cv-07344-PSG-AJW   Document 30-5   Filed 01/13/15   Page 2 of 7   Page ID #:241
#:606

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 14-7344 PSG (AJWx) | | Date | January 13, 2015 |
|---|---|---|---|---|
| Title | Los Angeles Catholic Worker, *et al.* v. Los Angeles Downtown Industrial District Business Improvement District, *et al.* | | | |

by the City of Los Angeles to promote "the economic revitalization and physical maintenance of the business district[]." *Id.* ¶¶19, 26. The LADID abides by a Management District Plan that outlines the approved activities of the Business Improvement District. *Id.* ¶ 27. Plaintiffs allege that pursuant to "the current Management District Plan" the "LADID provides personnel to patrol the streets of the LADID and to perform municipal services" that include "sanitation and maintenance services to the public streets and sidewalks in the District." *Id.* ¶¶ 31-33. The CCEA is a non-profit corporation "contracted by the City of Los Angeles" to manage the LADID. *Id.* ¶¶ 19-26.

Plaintiffs allege that the City is liable for the actions taken by the LADID and CCEA through theories of agency and conspiracy. *Id.* ¶ 21. Plaintiffs also contend that the City has acted as a joint actor with the other two Defendants and is, therefore, responsible for the conduct taken by the LADID and CCEA.

Plaintiffs' Complaint brings forth the following causes of action against Defendants: (1) violation of their right to be secure from unreasonable seizures under 42 U.S.C. § 1983, the Fourth Amendment of the United States Constitution, and Article 1, Section 13 of the California Constitution; (2) violation of their right to due process of law under 42 U.S.C. § 1983, the Fourth Amendment of the United States Constitution, and Article 1, Section 7 of the California Constitution; (3) violation of their civil rights through interference by threat, intimidation, or coercion under California Civil Code § 52.1; (4) conversion, and (5) trespass to personal property. *See Compl.* ¶¶ 92-117.

On November 21, 2014, Defendant City of Los Angeles brought this motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Mot.*

II.   <u>Legal Standard</u>

A motion to dismiss under Rule 12(b)(6) tests whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When deciding a Rule 12(b)(6) motion, the court must accept the facts pleaded in the complaint as true, and construe them in the light most favorable to the plaintiff. *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013); *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009). The court, however, is not required to accept "legal conclusions . . . cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *see Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 14-7344 PSG (AJWx) | | Date | January 13, 2015 |
|---|---|---|---|---|
| Title | Los Angeles Catholic Worker, *et al.* v. Los Angeles Downtown Industrial District Business Improvement District, *et al.* | | | |

After accepting all non-conclusory allegations as true and drawing all reasonable inferences in favor of the plaintiff, the court must determine whether the complaint alleges a plausible claim to relief. *See Iqbal*, 556 U.S. at 679-80. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

III.   Discussion

The City brings two types of arguments to support its contention that the Court should dismiss Plaintiffs' Complaint. First, the City argues that the Complaint is vague and unclear. *Mot.* 3:6-7. Second, the City claims that Plaintiffs have failed to allege sufficient facts to establish the City's liability through theories of agency, conspiracy, or as joint tortfeasors. *Id.* 3:7-9. The Court considers each argument in turn.

A.   Vague and Confusing Complaint

The City's first argument is that the Court should dismiss Plaintiffs' Complaint because it is confusing and unclear. *Mot.* 7:20-21. Specifically, the City points out that the Complaint contains five causes of action and two of those causes of action – violations of the right to be secure from unreasonable seizures and violation of the right to due process of law – are supported by both federal and California state law. *Id.* 7:23-28. The City further notes that while the first two causes of action are alleged against "All Defendants," the other three contain no such heading, making it difficult for the City to determine whether those causes of action are brought against it. *Id.* The City also states that it is unclear whether all Plaintiffs, or only some, are bringing all five causes of action. *Id.* 8:7-14. Lastly, the City tells the Court that the Complaint does not identify whether the individual Plaintiffs are members of LA CAN or clients of LACW, but fails to elaborate on the legal significance of such omission. *See id.* 9:6-9.

The Court disagrees with the City. After reviewing the Complaint, the Court does not agree that it is so confusing and unclear that it warrants dismissal. Although it is not typical for plaintiffs, as Plaintiffs do, to have causes of action that are supported by both Federal and State law, Plaintiffs clearly include the source for their claims. Furthermore, it is clear from reading

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-7344 PSG (AJWx) | | Date | January 13, 2015 |
|---|---|---|---|---|
| Title | Los Angeles Catholic Worker, *et al.* v. Los Angeles Downtown Industrial District Business Improvement District, *et al.* | | | |

the Complaint that all Plaintiffs are bringing these five claims against all Defendants.[1]  *See Compl.* ¶¶ 92-117.  The Court notes that the City's comment regarding the Complaint's failure to indicate whether the individual Plaintiffs are members of LA CAN or LACW alludes to a standing challenge to these two Plaintiffs.  *See Mot.* 9:6-9.  However, the City neither elaborates nor supports this potential argument, and thus, the Court deems it waived.  *See, e.g. Schlegel v. Wells Fargo Bank, N.A.*, 720 F.3d 1204, 1210 n.4 (9th Cir. 2013) (deeming issue waived where it was not supported by any argument).  The Court DENIES the City's motion to dismiss on these grounds.

B.     Failure to State a Claim

The City argues that the claims against it should be dismissed because none of the allegations in the Complaint involve the City of Los Angeles or any of its employees and because Plaintiffs have failed to allege sufficient facts to establish liability through theories of agency, conspiracy, or as joint tortfeasors.  *Mot.* 9:16-17; 108-11:12.  Plaintiffs do not disagree that the allegations fail to name the City or its employees as the actors, but argue that they have plead sufficient facts making the City liable through theories of agency, conspiracy, and as joint tortfesors.  *See Opp.* 5: 16-14: 16.

1.     Agency Liability

According to the City, LADID and CCEA are not its agents because 1) these entities were not created by the City, 2) these entities have been designated by statute as "private entities" that "may not be considered . . . public enti[ties] for any purpose," and 3) they have their own counsel which is provided "pursuant to a policy of insurance."  *Mot.* 10:19-11:2.  Neither these facts – if true – or the list of factors that the City includes in its reply to Plaintiffs' opposition convince the Court, at this stage, that Plaintiffs have failed to allege sufficient facts to establish the City's liability through an agency theory.

Plaintiffs plead that the City controls the LADID and the CCEA – that it approves its activities and provides it with funding – and argue that these entities perform functions that are normally performed by the Bureau of Street Services.  *Compl.* ¶¶ 21, 26, 28, 30; *Opp.* 8:22-9:5.  These allegations are sufficient to plead that there is an agency relationship between the City and these entities.  *See Sugar Co-op v. Archer-Daniels-Midland Co.*, 2012 WL 3101659, at *5 (C.D.

---

[1] To the extent that the City is confused about the causes of action that Plaintiffs have brought against it, the City also clarified during the hearing held on January 12, 2015 that all five causes of action are brought against the City.

Case 2:14-cv-07344-PSG-AJW   Document 60-2   Filed 12/08/15   Page 52 of 128   Page ID
Case 2:14-cv-07344-PSG-AJW   Document 30-1 Filed 01/13/15   Page 5 of 7   Page ID #:244
#:905

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-7344 PSG (AJWx) | Date | January 13, 2015 |
|---|---|---|---|
| Title | Los Angeles Catholic Worker, *et al.* v. Los Angeles Downtown Industrial District Business Improvement District, *et al.* | | |

Cal. 2012) ("Actual control is not necessary, as long as there is an agreement that the principal has the right to control the agent, an agency relationship exists.").

Plaintiffs also argue that the Complaint contains sufficient facts to support an alternate agency theory – agency through ratification. Under California law, ratification can establish a principal-agent relationship when an individual, after being apprised of all the facts surrounding a transaction, claims "the benefits of an act, which without authority, another has voluntarily done while ostensibly acting as the agent of him who affirms the act and who had the power to confer authority." *Reusche v. California Pacific Title Ins. Co.*, 231 Cal. App. 2d 731, 737 (Cal. App. Ct. 1965). The City has failed to show the Court that Plaintiffs has not established agency liability through a ratification theory. In the Complaint, Plaintiffs allege that the LADID and CCEA perform municipal services. *See Compl.* ¶ 26. These services include "providing security, sanitation, graffiti removal, street and sidewalk cleaning, and other municipal services supplemental to those normally provided by the municipality." *Id.* According to Plaintiffs, after the City was apprised about LADID and CCEA's violations, it did nothing to stop them. *Id.* ¶¶ 90-91. Furthermore, Plaintiffs plead that even after receiving reports of LADID's actions the City did not disestablish the LADID and, instead, "renewed the LADID on July 30, 2014 for another seven years." *Id.* ¶ 91. The allegations included in the Complaint are sufficient to establish liability through ratification. Plaintiffs have sufficient plead facts that by encouraging the seizures – which allegedly benefit the City because they keep the streets clean – after being told about them, the City has claimed the benefits of LADID and CCEA's actions.

The facts included in the City's motion do not show the Court that Plaintiffs' have failed to plead an agency theory. First, that LADID and CCEA are private entities does not mean that they could not be the agents of the City. *See Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961) (finding State of Delaware liable for the actions of a privately owned restaurant). Also, that these entities were not created by the City and have their own counsel is not dispositive. Therefore, the Court DENIES the City's motion to dismiss based on this argument.

2.   Conspiracy Liability

The City also argues that Plaintiffs have failed to plead facts that the City is liable for the actions taken by LADID and CCEA through a conspiracy theory under *Twombly*. *Mot.* 11:3-12. The Court disagrees.

Although it is true that Plaintiffs' bare assertion that "the CITY and its officers and/or agents urged the BID to remove homeless individuals' property on Skid Row" would not pass

5

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-7344 PSG (AJWx) | | Date | January 13, 2015 |
|---|---|---|---|---|
| Title | Los Angeles Catholic Worker, *et al.* v. Los Angeles Downtown Industrial District Business Improvement District, *et al.* | | | |

muster under the pleading standards established by *Twombly* and *Iqbal* to plead that there was a conspiracy, Plaintiffs have alleged more than that. *See Compl.* ¶ 25. For example, Plaintiffs allege that Los Angeles Police Department officers prevent people from intervening when LADID and CCEA employees are in the process of removing property from the streets in Skid Row, they alert LADID and BID "where and when homeless individuals' property is unattended," and "repeatedly refuse to take statements or file reports for theft by individuals whose unabandoned property has been taken by the [LADID and BID] officers." *Compl.* ¶¶ 50, 52. The Complaint also includes an allegation describing an event wherein a Los Angeles Police Officer aided LADID and BID in seizing Plaintiff Hinkle's property and informing Hinkle's neighbor, who was watching his property, that "[they] [were] going to take someone's property that [was] abandoned." *Id.* ¶ 23. Pursuant to *Iqbal* the Court accepts Plaintiffs' allegations as true and draws all reasonable inferences in favor of Plaintiffs. *See Iqbal*, 556 U.S. at 679-80. Plaintiffs have alleged sufficient facts to establish a conspiracy between the City and LADID and CCEA and therefore, the Court DENIES the City's motion to dismiss on this ground.

### 3.     Joint Tortfeasor Liability

The City also argues that Plaintiffs' allegation that the City is a joint actor with the other two "is not supported by law or by any of the facts" contained in the Complaint. *See Mot.* 11:19-27. Plaintiffs, in turn, argue that there are several allegations supporting the theory that the City has acted as a joint tortfeasor with LADID and CCEA. The Court agrees. For example, there are allegations in the Complaint that a City police officer helped LADID and CCEA seize Plaintiff Hinkle's property and told Mr. Hinkle's neighbor **"we're** going to take someone's property that is abandoned." *Compl.* ¶ 81 (emphasis added). Plaintiffs also plead that the City helped LADID identify property to remove and "regularly participated, through threats and intimidation, in torts committed by the other defendants." *Id.* ¶ 85. These allegations are sufficient to state a claim for joint tortfeasor liability. Therefore, the Court DENIES the City's motion to dismiss Plaintiffs' claims based on this argument.

### 4.     *Lavan* Injunction

In its motion, the City also argues that neither it, nor LADID or CCEA, are violating an injunction ordered by this Court in *Lavan v. City of Los Angeles*, CV 11-2874 PSG (AJWx), which enjoins the City from seizing property in Skid Row under certain circumstances and from immediately destroying property it seized. *Mot.* 11:13-18. The City also claims that any relief related to an alleged violation of this injunction "should be sought in the *Lavan* case rather than initiating another lawsuit." *Id.* 7:10-13. Whether the City has violated this injunction, however, is not dispositive for purposes of determining whether Plaintiffs' complaint should be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-7344 PSG (AJWx) | Date | January 13, 2015 |
|---|---|---|---|
| Title | Los Angeles Catholic Worker, *et al.* v. Los Angeles Downtown Industrial District Business Improvement District, *et al.* | | |

dismissed.  The Complaint's causes of actions are supported by rights afforded by Federal and State law and not by the injunction ordered in *Lavan. See Compl.*

IV.    Conclusion

    For the foregoing reasons, the Court DENIES the City's motion to dismiss Plaintiffs' complaint.

    **IT IS SO ORDERED.**

EXHIBIT I

Fernando Gaytan (SBN 224712) fgaytan@lafla.org
Paul J. Estuar (SBN 167764) pestuar@lafla.org
Shayla R. Myers (SBN 264054) smyers@lafla.org
**LEGAL AID FOUNDATION OF LOS ANGELES**
7000 S. Broadway
Los Angeles, CA 90003
Tel:   (213) 640-3983
Fax:   (213) 640-3988


Paul L. Hoffman (SBN 71244) hoffpaul@aol.com
Catherine Sweetser (SBN 271142) catherine.sdshhh@gmail.com
**SCHONBRUN DeSIMONE SEPLOW HARRIS & HOFFMAN, LLP**
723 Ocean Front Walk, Suite 100
Venice, CA 90291
Tel: (310) 396-0731
Fax: (310) 399-7040

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| LOS ANGELES CATHOLIC WORKER, AN UNINCORPORATED ASSOCIATION; CANGRESS, A NON-PROFIT CORPORATION; HARRY JAMES JONES, LOUIS GRADY, LLOYD HINKLE, WALTER SHOAF, INDIVIDUALS,<br><br>                    Plaintiff(s),<br><br>           vs.<br><br>LOS ANGELES DOWNTOWN INDUSTRIAL DISTRICT BUSINESS IMPROVEMENT DISTRICT, CENTRAL CITY EAST ASSOCIATION, INC., CITY OF LOS ANGELES; DOES 1 -10,<br><br>           Defendant(s). | CASE NO. CV CV14-7344 PSG(AJWx)<br><br>Hon. Phillip J . Gutierrez<br><br>JOINT RULE 26(f) REPORT OF COUNSEL<br><br><br>**Scheduling Conference**<br>Date: March 30, 2015<br>Time; 2:00 PM<br>Ctrm: 880-Roybal |

1

Case 2:14-cv-07344-PSG-AJW   Document 60-2   Filed 12/08/15   Page 57 of 128   Page ID
Case 2:14-cv-07344-PSG-AJW   Document 46-1 Filed 03/23/15   Page 2 of 6   Page ID #:285
#616

**TO THE HONORABLE COURT:**

Counsel for the parties met and conferred on March 9, 2015, regarding the issues set forth in *Federal Rules of Civil Procedure*, Rule 26(f), and *Central District Local Rules*, Rule 26-1, and hereby submit the following Joint Report:

**I.     REPORT PER *FEDERAL RULE OF CIVIL PROCEDURE*, RULE 26(f).**

**A.     Rule 26(F)(3)(A): Initial Disclosures.**

The parties intend to exchange initial disclosures on March 23, 2015.

**B.     Rule 26(F)(3)(B): Subjects For Discovery, When Discovery Should Be Completed And Whether Discovery Should Be Conducted In Phases Or Focused On Particular Issues.**

**a.     Subjects for Discovery.**

Plaintiffs' Anticipated Discovery: Plaintiffs seek to discover documents related to the seizure and storage of property by defendants, including but not limited to photographs, logs, and statements by BID officers and the LAPD; documents related to the voluntary and involuntary storage units operated by defendants; documents related to any collaboration or cooperation between defendants; and documents related to the creation and ongoing operation of the BID, both from defendant City and defendants CCEA and LADID.    Plaintiffs will take the depositions of BID personnel, including but not limited to the current and former Executive director and management, and BID officers; LAPD officers and command staff; and 30(b)(6) depositions of the BID related to the seizure and storage of property and of the City related to the authorization and ongoing oversight over the BID and LAPD practices in downtown Los Angeles.  It is possible that Plaintiffs will need to seek leave of the court at a later time to exceed the limit of 10 depositions.

2

Case 2:14-cv-07344-PSG-AJW   Document 60-2   Filed 12/08/15   Page 58 of 128   Page ID
#617
Case 2:14-cv-07344-PSG-AJW   Document 40   Filed 03/23/15   Page 3 of 6   Page ID #:286

<u>Defendant City Of Los Angeles' Anticipated Discovery:</u>  The City will conduct written discovery consisting of requests for production of documents and things, interrogatories, and requests for admissions on subjects including but not limited to liability and damages.  In addition, the City will conduct discovery in order to obtain Plaintiffs' medical records.  The City will take the depositions of each individual Plaintiff as well as individuals in Cangress and Los Angeles Catholic Worker.  The City does not anticipate taking more than 10 depositions during fact discovery. The City may need to seek a protective order, depending on the discovery sought by Plaintiffs.

<u>Defendants CCEA and LADID's Anticipated Discovery:</u> LADID and CCEA intend to conduct the following discovery: moderate written discovery, including requests for production of documents, interrogatories, and requests for admissions; depositions of each individual Plaintiff, individuals in Cangress and Los Angeles Catholic Worker, and any other fact witnesses or designated experts.  LADID and CCEA do not anticipate taking more than 10 depositions during fact discovery.

**b.     When Discovery Should Be Completed.**

The parties propose a discovery cut-off based on the schedule set forth in Section IV below.

**c.     Whether Discovery Should Be Conducted In Phases.**

The parties are in agreement that discovery need not be conducted in phases.

**C.     Rule 26(f)(3)(C): Electronically Stored Information.**

At this time, the parties do not anticipate any issue regarding disclosure or discovery of electronically stored information.

**D.     Rule 26(f)(3)(D): Issues Regarding Claims Of Privilege.**

At this time, the parties do not foresee any specific issues regarding claims of privilege, and will address any specific privileged documents by objections to

discovery requests.  The parties intend to request a protective order to protect the privacy related to relevant medical documents.

**E.      Rule 26(f)(3)(E): Changes In Limitation On Discovery.**

At this time, the parties are not seeking any modification to the limitations set forth in the *Federal Rules of Civil Procedure* and the *Central District Local Rules*.  There may be a need for additional depositions and the parties will request those at the appropriate time.

**F.      Rule 26(f)(3)(F): Other Orders That Should Issue.**

At this time, the parties do not believe that there is any need for any orders under the *Federal Rules of Civil Procedure* aside from a possible protective order.

## II.      REPORT PER CENTRAL DISTRICT LOCAL RULES, RULE 26-1.

**A.      Local Rule 26-1(a): Complex Cases.**

The parties agree that this case is not complex and does not warrant the utilization of any procedures in the Manual for Complex Litigation.

**B.      Local Rule 26-1(b): Motion Schedule.**

The parties have set forth an agreed-upon proposed case schedule below in Section IV.

**C.      Local Rule 26-1(c): ADR.**

The parties have conducted a settlement conference before Magistrate Judge Woehrle on February 27, 2015.  The parties intend to return for another session at a future time.

**D.      Local Rule 26-1(d): Trial Estimate.**

The parties agree the trial estimate should be seven or eight days.

**E.      Local Rule 26-1(e): Likelihood Of Additional Parties.**

No additional parties are anticipated at this time; however plaintiffs may add additional parties after beginning discovery.

**F.     Local Rule 26-1(f): Expert Witnesses.**

At this time, the parties propose that expert disclosures occur on April 19, 2016, as set forth below in the Proposed Case Schedule below.  Further, the parties propose rebuttal expert disclosure occur on May 19, 2016.

## III.   PROPOSED CASE SCHEDULE.

| Matter | Plaintiff's Request | Defendants' Request | Court's Order |
|---|---|---|---|
| Trial Date | July 25, 2016 | July 25, 2016 | |
| Pretrial Conf. | July 5, 2016 | July 5, 2016 | |
| Expert Discovery Cut-off | June 5, 2016 | June 5, 2016 | |
| Last day to file Motions other than motions in limine | April 25, 2016 | April 25, 2016 | |
| Expert Disclosure (Rebuttal) | May 19, 2016 | May 19, 2016 | |
| Expert Disclosure (Initial) | April 19, 2016 | April 19, 2016 | |
| Non- Expert Discovery Cut-Off | March 28, 2016 | March 28, 2016 | |
| L/D to Amend Pleadings or Add Parties | December 4, 2015 | November 4, 2015 | |

DATED: March 23, 2015          SCHONBRUN
                              DESIMONE SEPLOW
                              HARRIS & HOFFMAN LLP


                              By: _____
                              CATHERINE SWEETSER
                              Attorneys for Plaintiffs

1    DATED: March 23, 2015          HILL FERRER LLP

2

3

4                                   By: /s Elissa Gysi

5                                       ELISSA GYSI
                                        Attorneys for Defendants Los Angeles
6                                       Downtown Industrial District Business
                                        Improvement District and Central City East
7                                       Association

8

9    Dated:    March 23, 2015         CITY OF LOS ANGELES

10

11                                    By: /s Elizabeth Fitzgerald

12
                                      ELIZABETH FITZGERALD
13                                    Attorneys for Defendant City of Los
                                      Angeles
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

EXHIBIT J

## Shayla R. Myers

| | |
|---|---|
| **From:** | Shayla R. Myers |
| **Sent:** | Wednesday, July 22, 2015 12:56 PM |
| **To:** | 'Elizabeth Fitzgerald'; Catherine Sweetser |
| **Cc:** | Karen Ruiz |
| **Subject:** | RE: LA Catholic Worker |

Beth,

That is fine.  This will confirm that Plaintiffs agree to an extension, and that Defendant City of Los Angeles's responses to Cangress's Requests for Production, previously due on August 20, will now be due on September 11, 2015.

Best,

Shayla

**From:** Elizabeth Fitzgerald [mailto:elizabeth.fitzgerald@lacity.org]
**Sent:** Wednesday, July 22, 2015 10:48 AM
**To:** Shayla R. Myers; Catherine Sweetser
**Subject:** LA Catholic Worker

Shayla and Catherine,

We just received Cangress' request for production of documents directed to the City of Los Angeles.

Could the City please have an extension of time -- until September 11, 2015  --  to serve its responses?

Thank you.

Sincerely,


Beth Fitzgerald
Deputy City Attorney
Office of the City Attorney
Business & Complex Litigation Division
(213) 473-6855

*****************Confidentiality Notice *************************
This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be confidential or protected by the attorney-client privilege and/or the work product doctrine. If you are not the intended recipient, be aware that any disclosure, copying,
distribution or use of the content of this information is prohibited. If you have received this communication in error, please notify us immediately by e-mail and delete the original message and any attachments without

reading or saving in any manner.

*********************************************************************

EXHIBIT K

**Shayla R. Myers**

| | |
|---|---|
| **From:** | Shayla R. Myers |
| **Sent:** | Thursday, September 03, 2015 1:38 PM |
| **To:** | 'Elizabeth Fitzgerald'; Catherine Sweetser; Catherine Sweetser |
| **Subject:** | RE: LA Catholic worker v City of LA-- request for one week extension |

Beth,

That's fine with us.  The new due date for the responses to Plaintiffs' requests for production of documents will be September 18, 2015.

Best,

Shayla

**From:** Elizabeth Fitzgerald [mailto:elizabeth.fitzgerald@lacity.org]
**Sent:** Thursday, September 03, 2015 1:30 PM
**To:** Shayla R. Myers; Catherine Sweetser; Catherine Sweetser
**Subject:** LA Catholic worker v City of LA-- request for one week extension

# Hi Shayla and Catherine,

Could I kindly have an additional week to serve the City's responses to LA CAN's request for production of documents?

Per our previous agreement the City's responses must be served by September 11, 2015.

Please let me know if you would be agreeable to moving the date to September 18, 2015.

Thank you!

Sincerely,

Beth Fitzgerald
Deputy City Attorney
Office of the City Attorney
Business & Complex Litigation Division
(213) 473-6855

1

****************Confidentiality Notice ************************
This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be confidential or protected by the attorney-client
privilege and/or the work product doctrine. If you are not the intended recipient, be aware that any disclosure,
copying,
distribution or use of the content of this information is prohibited. If you have received this communication in
error, please notify us immediately by e-mail and delete the original message and any attachments without
reading or saving in any manner.
****************************************************************

EXHIBIT L

**Shayla R. Myers**

| | |
|---|---|
| **From:** | Catherine Sweetser <catherine.sdshhh@gmail.com> |
| **Sent:** | Monday, September 28, 2015 3:09 PM |
| **To:** | Shayla R. Myers |
| **Subject:** | Fwd: Catholic Worker v. City of LA: responses to Plaintiff's RFP Set 1 |

---------- Forwarded message ----------
From: **Elizabeth Fitzgerald** <elizabeth.fitzgerald@lacity.org>
Date: Mon, Sep 28, 2015 at 3:05 PM
Subject: Re: Catholic Worker v. City of LA: responses to Plaintiff's RFP Set 1
To: Catherine Sweetser <catherine.sdshhh@gmail.com>

# Hi Catherine,

I was sick and out of the office for a few days last week.  I will have an amended privilege log prepared by Friday.

Thank you.


Sincerely,


Beth Fitzgerald
Deputy City Attorney
Office of the City Attorney
Business & Complex Litigation Division
(213) 473-6855

On Wed, Sep 23, 2015 at 12:26 PM, Catherine Sweetser <catherine.sdshhh@gmail.com> wrote:
Beth,

Plaintiffs' counsel are now in receipt of the responses you mailed to us.  We need a more detailed privilege log than the one you provided with your responses if we are going to meet and confer in any meaningful way.  The privilege log you sent us says "various" for every single entry except the objections.  It does not provide a single shred of information about the documents you are withholding: not the location, not the date, not the author, not the number or type or even a vague description of the documents being withheld.  Nor is any such information in the text of the responses.  How can we be expected to assess your claims of privilege without the information our RFP instructions clearly asked you to include?

Plaintiffs request that you supplement this privilege log by Monday, September 28, with actual information about the privileged documents that are being withheld, as requested on page 4 of our RFPs and as required by Rule 26.

Sincerely,
Catherine

--
Schonbrun De Simone Seplow Harris & Hoffman LLP
723 Ocean Front Walk
Venice, CA 90291
310.396-0731
fax:310.399-7040
www.losangelesemploymentlawyer.com
www.sdshh.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*Confidentiality Notice \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be confidential or protected by the attorney-client privilege and/or the work product doctrine. If you are not the intended recipient, be aware that any disclosure, copying,
distribution or use of the content of this information is prohibited. If you have received this communication in error, please notify us immediately by e-mail and delete the original message and any attachments without reading or saving in any manner.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

--
Schonbrun De Simone Seplow Harris & Hoffman LLP
723 Ocean Front Walk
Venice, CA 90291
310.396-0731
fax:310.399-7040
www.losangelesemploymentlawyer.com
www.sdshh.com

EXHIBIT M



**Legal Aid Foundation of Los Angeles**

**South Los Angeles Office**
7000 S. Broadway
Los Angeles, CA 90003
Phone: (213) 640-3950
Fax: (213) 640-3988
www.lafla.org

**Other Office Locations:**

**East Los Angeles Office,** 5228 Whittier Boulevard, Los Angeles, CA 90022  T: (213) 640-3883
**Long Beach Office,** 601 Pacific Avenue, Long Beach, CA 90802  T: (562) 435-3501
**Santa Monica Office,** 1640 5th Street, Suite 124, Santa Monica, CA 90401  T: (310) 899-6200
**West Office,** 1102 Crenshaw Boulevard, Los Angeles, CA 90019  T: (323) 801-7989

Writer's Direct Line (213) 640-3983                                    Our File Number 13-1229292

September 28, 2015

Elizabeth Fitzgerald
City Attorney of Los Angeles
600 City Hall East
200 N. Main St.
Los Angeles, CA 90012

Re: *LACW v. LADID*, Case No.: CV14-7344 PSG (AJWx)

Dear Ms. Fitzgerald:

We are in receipt of the City of Los Angeles's responses to Plaintiffs' requests for production. We are writing to confer about those responses, which we believe are woefully inadequate. You have refused to produce documents responsive to over half of our requests, regardless of how relevant and reasonably calculated to lead to admissible evidence the request may be, and the basis for your refusal to provide responses are simply boilerplate objections that are not responsive to the specific request.

Pursuant to Federal Rule 37.1, we request that we meet at our office on Tuesday, Oct 6 at 10:00 a.m. to meet and confer in person regarding the City's responses to our requests. It is, of course, our hope that we will be able to resolve many of these disputes. If we cannot reach some resolution at the meeting regarding the production of responsive documents, we will have no choice but to seek Court intervention.

Below is a summary of our objections to the City's responses to Plaintiff's requests; the failure to raise specific concerns does not waive other issues Plaintiffs may have to defendant's responses.

1. **Objections on the Basis that the Requests are "Vague, Overbroad, Burdensome, and Oppressive"**

The City has objected to every single request as "vague, overbroad, burdensome, and oppressive," regardless of how narrowly the request is tailored or how clearly the request for documents may be. (*see e.g.*, Request 69, seeking documents related to a single incident on June 30, 2014 as "overbroad, burdensome, and oppressive"; request 43, seeking audits and of CCEA/LADID and related documents as "vague, overbroad, burdensome, and oppressive" and not relevant). In some instances, these are the only objections to the requests. (See e.g.,



Requests 9, 61-63, 65, refusing to produce phone records or any relevant photos and video solely because the requests are "vague, overbroad, burdensome and oppressive").

These generic objections do not meet the City's burden under Federal Rule of Civil Procedure 34(a), (b)(2)(B) to include the specifics of the objection or how the objection relates to the documents demanded. *See e.g., Dolorian Capital, Inc. v. SOC, LLC* 2012 WL 4026818 (E.D. Cal 2012). If the City legitimately has a concern that a phrase is vague or that the request does not fully indicate what is being sought in the request, the City had an obligation to specifically raise that concern in its objections. The City cannot, as it has attempted to do here, simply refuse to provide responsive documents. The same is true for "burdensome and oppressive" objections. *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D.Cal.2006). The use of the boilerplate objection is insufficient to preserve any legitimate objection the City may have to the scope of the request, and the use of these objections to deny Plaintiff the discovery to which they are entitled is an abuse of the discovery process. *See Mart v. Bairses,*2012 U.S. Dist. Lexis 77962 (E.D. Cal. June 5, 2012*); Dolorian*, 2012 WL 4026818 at *2.

## 2. **Privilege Objections**

You have also objected to 36 separate requests on the ground that they implicate a privilege or work product protection; as we discussed by email, the privilege log produced is completely inadequate. You have provided us no indication of the number or the types of documents that exist, let alone the basis for the application of the privileges. The log does not provide any of the information necessary to assess the applicability of the privilege; instead, it simply restates the objections without providing any information at all about the documents retained. You have agreed to provide an amended privilege log by Friday, October 2, and we look forward to reviewing the updated log. We write separately to discuss the substance of specific privileges, but reserve the right to confer further once we receive the updated log.

First, you objected to many of the requests on the ground that the information sought is protected from disclosure by the official information privilege. However, you failed to adhere to any of the procedural requirements necessary to assert the privilege, including outlining the basis for the privilege and providing a signed affidavit from the head of the department that controls the matter, invoking the privilege. *See Miller v. Pancucci*, 141 F.R.D. 292, 300 (C.D. Cal. 1992). The City failed to even identify the departments with the privileged matter, let alone provide a sworn affidavit, attesting to the privilege. This privilege is waived when an affidavit is not provided with the responses, *see id.*; Plaintiff's counsel has never seen a court indulge such a claim of privilege when an affidavit is not provided with the response. Thus, we assume the City will withdraw this assertion of the official information privilege so that we do not needlessly fight over whether it applies.

The City also attempts to invoke the deliberative process and the self-critical analysis privileges, but again, fails to provide any facts to support the application of these privileges or

Letter to E. Fitzgerald
September 28, 2015
Page 3 of 5

even the category of documents withheld. *See e.g., FTC v. Warner Communications Inc.* 742 F.2ds 1156, 1161 (9th Cir. 1984) (indicating the balancing test at issue in applying the deliberative process privilege to documents sought in litigation). We expect that this will be addressed in the updated privilege log.

Finally, some of the privilege objections do not appear on their face to apply to the documents requested. For example, the majority of the requests for communications between CCEA/BID officers and the City on specific topics such as the *Lavan* injunction, you refused to produce documents *inter alia* because the requested communications may be protected by attorney-client privilege or other privileges. We fail to see how communications between the City and CCEA would be protected.

## 3. **Third Party Privilege**

The City also invokes third party privacy as a basis for refusing to produce, for example, service logs, LAPD reports, and other documents that reference LAPD's presence during LADID's seizure of property. (*See e.g.,* City's Response to RFP No. 67). Again, the City does not identify whose privacy is at issue or how the privacy rights of non-parties are implicated. To the extent there are legitimate third party privacy issues at stake, we are prepared to put a protective order in place that would limit or eliminate these concerns.

## 4. **Specific Requests**

### Policies and Directives (RFPs 4-5)

The City has refused to produce policies, directives and orders related to or that refer to BID Officers on the ground that the request is "vague, overbroad, burdensome, and oppressive." The request is narrowly-tailored and directly related to the allegations of the complaint. The City also invokes numerous privileges, but without any of the specificity necessary to invoke those privileges.

### Photos and Video (e.g., RFPs 61-63)

As discussed above, the City has refused to produce any requested video and photographs of the seizure and/or destruction of property by BID officers and/or the City, including the LAPD, based primarily on the objection  We are entitled to video and photographs that are in the City's possession, as they are highly relevant to and probative of our assertions. The requests themselves are narrowly tailored and relate directly to the allegations in the complaint.

### Communications (e.g. RFPs 12-24, 40, 47)

The City has objected to and refused to produce any documents responsive to any of our requests for communications between the City and CCEA/LADID on topic related to the subject of this litigation. This includes, for communications between the City and CCEA/LADID related to the *Lavan* Injunction, the *Jones* Settlement, encampments, the seizure or storage of

Letter to E. Fitzgerald
September 28, 2015
Page 4 of 5

property by either the BID or the City.  As a result, the City has failed to produce a single email communication in response to any of the more than 15 requests for production that seek communications related to discrete topics relevant to this litigation.  The refusal to produce responsive communications is particularly egregious because the majority of the requests relate to communications between the City and the CCEA/LADID.

## Audits of CCEA/LADID (RFPs 43-44)

We requested documents related to or referring to audits done of CCEA and/or LADID.  The City refused to produce responsive documents on the ground that the request is again vague, overbroad, burdensome, and oppressive.  We strongly disagree that the request is not narrowly tailored and extremely clear, and that it seeks documents that are relevant to the litigation, and in particular, relevant to the City's control and oversight over CCEA and the LADID.

## Agreements between the City and CCEA/LADID to store property (e.g., RFP 50)

The City also inexplicably refuses to produce documents related to any agreements between the City and CCEA to store property that has been seized or taken by the City.  There is simply no justification for the refusal to provide this information.

## Documents related to CCEA's Storage Facility and the creation of the BIN (RFPs 52-58)

The City has refused to provide documents related to either CCEA's storage facility or the BIN, the storage facility created in the Downtown Industrial District after CCEA closed its storage facility.  These documents are directly related to issues in the case, and again, the City's boilerplate objections do not provide a justification for the City's refusal to produce the requested documents.

## Documents Related to Grievances or Complaints against BID officers

RFP no. 11 seeks "documents related to any investigation, response or communication regarding or related to any complaint, police report, or grievance filed with the CITY against or regarding CCEA and/or LADID, including against or involving BID Officers."  The City states that it is "unable to respond" but provides no justification for why the City refuses to respond.  To the extent the City needs clarification as to the response, we will provide that during our meeting.

## Production of Documents Responsive to Our Requests

While we appreciate that, to date, the City has produced approximately 6000 pages of documents, the vast majority of the documents were copies of Operation Healthy Streets reports, multiple copies of 100 page contracts with CCEA, and an excess property storage log which accounted for another 200 pages.  The rest of the requests yielded very few pages of documents.  We are therefore concerned that, to the extent the City has agreed to produce responsive documents responsive to our requests, that not all documents have been produced.  As discussed

Letter to E. Fitzgerald
September 28, 2015
Page 5 of 5

above, to date, we have not received a single internal email communication within the City, nor have we received any other email communications with CCEA or any other entity. As such, we are concerned that the City has not produced all documents responsive to even those requests to which the City has agreed to respond.

As discussed above, the City's responses to Plaintiff's requests are woefully inadequate and raise concerns about the City's willingness to participate in the discovery process in good faith. We are prepared to meet and confer with the City to discuss your objections and, to the extent necessary, limit some requests in the interest of cooperation. However, Plaintiffs are entitled to discovery in this case, and we will seek court intervention to the extent we are unable to resolve our issues during the meet and confer process.

We look forward to meeting with you in person to discuss these matters in more detail.

Sincerely,

Shayla Myers

EXHIBIT N

**Shayla R. Myers**

| | |
|---|---|
| **From:** | Catherine Sweetser <catherine.sdshhh@gmail.com> |
| **Sent:** | Monday, October 05, 2015 2:49 PM |
| **To:** | Elizabeth Fitzgerald |
| **Cc:** | Shayla R. Myers |
| **Subject:** | Re: Privilege Log |

Beth:

Plaintiff's counsel has absolutely no idea what you mean when you say that the broadness of our categories means you cannot give us information about the documents you are withholding pursuant to privilege. Do you mean that because our categories are broad, the City has not actually looked for responsive documents and thus does not know what it is withholding? Or do you mean that because our categories are broad, you find the prospect of logging the documents burdensome, but you do in fact have the documents you are withholding in your possession?

If logging each document individually is overly burdensome, we may come to some accommodation about documents for which we would accept just a description of the categories of documents (for example, there's no need to log each attorney client communication between yourself and your client, since we are not seeking your emails as an attorney to your client). We are happier to discuss further but we do not see why your objection to our requests means that you are unable to give us any information about what you are withholding.

Plaintiff's counsel is no longer available on Wednesday but can still meet and confer on Friday, Oct. 9.

Catherine

On Mon, Oct 5, 2015 at 1:56 PM, Elizabeth Fitzgerald <elizabeth.fitzgerald@lacity.org> wrote:

# Shayla and Catherine,

# I have attempted to re-do the privilege log, but due to the broadness of plaintiff's requests, I am unable to refine it at this time.

# I would request that we discuss the privilege log at our meeting.

# I may be able to move our meeting up to this Wednesday (in the afternoon), if that would help. I will know for sure by tomorrow morning.

Sincerely,

Beth Fitzgerald
Deputy City Attorney
Office of the City Attorney

1

Business & Complex Litigation Division
<u>(213) 473-6855</u>

****************Confidentiality Notice ************************
This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be confidential or protected by the attorney-client
privilege and/or the work product doctrine. If you are not the intended recipient, be aware that any disclosure, copying,
distribution or use of the content of this information is prohibited. If you have received this communication in
error, please notify us immediately by e-mail and delete the original message and any attachments without
reading or saving in any manner.
*********************************************************

--
Schonbrun Seplow Harris & Hoffman LLP
723 Ocean Front Walk
Venice, CA 90291
310.396-0731
fax:310.399-7040
<u>www.losangelesemploymentlawyer.com</u>
<u>www.sdshh.com</u>

EXHIBIT O

**Shayla R. Myers**

| | |
|---|---|
| **From:** | Catherine Sweetser <catherine.sdshhh@gmail.com> |
| **Sent:** | Monday, October 05, 2015 3:24 PM |
| **To:** | Shayla R. Myers |
| **Subject:** | Fwd: Privilege Log |

---------- Forwarded message ----------
From: **Elizabeth Fitzgerald** <elizabeth.fitzgerald@lacity.org>
Date: Mon, Oct 5, 2015 at 3:12 PM
Subject: Re: Privilege Log
To: Catherine Sweetser <catherine.sdshhh@gmail.com>

Catherine,

For example, you are looking for documents spanning a range of 15 years.  That's too broad.

Your definition of City includes "all City departments" --- the City has 43 departments!

Your definition of City includes all city council members (there are 15 per term) who have served in the last 15 years. Again, too broad.

You seek documents relating to ALL BIDS -- spanning back 15 years -- there are 39 BIDS in the City.

Your use of the term "relate or refer to" also casts an exceptionally wide net.

It would help if you could restrict the time frame --- substantially.

It would help if you could specify what City department you are referring to.

1

I have attempted in good faith to produce over 6000 pages of documents but I do not feel that the City should be subjected to fishing expedition.  The amount of employee hours  to collect all of the documents sought is overwhelming, and contrary to FRCP 1.  I have read each page of the 6000 pages I produced -- and I have redacted hundreds of pages.  The scope of the search plaintiffs are asking for is utterly unreasonable.

We can discuss further on Friday.


Sincerely,


Beth Fitzgerald
Deputy City Attorney
Office of the City Attorney
Business & Complex Litigation Division
(213) 473-6855

On Mon, Oct 5, 2015 at 2:49 PM, Catherine Sweetser <catherine.sdshhh@gmail.com> wrote:
Beth:

Plaintiff's counsel has absolutely no idea what you mean when you say that the broadness of our categories means you cannot give us information about the documents you are withholding pursuant to privilege.  Do you mean that because our categories are broad, the City has not actually looked for responsive documents and thus does not know what it is withholding?  Or do you mean that because our categories are broad, you find the prospect of logging the documents burdensome, but you do in fact have the documents you are withholding in your possession?

If logging each document individually is overly burdensome, we may come to some accommodation about documents for which we would accept just a description of the categories of documents (for example, there's no need to log each attorney client communication between yourself and your client, since we are not seeking your emails as an attorney to your client).   We are happier to discuss further but we do not see why your objection to our requests means that you are unable to give us any information about what you are withholding.

Plaintiff's counsel is no longer available on Wednesday but can still meet and confer on Friday, Oct. 9.

Catherine

On Mon, Oct 5, 2015 at 1:56 PM, Elizabeth Fitzgerald <elizabeth.fitzgerald@lacity.org> wrote:
Shayla and Catherine,

I have attempted to re-do the privilege log, but due to the broadness of plaintiff's requests, I am unable to refine it at this time.

I would request that we discuss the privilege log at our meeting.

I may be able to move our meeting up to this Wednesday (in the afternoon), if that would help. I will know for sure by tomorrow morning.

Sincerely,

Beth Fitzgerald
Deputy City Attorney
Office of the City Attorney
Business & Complex Litigation Division
(213) 473-6855

****************Confidentiality Notice ************************
This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be confidential or protected by the attorney-client privilege and/or the work product doctrine. If you are not the intended recipient, be aware that any disclosure, copying,
distribution or use of the content of this information is prohibited. If you have received this communication in error, please notify us immediately by e-mail and delete the original message and any attachments without reading or saving in any manner.
*****************************************************************

--
Schonbrun Seplow Harris & Hoffman LLP
723 Ocean Front Walk
Venice, CA 90291
310.396-0731
fax:310.399-7040
www.losangelesemploymentlawyer.com
www.sdshh.com

****************Confidentiality Notice ************************
This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be confidential or protected by the attorney-client privilege and/or the work product doctrine. If you are not the intended recipient, be aware that any disclosure, copying,

distribution or use of the content of this information is prohibited. If you have received this communication in error, please notify us immediately by e-mail and delete the original message and any attachments without reading or saving in any manner.
*****************************************************************

--
Schonbrun Seplow Harris & Hoffman LLP
723 Ocean Front Walk
Venice, CA 90291
310.396-0731
fax:310.399-7040
www.losangelesemploymentlawyer.com
www.sdshh.com

EXHIBIT P



## Legal Aid Foundation of Los Angeles

**South Los Angeles Office**
7000 S. Broadway
Los Angeles, CA  90003
Phone: (213) 640-3950
Fax: (213) 640-3988
www.lafla.org

**Other Office Locations:**

**East Los Angeles Office**, 5228 Whittier Boulevard, Los Angeles, CA 90022  T: (213) 640-3883
**Long Beach Office**, 601 Pacific Avenue, Long Beach, CA 90802  T: (562) 435-3501
**Santa Monica Office**, 1640 5ᵗʰ Street, Suite 124, Santa Monica, CA  90401  T: (310) 899-6200
**West Office**, 1102 Crenshaw Boulevard, Los Angeles, CA 90019  T: (323) 801-7989

---

Writer's Direct Line (213) 640-3983

Our File Number 13-1229292

**<u>VIA EMAIL ONLY</u>**

October 08, 2015

Elizabeth Fitzgerald
Deputy City Attorney, City of Los Angeles
200 N. Main St., City Hall East, 9th Floor
Los Angeles, CA 90012

     Re: *LA Catholic Worker v. Los Angeles Downtown Industrial District*

Dear Beth:

     We are in receipt of your October 5 emails to Ms. Sweetser, in which you rescind your previous agreement to provide us an amended privilege log by October 2, 2015 and instead state that you are "unable to refine it at this time."

     Given the contents and tone of the email, in which you raise, for the first time, a number of specific objections to our requests and suggest that our requests for documents are "contrary to FRCP 1," we thought it helpful to address a number of points in advance of the our meeting on October 9.  In particular, as Ms. Sweetser noted in her earlier email, we are willing to discuss the scope of our requests at this meeting and are hopeful that we will be able to resolve many of our issues without the need for court intervention.  To ensure that the meeting is as productive as possible, we would like to address the scope of defendant's production to date and the City's failure to date to meet and confer in good faith.

     First, we'd like to clarify that, although we do appreciate the City's production of a number of documents responsive to some of our requests, it is disingenuous to cite the number of pages you produced without noting that 1) approximately 3750 were multi-page, daily reports related to the Operation Healthy Streets initiative; 2) over 600 pages were multiple duplicate copies of two 100 page contracts between the City of Los Angeles and CCEA; and 3) another 310 pages belonged to a single property log.

     It is also worth noting that prior to this production, defendant had not turned over a single document as part of its Rule 26 disclosure, so the remaining pages included all documents identified in the Rule 26 disclosure as well.

     What the production did not include is emails between CCEA and the City; meeting note or agenda related to meetings attended by CCEA and the City; police reports or records related to incidents specifically mentioned in the complaint; or other such documents that are highly relevant to this case.

---

The Frontline Law Firm for Poor and Low-income People in Los Angeles



Second, as you know, we propounded discovery in July, and you sought a number of extensions, which we provided in good faith and with the acknowledgement that, given the size of the City, that the City would need additional time to gather documents.

During the more than 60 days defendant had to respond, the City never once sought to meet and confer with Plaintiffs to discuss the scope of the requests, or requested to limit the search for responsive documents to certain departments or to reduce the time period covered by the request. Moreover, the City did not raise any concerns about the size of the City or the number of City departments during the Rule 26 early meeting of counsel, in which parties specifically discussed the scope of discovery.

It is anathema to the cooperative process outlined in Rule 26 for the City to wait 60 days and then simply object to every single request as "overbroad", refuse to produce documents that defendant has that it considers to be within a reasonable scope or timeframe for the requests, and to produce a privilege log that states only that "various" documents responsive to multiple requests have been withheld on the basis of a number of distinct privileges.

The very general statement in Federal Rule of Civil Procedure 1 that the rules be "construed, administered and employed by . . . parties to secure the just, speedy, and inexpensive determination of every action and proceeding" also demands and contemplates that the parties not waste discovery time, submit boiler plate objections and a meaningless privilege log, and withhold highly relevant and responsive documents on the ground that requests are "overly broad".

As we have repeatedly stated, while we do not agree that our requests are overly broad and we believe that they are specifically tailored to address Plaintiffs' allegations, Plaintiffs are open to meeting and conferring about the timeframe of the requests and the scope of the search for responsive documents. We do hope that the City will participate in our meeting with the same willingness to cooperate. We look forward to meeting with you on October 9.

Sincerely,

Shayla R. Myers
Attorney

EXHIBIT Q

**Shayla R. Myers**

| | |
|---|---|
| **From:** | Catherine Sweetser <catherine.sdshhh@gmail.com> |
| **Sent:** | Thursday, October 15, 2015 2:14 PM |
| **To:** | Elizabeth Fitzgerald; Shayla R. Myers; Surekha Pessis |
| **Subject:** | letter re: tomorrow's meet and confer |
| **Attachments:** | letter to City re RFPs (second meet and confer).docx |

Beth:
Please find attached a letter in advance of our meet and confer tomorrow.   As you can see in our letter, we
have asked you to give us some additional information identifying the departments you have searched.  We still
need information about the privileged documents you are withholding as well.  We have also made a significant
concession on the time period for some of the requests.  We look forward to talking to you.

Sincerely,
Catherine

--
Schonbrun Seplow Harris & Hoffman LLP
723 Ocean Front Walk
Venice, CA 90291
310.396-0731
fax:310.399-7040
www.losangelesemploymentlawyer.com
www.sdshh.com

1

SCHONBRUN SEPLOW
HARRIS & HOFFMAN LLP
723 Ocean Front Walk
Venice, CA 90291
(310) 396-0731   (310) 399-7040 (fax)

Benjamin Schonbrun
Michael D. Seplow
Wilmer J. Harris
Paul L. Hoffman
Catherine E. Sweetser
Aidan C. McGlaze
Kaveh Navab
Isabel M. Daniels
Raya Marinova

Of Counsel
Erwin Chemerinsky
*Illinois and Dist. Columbia
John Raphling

South Pasadena Office
715 Fremont Avenue
Suite A
South Pasadena, CA 91030
(626) 441-4129
(626) 283-5770 (fax)

October 15, 2015

**VIA EMAIL ONLY**

Elizabeth Fitzgerald
Elizabeth.fitzgerald@lacity.org

Dear Ms. Fitzgerald :

We are following up for our meeting on Friday, October 9 regarding the City's responses to Plaintiffs' requests for production.  As you know, we have another meeting scheduled tomorrow, Friday, October 17 to continue our discussions.  It is our hope in sending this letter that we summarize our negotiations to date, spell out our understanding of the City's position with regards to the issues we discussed on October 9, and identify the remaining issues that need to be discussed on Friday.

1.  <u>Scope of Production to Date</u>

As a threshold matter, as we discussed on October 9, we remain extremely confused as to what defendants have produced, what searches have been conducted, and what defendant is withholding on the basis of privilege.

Defendant objected to every one of plaintiffs' requests on the grounds that they are 1) burdensome and 2) overbroad.  In the course of our email exchange and our meeting, we understand that defendant believes the requests are all overly broad because 1) the timeframe of the request is too overbroad, 2) the definition of the City is too broad; and 3) the inclusion of the term "relates to" makes each request overbroad.   Each of these issues is discussed below.

However, we need information about what defendant has produced and what defendant is withholding on the basis of its objections.  Defendant refused to provide documents responsive to 36 specific requests, and to the 22 requests to which defendant agreed to provide responsive documents, each one is limited "to the extent this request is not objectionable, Defendant produces responsive documents herewith."

In the course of our discussion on October 9, it became clear that defendant has in fact limited both the documents it has produced, and its search for responsive documents.  As we have already discussed, defendant's privilege log fails to give us any information, as it simply lists requests and objections and states that "various" documents are withheld.  We also do not know, with regards to the 36 objections defendant has refused to respond, whether it has searched for any responsive documents.  We have talked through so far the first 17 responses but

we have not yet obtained clarification on which responsive documents have been located to be withheld and which searches Defendant does not want to perform.

Tomorrow, we hope to discuss in a streamlined fashion the searches that have been performed to date and the documents that are currently being withheld. We respectfully ask that you prepare for tomorrow's call with information about the searches for each RFP that have already been completed and whether or not there are privileged documents that are already in counsel's possession for each request. That should enable us to move more quickly through each RFP.

### 2. Defendant's Email Production

At the meeting, you suggested for the first time that requests to which email communications would be responsive were all overly burdensome, given the City's technical limitations. It is our understanding that it is the City's position that these requests are burdensome because 1) the City cannot produce any emails from LAPD from before October 2014 because LAPD deletes all emails after one year and therefore, the only emails that exist are those sent after October 9, 2014; and 2) the City is in the process of switching over from its current Postini email system to Vault. This new system will make searches possible, but no emails can be produced until the City completes this transfer, which will occur no earlier than January or February 2016.

You offered to provide us with a detailed declaration outlining LAPD's policy and practice of deleting email, including whether any backups exist; and a more detailed explanation about the other City department's limitations in accessing emails, including when the transition began to a new system, why the emails cannot be accessed, and when this may be remedied.

Please provide us that declaration no later than October 22, 2015. We request that that declaration include: the exact method of retention of emails and the method of deletion of emails (automatic? Individual? At a centralized server?); and the details about the transition between systems and how emails are being preserved/maintained/retained/sent in the meantime, with exact dates of when the transition started and when it will end.

### 3. Timeframe covered by the Requests

In your email on October 5, 2015 you indicated the City's position that all of the requests were too broad because, inter alia, they requested information going back to January 1, 2000. During our discussions, we agreed to uniformly limit the requests to seven years, unless a specific date was noted in the request. This compromise was unacceptable to the City, and you stated that, to the extent you agreed to provide any documents responsive to any requests, you would provide documents from no earlier than four years ago.

In the interest of cooperation and resolving this threshold issue without bringing every one of our requests before the court, we will agree to limit most requests to four years prior to the date of filing, or September 1, 2010. This encompasses the time period immediately before the facts that gave rise to the litigation in *Lavan v. City of Los Angeles*, which is a significant event in the current litigation. As to the initial batch of requests, the limitation does not apply to RFP 2 (the documents concerning individual plaintiffs) or RFP 4 and 5 (which we have agreed to limit to seven years prior to the request) and we reserve the right to discuss this proposed limitation further as it pertains to other specific requests when we speak again about the next set of requests. This limitation is a significant compromise on our end, and we hope that you will recognize that it adequately responds to defendant's objection.

### 4. Definition of City and Scope of the Requests

In your October 5, 2015 email, you also raised your concern that each of our requests was burdensome and overbroad because our definition of City was itself overly broad and included all City departments, Council members, etc. We requested a list of departments you believe may have documents and that you have already searched for responsive documents. You represented to us that you had searched many departments, and that you thought the LAPD, Bureau of Sanitation Services, Public Works, and the City Clerk would have the most responsive documents. We responded that the City Comptroller and City Administrative Office also would have responsive documents, as would the Mayor's office and many City Councilmembers' offices. This was not meant to be an exhaustive list on either side—we understood from you that it was not a complete list of where you had searched.

As we discussed, we are requesting a complete list of departments that you have searched. Plaintiffs requested with "reasonable particularity each item or category of items requested," as required by Federal Rule of Civil Procedure 34. It is not our obligation to identify where these documents may exist within the City because there is an asymmetry of information regarding which departments may have responsive documents, and plaintiffs cannot be expected to identify where requested documents may be within the City.

That being said, we are more than willing to limit defendant's search obligations to those departments where the City could reasonably be expected to find responsive documents. But we are entitled to know what searches have already been conducted, so that we are not starting from scratch. Therefore, we need to know 1) where defendant has searched already, and 2) where else responsive documents are likely to be found within the City.

If you let us know what departments have already been searched, we will consider that list and provide you with other departments where we believe responsive documents may exist, reserving the right to augment the list with regards to specific requests if we learn that there may be other responsive documents that have not been produced.

We request that you provide us this information by Friday, and we will provide you with the amended list no later than October 20.

## 5.  Use of "related to" in various requests

During our meeting on October 9, you indicated that the term "related to" made the requests overly broad, and this was the basis for your refusal to produce documents responsive to some of our requests. We discussed this in detail during our meeting. The term "related to" is a common term used in discovery, *see e.g., Creative Co-Op, Inc. v. Elizabeth Lucas Co., LLC*, 2012 WL 76172 (D. Idaho, 2012) (finding that a request for all documents related to the alleged infringing product" was not overly broad); *In Re MGM Mirage Securities Litigation*, 2014 WL 6675732 at *5 (interpreting a request for all information related to each and every allegation as reasonable). To the extent there are specific requests that defendant finds "overly broad" based on the use of the term "related to", we are open to discussing that request, but defendant's boilerplate objections give no indication which requests those might be.

## 6.  Specific Requests

**RFP 2.**

You indicated that you have produced documents going back only seven years. We requested that you stipulate that you would not attempt to introduce any evidence not produced in response to these requests but you refused, stating that you may discover that this information is in fact relevant. Although we would be willing to possibly agree to limit the scope on this request, we cannot do so when Defendant expects to use these documents at trial. Nor are we willing to wait until the eleventh hour to attempt to exclude them with a motion in limine as you

suggested.  As you are taking the position these documents may be relevant, we are entitled to see whatever the City has regarding the individual plaintiffs.

You also indicated that you may be withholding information on the basis of privilege, including, for example, the names of victims.  However, you have not indicated this on the privilege log produced with the City's responses.  Therefore, we request that you identify what information you are withholding on an amended privilege log, and that you provide us with the non-privileged portions of the documents redacted in accordance with your claims of privilege.  If we do not receive an updated privilege log by October 22, we will move to compel this information.

**RFP 3.**

We have agreed to limit the scope of this request.  Plaintiffs are not interested in receiving any 1) documents from the Department of Building and Safety related to properties owned by the LACW; nor are we seeking 2) any records concerning Business and Operating licenses.  We may agree to further limit the request if defendant indicates what departments were searched for responsive documents and identifies any more documents that they believe exist but would be burdensome to produce.  Responsive documents may include but are not limited to any property tax assessments that are related to the CCEA assessment and any complaints, letters, and or grievances sent by the LACW to the city, as well as any response and/or discussion to such complaints by the city.

**RFP 4 and 5.**

We will agree to limit these requests to any policies, directive, and orders that have been in place for the last seven years. The proposed limitation to only documents constituting these policies even you conceded was too narrow, and therefore, unless you can propose a term that includes not only the policies but also documents to which we are entitled that are related to the policies, we stand by our requests.

**RFP 6**

At our meeting, you provided us a photocopy of the front of a DVD used to train officers but took the position that we are not entitled to the CPTN training because it is copyrighted material and that we should purchase a copy ourselves is not supported by any legal principals, either related to copyright or discovery, and you have not provided us any legal support for this position. The production of a copyrighted document in response to a discovery request is well established in the Ninth Circuit as a fair use of the copyrighted material. *See Religious Technology Center v. Wollersheim,* 971 F.2d 364, 367 (9th Cir. 1992) (fair use where defendants copied and distributed materials to give to expert witness to prepare for litigation); *Jartech v. Clancy,* 666 F.2d 403, 406-07 (9th Cir. 1982). *See also* 3 *Nimmer on Copyright* § 13.05[D] at 13–91 (1991) ("works are customarily reproduced in various types of judicial proceedings, including obscenity and defamation actions ... and it seems inconceivable that any court would hold such reproduction to constitute infringement either by the government or by the individual parties responsible for offering the work in evidence"). Thus, the notice should not bar your production of this material.

**RFP 9**

We offered to limit this request, and requested repeatedly that you provide us information about why our request for phone records was burdensome, so that we could formulate a reasonable request, given these considerations.  You refused to provide us details, stating only that the request was overly burdensome because of the man hours required to provide a response.

We remain willing to limit this request, but you must provide us more information about the process for producing the records, so that we can determine how to limit the request.

**RFP 10.**

Although you indicated in your response that you provided responsive documents, we understand from our discussion that you have not searched for public meetings or letters to council members. We are confused about whether you searched for letters and complaints to the

Bureau of Sanitation Services and request that you clarify that. You also indicated that the Mayor's office and city attorney's office might have additional responsive documents. We will agree that the search should start with Councilmember Huizar and are willing to discuss limiting the other councilmembers that should be included. You mentioned that you had searched more than half the City's departments on this request and would provide us with a list. Unless you tell us what search you conducted or what documents you are withholding on the basis of privilege, we cannot determine whether the search was sufficient. We would like to work with you to limit the departments and councilmembers to be searched, but do need your assistance in doing so.

**RFP 11**

As discussed during our meeting, this request seeks "investigations, responses and communications" related to complaints that would be responsive to RFP 10. This response should be the clarification you need to search for these documents.

**RFPs 14-17**

We will agree to limit the scope of the requests as discussed above (to documents after September 1, 2010), which we believe will address defendants' overbreadth and burdensome objections.

Regards,

Catherine Sweetser

SCHONBRUN SEPLOW
HARRIS & HOFFMAN LLP

Enclosures

# EXHIBIT R

**Shayla R. Myers**

| | |
|---|---|
| **From:** | Catherine Sweetser <catherine.sdshhh@gmail.com> |
| **Sent:** | Tuesday, October 27, 2015 6:05 PM |
| **To:** | Elizabeth Fitzgerald |
| **Cc:** | Shayla R. Myers; Gysi, Elissa L.; Brogan, Kevin H.; Paul Hoffman |
| **Subject:** | Declarations about discovery in Catholic Worker v City of LA |

Beth:

I just wanted to write to check on the declarations that you are preparing about email searches and retentions in LAPD and in the City as a whole. We understood you would send the declarations today. Did you send them by mail, and if so, would you be willing to send us a courtesy electronic copy? Neither Shayla or I received an email with them as yet.

Regards,
Catherine


--
Schonbrun Seplow Harris & Hoffman LLP
723 Ocean Front Walk
Venice, CA 90291
310.396-0731
fax:310.399-7040
www.losangelesemploymentlawyer.com
www.sdshh.com

1

# EXHIBIT S

**Shayla R. Myers**

| | |
|---|---|
| **From:** | Catherine Sweetser <catherine.sdshhh@gmail.com> |
| **Sent:** | Wednesday, October 28, 2015 5:08 PM |
| **To:** | Shayla R. Myers; Elizabeth Fitzgerald; Brogan, Kevin H.; Gysi, Elissa L.; Paul Hoffman; Carol Sobel; Fernando Gaytan |
| **Subject:** | Please find attached a meet and confer letter regarding the City responses |
| **Attachments:** | Meet and Confer Letter 10.28.2015 on City responses.pdf |

Dear all,

Please find attached a letter regarding the meet and confer we conducted with the City last week.  Beth, Plaintiffs have not yet received the declarations we understand we were to receive October 27.  The letter reflects that.  Have you mailed them?

Sincerely,
Catherine

--
Schonbrun Seplow Harris & Hoffman LLP
723 Ocean Front Walk
Venice, CA 90291
310.396-0731
fax:310.399-7040
www.losangelesemploymentlawyer.com
www.sdshh.com

1

SCHONBRUN SEPLOW
HARRIS & HOFFMAN LLP
723 Ocean Front Walk
Venice, CA 90291
(310) 396-0731   (310) 399-7040 (fax)
www.sdshh.com

Benjamin Schonbrun
Michael D. Seplow
Wilmer J. Harris
Paul L. Hoffman
Catherine E. Sweetser
Aidan C. McGlaze
Kaveh Navab
Raya Marinova

Of Counsel
Erwin Chemerinsky
*Illinois and Dist. Columbia
John Raphling

South Pasadena Office
715 Fremont Avenue
Suite A
South Pasadena, CA 91030
(626) 441-4129
(626) 283-5770 (fax)

October 28, 2015

**VIA EMAIL AND US MAIL**

ELIZABETH FITZGERALD, Deputy City Attorney
Email: Elizabeth.fitzgerald@lacity.org
200 North Main Street
9th Floor, City Hall East
Los Angeles, CA 90012
Phone No.: (213) 473-6856; Fax No: (213) 473-6818

*Re: Catholic Worker v. City of Los Angeles*

Dear Ms. Fitzgerald,

       This letter is to confirm the contents of the meet and confer we began on Friday, October 16, 2015 and concluded last Monday, on October 19, 2015.

**Agreement on Time-Period and Declaration**

       First, Plaintiffs agreed to limit their time period for most requests to after September 1, 2010, except as detailed below.  Defendant City of Los Angeles agreed that this was a reasonable time period for most requests.  You also agreed to provide us a detailed declaration outlining LAPD's policy and practice of deleting email, including whether any backups exist, and a more detailed explanation about the other City Departments' limitations in accessing emails, by October 27, 2015. (As a reminder, it is now the end of the day on October 28, 2015, and we have not yet received that declaration or declarations).  This declaration will include the method of retention and deletion of emails and how emails are being preserved/maintained/retained and sent during the transition between systems that you mentioned the City is currently undertaking. You also suggested that the parties could seek a continuance of the dates in the case due to the anticipated delay in obtaining documents.

**Plaintiff's Suggested List of Departments and Councilmembers**

       You continue to object to our requests on the ground that our definition of City is too broad; however, despite our repeated requests, , you continue to refuse to provide us a list of

2

departments that are likely to have documents responsive to our requests or the departments that you have searched for responsive documents. You stated during our meet and confer on Friday, October 16, that all departments within the city may have documents responsive to our requests. Our request was that you identify 1) which departments would have responsive documents; 2) which departments you had already searched for documents; or 3) at the very least, what you believed was a reasonable scope of the search, given your overbreadth objections. You refused to provide us any of this information.

Although we continue to believe that it is the city's burden to identify departments with responsive documents, we are willing to continue to confer on this issue in the hope that we can reach agreement. We discussed several departments at our previous meet and confer, including the LAPD, the Bureau of Sanitation Services, Bureau of Street Services, Public Works, the City Controller, the City Administrative Office, the City Attorney, and the City Clerk. We also discussed the Mayor's office and the City Councilmembers, including Councilmember Huizar and his predecessors. Plaintiffs are willing to limit the council districts from which we seek responsive documents to:

1. Council District 14 since it was redistricted to include the area covered by the BID
2. Council District 9 up to and including all of 2013;
3. Council districts for the members of the Economic Development Committee, which oversees BIDs. The current members of that Committee include Price, Krekorian, Cedillo, Martinez, and Harris-Dawson. Plaintiff was not able to locate on the City Council's website the previous members of the Economic Development Committee during the requested time-period, but request that the City obtain that information and search within these offices for responsive documents ;
4. members of the newly-created Homelessness and Poverty Committee, which was created in 2014.

In limiting our requests to these departments and councilmembers, we do not intend to waive our rights to request further documents from other departments if the documents that you produce to us in this first wave of production indicate that other departments or councilmembers have responsive documents. However, we are willing to limit the scope of your search for the purposes of speeding production of these documents.

**Discussion Regarding the Privilege Log**

We also discussed and continue to request that the City provide us with a privilege log of documents it is withholding—with the sole limitation that we do not need the City to index documents it is withholding that are emails or communications with its clients in this case concerning this litigation, or any work-product generated in the course of this litigation. We reiterate that the current form of the privilege log does not give us the necessary information (or any information) concerning the documents.

**Discussion of Specific Requests**

We agreed that we will not be able to resolve our dispute about RFP 2 as to whether the city must produce all documents pertaining to our individual clients. We will have to resolve this issue via motion.

3

We discussed RFP 3 and that property tax assessments with the Catholic Worker's proportionate share to the CCEA could be responsive. The City objects to providing any tax records because this request is not proportionate to the needs of the case, in your view. Plaintiffs disagree, as the case is about the interaction between the CCEA and the Catholic Worker and its clients.

The city has agreed to provide Plaintiffs with amended responses to RFPs 4 and 5, now that we have agreed to a time period, and that they will provide the POST training for RFP 6. There may also be responsive Mental Evaluation Unit materials. The city has agreed to send those amended responses by October 30.

RFP 11 was still unclear to the city so we are providing another written version of it: All documents which relate to or were generated during any investigation, response, or communication which concerns any complaint, police report, or grievance filed with the City concerning CCEA or LADID, including any complaints, police reports, or grievances against or involving BID officers. Since the City understands RFP 10, we have ensured that it tracks that language as far as possible. Basically, we are seeking any documents concerning the investigation or response or reaction to the complaints in RFP 10.

We understand the City plans to amend responses 13 and 14 before October 30.

The City refuses to search for responsive documents for RFP 17 through 21 due to the lack of limitations on the departments to be searched. Given our above attempt to reach agreement on that, hopefully we have narrowed our request enough that the City will agree to perform a search without a further motion.

For RFP 22 and 23, Plaintiffs explained that there would be more communications than just emails and requested that the City do a further search for those communications.

For RFP 24, there are some documents the City is withholding, but the City will not be providing a privilege log until we mutually agree on the departments to be included.

For RFP 25, the City has agreed to amend its response by October 30.

For RFP 26 through 32, the City will not search these unless the number of departments is narrowed.

For RFP 33, we would want documents from more than ten years ago, because we are seeking documents from the time of the creation of the LADID. The City is withholding documents based on deliberative process privilege and self-critical analysis, but will not identify which categories of documents it is withholding. The City requested that we put in writing that we do not need the City to index documents it is withholding that are emails or communications with its clients in this case concerning this litigation, or any work-product generated in the course of this litigation, which we now have done.

The City intends to amend RFPs 38 and 40. Plaintiffs will not agree to limit 40 to just the 5 year time period due to the centrality of these documents to the lawsuit.

4

For RFP 39, a number of documents were produced already, so the only question is whether the City is willing to create a privilege log for those it is withholding based on the deliberative process privilege, the official information privilege, and the self-critical analysis privilege.

For RFP 41, the City agrees to amend its response to show that it has produced all responsive documents going back to 2009.

Additional documents will be produced for RFP 43 and will be sent prior to October 30.

For RFP 44, no agreement was reached on the audits. Plaintiff's position is that they should be easily accessible to the City.

For RFP 45, there are documents being withheld pursuant to deliberative process privilege. There is no description on the privilege log.

For RFP 46, Plaintiffs request documents going back 10 years, not just 5.

The City stated that there are are no responsive documents being withheld for RFPs 47 and 48, discussing the Lavan injunction's relation to CCEA and LADID and communications with CCEA and LADID about the Lavan injunction. However, in response to RFPs, CCEA has produced written letters to the City Attorney that are clearly responsive to this request. The City must conduct a thorough search for such documents.

For RFP 49 through 53, the City will not search further until the Departments are identified. The City also objects to RFPs 52 and 53 on the grounds that they are irrelevant.

For RFPs 54 through 58, we discussed the 5th and Towne facility. The City took the position that it was not relevant to plaintiff's claims because it doesn't matter where the storage occurs. Plaintiffs responded that that the documents are relevant because they relate to City interaction with CCEA. It is also relevant to damages to explain the policies and practices around the storage of property.

For RFP 59, Plaintiffs will agree to limit the time period to 7 years, but not to 5.

For RFPs 60 through 66, the City took a position that there was too much body and security camera footage and too many photographs by BSS to search for and review. The City noted that in another case it produced many gigabytes of data to another plaintiff's counsel with whom Plaintiff's counsel in this case are familiar. If so, Plaintiffs do not see why the City cannot similarly produce gigabytes of data in this case. We may also be able to reach agreement on sampling some of this data. If the City will agree to produce to us within the next two weeks three months worth of data from April 1, 2014 to June 30, 2014, we will agree to hold off on filing a motion to compel on the camera footage and photographs responsive to these RFPs until we have reviewed that data. Please let us know as soon as possible what you think of this proposal.

For RFP 67, 5 years is reasonable and the City requests that Plaintiffs name the 5 most likely departments. Plaintiffs are unwilling to narrow their search to just 5 departments but hope that the list at the start of this letter will be a good place to start.

5

For RFPs 68 and 69, there are a lot of logs from Zambrano and defense counsel needs to go back and redact privileged information. These documents will be produced by October 30. The City will also produce documents from Zambrano's partner, who was also present, but the City's counsel said she needed to check with her investigator to get a firm date for those documents. Plaintiff's counsel requested that if October 30 was too soon the city provide them by November 4. Defense counsel stated that she would get back to Plaintiff's counsel on that.

If this does not accurately summarize our meet and confer of last week, please let us know.

Regards,

SCHONBRUN SEPLOW
HARRIS & HOFFMAN LLP

Catherine Sweetser

EXHIBIT T

1 | **MICHAEL N. FEUER**, City Attorney
2 | **THOMAS H. PETERS**, Chief Assistant City Attorney
   | **RONALD S. WHITAKER**, Managing Assistant City Attorney
3 | **ELIZABETH T. FITZGERALD**, Deputy City Attorney (**SBN 158917**)
   | Email:  Elizabeth.Fitzgerald@lacity.org
4 | 200 North Main Street, City Hall East, 9th Floor
   | Los Angeles, California 90012
5 | Tel: (213) 473-6855
6 | Fax: (213) 473-6818

7 | *Attorneys for Defendant,* **CITY OF LOS ANGELES**

8

9

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| LOS ANGELES CATHOLIC WORKER, an unincorporated association; CANGRESS, a non-profit corporation; HARRY JAMES JONES, LOUIS GRADY, LLOYD HINKLE, WALTER SHOAF, individuals<br><br>Plaintiffs,<br><br>    vs.<br><br>LOS ANGELES DOWNTOWN INDUSTRIAL DISTRICT BUSINESS IMPROVEMENT DISTRICT, CENTRAL CITY EAST ASSOCIATION, INC., CITY OF LOS ANGELES; DOES 1-10<br><br>    Defendants. | **CASE NO.: CV14-7344 PSG (AJWx)**<br><br><br>**DECLARATION OF AGNES LUNG-TAM** |

1    I AGNES LUNG-TAM, declare:

2          1.      I am employed by the City of Los Angeles as a Chief Management

3    Analyst with the City's Information Technology Agency ("City ITA").  Part of my

4    responsibilities include being the Compliance Manager for ITA and working with

5    the City Attorney's Office in prioritizing and coordinating email search requests

6    received by ITA.  I make all the statements herein of my own personal knowledge,

7    and if called to testify as a witness in this action, I would and could competently do

8    so.

9          2.      The City of Los Angeles' departments, except Police, use "Google

10   Mail" for email communications with electronic versions of emails stored on

11   servers managed by Google, Inc., a private corporation.  Emails sent or received

12   from lacity.org email addresses are electronically stored on Google's Postini

13   System.  Because of the system's age, custom searches for electronic content is

14   burdensome, especially when done on a City-wide basis, and requires a

15   programmed search by specialized staff within the City ITA.

16         3.      The extraction process of "electronically stored emails" is performed

17   by the City ITA "Email Support Group." These searches are handled in addition to

18   their regular duties of providing support and maintaining the integrity of the City's

19   entire email system.  The Email Support Group staff work diligently to perform

20   any and all electronic searches for records requests as best they can, given their

21   limited staffing resources.

22         4.      System-wide searches require identification of keywords, a date

23   range, and the identification of specific individuals or involved personnel and/or

24   their email addresses.  Once search parameters are identified and the relevant

25   discovery request has reached the front of the queue, the process of obtaining the

26   requested data can still take weeks or even months in actual search time depending

27   on the complexity of the search.  Because of the sheer volume of electronic data

28   stored by the City, the Postini system has frequently been unable to process queries

2

1  with multiple search terms used at the same time without the system crashing.  Nor
2  can the system run a Citywide query of one search term over multiple years
3  without sometimes experiencing a system crash, which means that searches are
4  routinely broken up into one to three month blocks.  As a result, what may be a
5  simple discovery request (e.g. 20 search terms, Citywide, with a four year date
6  range), ends up requiring the Email Support Staff to program and run dozens if not
7  hundreds of queries of the database just to complete that one search.

8      5.      In addition to the weeks of active search time needed to pull the
9  responsive records, there is also a necessary delay to even start the search.
10 Because the City is engaged in hundreds of litigation matters at any given time and
11 because the Email Support Group has limited resources, the City has been forced
12 to create a queue of pending electronic discovery requests.  When requests for
13 production of electronic records are received in the course of litigation involving
14 the City, City ITA staff place those requests into the queue of pending requests.

15     6.      The Postini system has been so slow that Google has informed their
16 enterprise email clients that the system is now at the end of its life cycle.
17 Therefore, the City is in the process of migrating all its existing email data from its
18 current system to a new software and e-discovery solution called Vault.  During
19 the migration, the City has been unable to access any records from the Gmail
20 archive. It was initially estimated that the migration of data would take
21 approximately 90 days.   However, the migration of data into the new Google
22 Vault system has experienced technical difficulties, and to date the migration has
23 not been completed.   It is anticipated that the migration may be complete by the
24 end of 2015.  However, even after the transfer of data from Postini to Vault is
25 complete, City ITA will need to conduct a series of quality control tests on the new
26 system to ensure that the new system is operational.  Those additional tests could
27 take several weeks.

28     I declare under penalty of perjury under the laws of the State of California

and the United States that the foregoing is true and correct and was executed on October 28, 2015 at Los Angeles, California.

Declarant, Agnes-Lung Tam

NOV 0 9 2015

EXHIBIT U

1  **MICHAEL N. FEUER,** City Attorney
2  **THOMAS H. PETERS,** Chief Assistant City Attorney
   **RONALD S. WHITAKER,** Managing Assistant City Attorney
3  **ELIZABETH T. FITZGERALD,** Deputy City Attorney (SBN 158917)
   Email:  Elizabeth.Fitzgerald@lacity.org
4  200 North Main Street, City Hall East, 9th Floor
   Los Angeles, California 90012
5  Tel: (213) 473-6855
6  Fax: (213) 473-6818

7  *Attorneys for Defendant,* **CITY OF LOS ANGELES**

8

9              **UNITED STATES DISTRICT COURT**

10       **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11                  **WESTERN DIVISION**

12

13  LOS ANGELES CATHOLIC            ) **CASE NO.: CV14-7344 PSG (AJWx)**
    WORKER, an unincorporated       )
14  association; CANGRESS, a non-profit )
15  corporation; HARRY JAMES JONES, )
    LOUIS GRADY, LLOYD HINKLE,      )
16  WALTER SHOAF, individuals       ) **DECLARATION OF LESHON**
17                                  ) **FRIERSON**
    Plaintiffs,                     )
18                                  )
19       vs.                        )
20                                  )
    LOS ANGELES DOWNTOWN            )
21  INDUSTRIAL DISTRICT BUSINESS    )
22  IMPROVEMENT DISTRICT,           )
    CENTRAL CITY EAST               )
23  ASSOCIATION, INC., CITY OF LOS  )
24  ANGELES; DOES 1-10              )
25                                  )
         Defendants.                )
26                                  )
27

28

                            1

1   I LESHON FRIERSON, declare:

2        1.    I am a Senior Systems Analyst with the Information Technology

3   Division of the Los Angeles Police Department ("LAPD"). I have held this

4   position for approximately 11 years. I have personal knowledge of the matters

5   stated in this declaration, unless otherwise stated. If called upon to testify as to the

6   truth of these matters, I could and would do so competently.

7        2.    Groupwise is the system that the Los Angeles Police Department uses

8   for its email service. Groupwise has been used for as long as I have been a Sr.

9   Systems Analyst.

10       3.    Groupwise is on a network, and all emails address to the work email

11   at LAPD go through the Groupwise server.

12       4.    I understand that the Los Angeles Police Department has been

13   requested to produce emails going back to 2011 to or from any and all employees

14   of the Los Angeles Police Department containing the terms "homeless," "CCEA"

15   and "BID Officers" in a case entitled *Los Angeles Catholic Worker et al. v. City of*

16   *Los Angeles et al.* CV CV14-7344 PSG (AJWx).

17       5.    Such a search would be virtually impossible for several reasons.

18       6.    First, with respect to emails sent or received prior to March 2013,

19   LAPD has no archives for those emails. As a result, it is impossible to do keyword

20   searches of emails prior to March 2013. LAPD only has back up tapes prior to

21   March 2013 which are difficult and extremely time consuming to restore. A search

22   of the emails of LAPD employees would have to be conducted box by box –

23   checking each email box for each employee of LAPD. Such a task would entail

24   thousands of hours of time.

25       7.    Second, with respect to emails sent or received after March 2013, a

26   keyword search using the terms in paragraph 4 would be also be impossible for

27   LAPD given the state of its technology and its resources. Such a search would tie

28   up the server for weeks and would require thousands of hours of employee time.

1  Adding additional words to the search would not expedite the search at all.  In fact,
2  each additional search word increases the amount of server time needed for the
3  search, substantially.

4         8.        Third, the Los Angeles Police Department does not have the resources
5  available to conduct such a search.  Our e-mail search capacity is extremely
6  limited.  As previously described the three word search described with the terms
7  listed in paragraph 4 above would entail several thousand hours of employee time.

8         9.        Finally, I am the only Analyst employed by the Los Angeles Police
9  Department who is trained to conduct email searches of the Groupwise system,
10 with the exception of a colleague who is currently out on maternity leave.

11        I declare under penalty of perjury under the laws of the State of California
12 and the United States that the foregoing is true and correct and was executed on
13 October 28, 2015 at Los Angeles, California.

14
15
16                              Declarant, Leshon Frierson
17
18
19
20
21
22
23
24
25
26
27
28

                                        3

<u>PROOF OF SERVICE</u>
(Los Angeles Catholic Worker, et al. v. City of Los Angeles, et al.)
Case No. CV14-7344 PSG (AJWx)

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 200 N. Main Street, Room 916, Los Angeles, CA 90012.

On October 29, 2015, I served the foregoing document described as **DECLARATION OF LESHON FRIERSON** on the interested parties in this action by placing the true copies thereof enclosed in sealed envelope(s) addressed as follows:

**SEE ATTACHED SERVICE LIST**

[X]   **BY MAIL** – I am readily familiar with the practice of the Los Angeles City Attorney's Office for collection and processing of correspondence for mailing with the United States Postal Service.  In the ordinary course of business, correspondence is deposited with the United States Postal Service the same day it is placed for collection and mailing.  On the date referenced above, I placed a true copy of the above documents(s) in a sealed envelope and placed it for collection in the proper place in our office at Los Angeles, California.

I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 29, 2015, at Los Angeles, California

_____
Ava Smith

1

## SERVICE LIST

2

3   Catherine Elizabeth Sweetser
4   Paul L. Hoffman
    Schonbrun DeSimone Seplow
5       Harris & Hoffman LLP
6   723 Ocean Front Walk, Suite 100
7   Venice, CA  90291

8   Fernando Gaytan
9   Paul J. Estuar
    Shayla Renee Myers
10  Legal Aid Foundation of Los Angeles
11  7000 South Broadway
12  Los Angeles, CA  90003

13  Elissa L. Gysi
14  Kevin H. Brogan
    Jeffrey Bell
15  Hill Farrer and Burrill LLP
16  One California Plaza
    300 South Grand Avenue 37th Floor
17  Los Angeles, CA  90071-3147

18

19

20

21

22

23

24

25

26

27                                          NOV 0 2 2015
28

PROOF OF SERVICE

EXHIBIT V



## Legal Aid Foundation of Los Angeles

**South Los Angeles Office**
7000 S. Broadway
Los Angeles, CA 90003
Phone: (213) 640-3950
Fax: (213) 640-3988
www.lafla.org

**Other Office Locations:**

**East Los Angeles Office,** 5228 Whittier Boulevard, Los Angeles, CA 90022  T: (213) 640-3883
**Long Beach Office,** 601 Pacific Avenue, Long Beach, CA 90802  T: (562) 435-3501
**Santa Monica Office,** 1640 5th Street, Suite 124, Santa Monica, CA  90401  T: (310) 899-6200
**West Office,** 1102 Crenshaw Boulevard, Los Angeles, CA 90019  T: (323) 801-7989

---

Writer's Direct Line (213) 640-3983                                        Our File Number 13-1229292

<u>**VIA EMAIL ONLY**</u>

November 02, 2015

Elizabeth Fitzgerald
Deputy City Attorney, City of Los Angeles
200 N. Main St., City Hall East, 9th Floor
Los Angeles, CA 90012
elizabeth.fitzgerald@lacity.org

   Re: *LA Catholic Worker v. Los Angeles Downtown Industrial District*

Dear Counsel:

   On October 9, 16, and 19, 2015, the parties met and conferred extensively regarding the City's responses to plaintiffs' Requests for Production. In the course of those discussions, the City agreed to produce amended responses to a number of our requests, and it is our hope that the City also intends to produce additional responsive documents.

   We requested that you provide us the amended responses no later than October 27, 2015, which is over two months after the initial due date for defendants' responses. You refused and agreed to provide them on October 30. On October 30, 2015, when we had not received the responses, you informed us that you would send the amended responses by personal messenger to our office on Monday, November 2. This morning you left a voicemail message for Ms. Sweetser, indicating that you will not provide the responses today, and that you needed until the end of the week.

   Plaintiffs have been patient and given the City a number of extensions to respond to our requests. However, as you know, the parties do not have unlimited time to conduct discovery. Moreover, it remains unclear what you intend to produce, and even with the promised amendments, there remain a number of issues that the parties have not been able to resolve, despite our rather drawn out meet and confer efforts.

   Therefore, we need to receive defendant's responses by personal service or electronic mail no later than the close of business on Friday, November 6, 2015. If we do not receive the amendments by the end of the day on Friday, we will assume that the City is not intending to supplement these responses and we will prepare a joint stipulation in support of our motion to compel, based on the City's responses sent on September 18.

   Further, we have not heard back from you regarding our October 28, 2015 letter, in which we provided defendant with a list of departments that we would accept for now. We remain firm

---

*The Frontline Law Firm for Poor and Low-income People in Los Angeles*                  

that plaintiffs were under no obligation to submit this list, that defendant should have requested this limitation on scope during the Rule 26 meet and confer process, rather than two months after discovery was served, and that at the very least, defendant has been obligated to produce responsive documents based the scope of requests that it finds acceptable.  But with that said, we have provided the initial list as a sign of good faith and a further attempt to avoid judicial intervention.

With this limitation as well as the previously agreed upon time frame, it is our sincere hope that defendants will now produce all documents responsive to the requests, and produce a privilege log that allows the plaintiffs to assess the privileges asserted by defendant.

Please let us know no later than Wednesday, November 4, 2015 whether the proposed limitations set forth in our October 28, 2015 letter are acceptable.  We also request that defendants produce responsive documents based on these limitations no later than November 14, 2015.  If we do not receive confirmation from you by the close of business on November 4, 2015 that these limitations are acceptable and that defendant intends to produce responsive documents no later than November 14, 2015, we will have no choice but to seek judicial intervention, and we will seek sanctions against the City for its failure to provide responsive documents.

Please let me know if you have any questions.

Sincerely,

/s

Shayla Myers

EXHIBIT W



## Legal Aid Foundation of Los Angeles

**South Los Angeles Office**
7000 S. Broadway
Los Angeles, CA 90003
Phone: (213) 640-3950
Fax: (213) 640-3988
www.lafla.org

**Other Office Locations:**

**East Los Angeles Office,** 5228 Whittier Boulevard, Los Angeles, CA 90022  T: (213) 640-3883
**Long Beach Office,** 601 Pacific Avenue, Long Beach, CA 90802  T: (562) 435-3501
**Santa Monica Office,** 1640 5th Street, Suite 124, Santa Monica, CA  90401  T: (310) 899-6200
**West Office,** 1102 Crenshaw Boulevard, Los Angeles, CA 90019  T: (323) 801-7989

---

Writer's Direct Line (213) 640-3983                                    Our File Number 13-1229292

<u>**VIA EMAIL ONLY**</u>

November 03, 2015

Elizabeth Fitzgerald
Deputy City Attorney, City of Los Angeles
200 N. Main St., City Hall East, 9th Floor
Los Angeles, CA 90012

Re: *LA Catholic Worker v. Los Angeles Downtown Industrial District*

Dear Counsel:

We are in receipt of a declaration from Leshon Frierson regarding the LAPD's capacity to produce documents responsive to our requests.

At our October 9, 2015 meeting to discuss defendant's responses, you represented that the City could not produce responsive documents from LAPD because LAPD deleted all emails after one year. Therefore, you represented that you could not produce any documents from prior to October 2014. We were incredulous and raised concerns about spoliation; you stated that you would provide us a declaration that attested to LAPD's policies.

What you produced yesterday does not support your contentions at our meeting. Instead, the declaration you provided speaks only to the "burden" of searching for email communications between LAPD and CCEA and suggests that a search for responsive documents is impossible and would take thousands of hours of time to do so.

We find hard to accept, especially because both Ms. Sweetser's firm and my firm have pending litigation against the City of Los Angeles where we have either received in discovery emails from LAPD going back as far as 2011 or have received representations from LAPD that they have the ability to produce emails going back to 2011. Moreover, LA CAN has received email communications from LAPD responsive to CPRA requests in other matters.

That said, before you represented in our meeting on October 9 that emails prior to October 2014 had been destroyed, we offered to limit the scope of the search for responsive emails within LAPD to the Central Division and other units and departments within LAPD that may have responsive emails. Although again, we do not believe that such a limitation is necessary, we are prepared to compromise in the interest of resolving this issue. We will agree to limit the departments searched to LAPD officers and chain of command within the Central Division at any time since March 2013, as well as emails from the Office of Operations and

*The Frontline Law Firm for Poor and Low-income People in Los Angeles*       

Research and Planning departments.  We are also willing to discuss search terms that can be used to conduct these searches. This will not waive our ability to request additional searches if the documents identify other responses, but this is a common and well-established practice for producing emails, and we believe it is a reasonable compromise at this point.

　　　Please let us know by November 4, 2015 whether this is acceptable. We are also willing to discuss this and can do a call tomorrow afternoon.  However, if you are not willing to agree to a compromise, and instead, stand by your position that it would be impossible for the City to produce responsive and highly relevant emails regarding this case, we will have no choice but to move to compel, and we will move for sanctions against the City.

Sincerely,

/s

Shayla Myers

EXHIBIT X

**Shayla R. Myers**

| | |
|---|---|
| **From:** | Catherine Sweetser <catherine.sdshhh@gmail.com> |
| **Sent:** | Wednesday, November 04, 2015 6:04 PM |
| **To:** | Elizabeth Fitzgerald; Shayla R. Myers |
| **Subject:** | Re: LA Catholic Worker |

Beth:

Please make sure Shayla is cc'ed on all emails.  As you saw, the latest round of letters was from her.  I want to make clear that to my recollection you and I did not speak after the letters sent Nov 2 and 3 with various deadlines enumerated in them.

We will construe this email as a request for more time to produce documents (until November 16, 2015).  Shayla is out of town right now but I'll talk to her about it.  We expect that the supplemental response deadline of November 6, 2015 is a firm one.

Catherine

On Wed, Nov 4, 2015 at 3:08 PM, Elizabeth Fitzgerald <elizabeth.fitzgerald@lacity.org> wrote:

# Hi Catherine,

# I will provide supplemental responses by this Friday -- November 6, 2015, and will produce documents by November 16, 2015.

# Thank you for allowing me to have additional time.

Sincerely,


Beth Fitzgerald
Deputy City Attorney
Office of the City Attorney
Business & Complex Litigation Division
(213) 473-6855

****************Confidentiality Notice *************************
This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be confidential or protected by the attorney-client privilege and/or the work product doctrine. If you are not the intended recipient, be aware that any disclosure, copying,
distribution or use of the content of this information is prohibited. If you have received this communication in error, please notify us immediately by e-mail and delete the original message and any attachments without reading or saving in any manner.
*********************************************************

--
Schonbrun Seplow Harris & Hoffman LLP
723 Ocean Front Walk
Venice, CA 90291
310.396-0731
fax:310.399-7040
www.losangelesemploymentlawyer.com
www.sdshh.com

EXHIBIT Y

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

**cc: ADR Program**

Case No.:   2:14–cv–07344–PSG–AJW                    Date:   3/30/2015
Title:   LOS ANGELES CATHOLIC WORKER ET AL V. LOS ANGELES DOWNTOWN
INDUSTRIAL DISTRICT BUSINESS IMPROVEMENT DISTRICT ET AL

Present: The Honorable   Philip S. Gutierrez, United States District Judge

Deputy Clerk:   Wendy K. Hernandez                  Court Reporter:   N/A

Attorneys Present for Plaintiff:                    Attorneys Present for Defendant:
Not Present                                         Not present

PROCEEDINGS: **VACATING SCHEDULING CONFERENCE**

   PLEASE TAKE NOTICE that the Scheduling Conference set for hearing on 03/30/2015
is hereby **vacated and taken off calendar**. On the Court's own motion, the following dates
are hereby set. Counsel are directed to review the Court's trial order for further details.

| | |
|---|---|
| Last Day to Add Parties & Amend Pleadings:<br>(Doe defendants are dismissed as of cut–off to add parties) | 4/30/2015 |
| Discovery Cut–Off: | 1/20/2016 |
| Last Day to File Motion: | 2/9/2016 |
| Opening Expert Witness Disclosure:<br>[See F.R.Civ.P. 26(a)(2)] | 02/02/2016 |
| Rebuttal Expert Witness Disclosure: | 03/01/2016 |
| Expert Discovery Cut–Off: | 03/22/2016 |
| Final Pretrial Conference (2:30 p.m.): | 4/11/2016 |
| Jury Trial (9:00 a.m.): | 4/26/2016 |
| Estimated Length: | 7 Days |

Initials of Preparer:  ab

EXHIBIT Z

| Project | Description | Date | Amount |
|---------|-------------|------|--------|
| Meet and confer | Meet and confer re discovery responses | 10/9/2015 | 2 |
| Meet and confer | Draft/edit meet and confer letter and confer with co-counsel about letter | 10/15/2015 | 1.1 |
| Meet and confer | Meet and confer on City RFPs | 10/16/2015 | 1.6 |
| Meet and confer | Meet and confer on City RFPs | 10/19/2015 | 0.3 |
| Meet and confer | Draft meet and confer letter on City RFPs | 10/21/2015 | 0.3 |
| Meet and confer | Draft meet and confer letter on City RFPs | 10/26/2015 | 2.5 |
| Meet and confer | Draft and send meet and confer letter on City RFPs | 10/28/2015 | 0.9 |
| Meet and confer | Review and edit draft meet and confer letters by co-counsel | 11/2/2015 | 0.2 |
| Motion to compel | Edit motion to compel | 11/24/2015 | 1 |
| Motion to compel | Edit motion to compel | 11/23/2015 | 0.5 |
| Motion to compel | Edit declaration for discovery motion | 11/24/2015 | 0.5 |
| Motion to compel | Edit motion to compel | 11/25/2015 | 0.8 |
| Motion to compel | Edit declaration for discovery motion | 11/25/2015 | 0.8 |
| | | Total: | 12.5 |

Exhibit Z