1 | Fernando Gaytan (SBN 224712) fgaytan@lafla.org
Paul J. Estuar (SBN 167764) pestuar@lafla.org
2 | Shayla R. Myers (SBN 264054) smyers@lafla.org
**LEGAL AID FOUNDATION OF LOS ANGELES**
3 | 7000 S. Broadway
Los Angeles, CA 90003
4 | Tel: (213) 640-3831
Fax: (213) 640-3988

5 | Paul Hoffman, SBN 071244
6 | Catherine Sweetser, SBN 271142
SCHONBRUN SEPLOW
7 | HARRIS & HOFFMAN LLP
723 Ocean Front Walk
8 | Venice, California 90291
Telephone:  (310) 396-0731
9 | Fax:  (310) 399-7040

10

11 | Attorneys for Plaintiff

12

13 | **UNITED STATES DISTRICT COURT**

14 | **CENTRAL DISTRICT OF CALIFORNIA**

15 | LOS ANGELES CATHOLIC

**CASE NO: CV2:14-cv-07344 PSG (AJWx)**

16 | WORKER, an unincorporated
association; CANGRESS, a non-profit
17 | corporation; HARRY JAMES JONES,
LOUIS GRADY, LLOYD HINKLE,
18 | WALTER SHOAF, individuals

**DECLARATION OF SHAYLA MYERS**

19 | **Plaintiffs,**

20 | v.

21 | LOS ANGELES DOWNTOWN
INDUSTRIAL DISTRICT BUSINESS
22 | IMPROVEMENT DISTRICT,
CENTRAL CITY EAST
23 | ASSOCIATION, INC., CITY OF LOS
ANGELES; DOES 1 -10
24

25 | **Defendants,**

26 | _____

27

28

1

## Declaration of Shayla Myers

1.      I am an attorney at the Legal Aid Foundation of Los Angeles. If called to testify, could testify accurately to the facts herein.

2.      On July 24, 2015, I sent a California Public Records Act to the Bureau of Sanitation, which is a department within the City of Los Angeles. The request was unrelated to this litigation, although some of the topics covered by the request are also covered by Requests for Production in this case.

3.      On November 16, 2015, I was informed that the Bureau of Sanitation had documents ready for my review.

4.      On November 18, 2015, I reviewed the documents.  Included in the responsive documents were over 200 pages of emails sent and received by city employees who work within the Bureau of Sanitation.  A exemplary number of those emails are attached as Exhibit A.

5.      Unrelated to this matter, Plaintiffs received a number of documents responsive to a California Public Records Act sent to the Central City East Association and City departments.  The requests were unrelated to this litigation and therefore do not substitute for searches of documents produced in response to Plaintiffs' Requests for Production.  However, a number of documents were emails between the City of Los Angeles and the Central City East Association (CCEA) on issues related to this litigation and that would be responsive to Plaintiffs' Requests for Production to the City of Los Angeles. True and correct copies of examples of those emails are attached as Exhibit B.

6.      In response to Requests for Production propounded on Defendant CCEA, Defendant CCEA produced letters sent from CCEA to the City of Los Angeles regarding a potential settlement of *Lavan v. City of Los Angeles*.  True and correct copies of those emails are attached as Exhibit C.

1

7.     As of November 24, 2015, I have spent much more than 36 hours on the meet and confer process and writing the Motion to Compel in this case. I reduced my hours considerably and did not include any time spent reviewing Defendants' responses, conferring with my co-counsel, or emailing with opposing counsel.  Those hours include only the hours spent drafting numerous meet and confer letters, hours spent meeting and conferring with Defendant over its responses, and hours spent drafting this motion and related declarations.   A spreadsheet detailing the hours spent related to this motion are attached as Exhibit D.

8.     I also anticipate that I will spend in excess of two hours drafting Plaintiffs' reply and at least one hour preparing for and attending the hearing on the Motion to Compel.  I am requesting fees for 39.9 hours of my time.

9.     I am a 2008 graduate of UCLA School of Law.  My current billable rate is $500.00.  Therefore, I am requesting $19,950.00 in attorneys' fees related to the filing of this motion.

I swear under penalty of perjury that the foregoing is true and correct. Executed this 25th day of November, 2015 at Los Angeles, California.

Shayla Myers

Declaration of Shayla Myers in Support of Plaintiffs' Portion of the Joint Stipulation

EXHIBIT A

11/13/2015                                City of Los Angeles Mail - 90-Day storage moving


**LA GEECS**

Steven Pedersen <steven.pedersen@lacity.org>

## 90-Day storage moving
1 message

**Steven Pedersen** <steven.pedersen@lacity.org>                                   Fri, Sep 20, 2013 at 8:08 AM
To: Tri Tran <tri.tran@lacity.org>, Joseph Fortaleza <joseph.fortaleza@lacity.org>, Ching Peng
<ching.peng@lacity.org>, "Michael.Evers@lacity.org" <michael.evers@lacity.org>, Michael Miller
<michael.miller@lacity.org>, Ernesto Garcia <ernesto.garcia@lacity.org>, Kislev Joy Ang <kislev.ang@lacity.org>,
Nori Bersales <nori.bersales@lacity.org>, Mia Kang <mia.kang@lacity.org>, Lindsay Aventino
<lindsay.aventino@lacity.org>, Chin Chai Teo <chin.teo@lacity.org>, Ron Metcalf <ron.metcalf@lacity.org>, Eric
Lee <eric.y.lee@lacity.org>, Howard Wong <howard.wong@lacity.org>, Gonzalo Barriga
<gonzalo.barriga@lacity.org>, Jose Arambulo <jose.arambulo@lacity.org>, Susan Berberabe
<susan.berberabe@lacity.org>

FYI ... the City 90-day storage location site is being moved to the
CCEA location. The current space operated by Chrysalis is needed for the Metro project. The planned move out date is
10/1/2013. The CCEA storage location is:

1215 E. 7th Street
Los Angeles, CA 90021


Thanks!


–
Steve Pedersen
Chief Environmental Compliance Inspector
City of Los Angeles, Watershed Protection Division
Enforcement/Emergency Response
2714 Media Center Drive
Los Angeles, CA 90065



Steven Pedersen <steven.pedersen@lacity.org>

## 507 Towne Avenue Meeting
4 messages

---

**Steven Pedersen** <steven.pedersen@lacity.org>                      Mon, Sep 22, 2014 at 5:02 PM
To: Adel Hagekhalil <adel.hagekhalil@lacity.org>

Hi Adel:

This afternoon I met with the City Attorney's Office, Chrystalis, LAHSA, County, and LAPD regarding the new 90-day storage facility at 507 Towne Avenue in Skid Row. The new facility called "The Bin" will open October 13, 2014. Over the prior weekend (Oct.11th and 12th), Chrystalis and LAHSA will provide staff to move property from the Mangrove facility on Temple to the new location. They are requesting one flatbed with driver from Sanitation to assist in the move. Would Hyperion have a flatbed and driver to offer?

--
Steve Pedersen
Chief Environmental Compliance Inspector
City of Los Angeles, Watershed Protection Division
Enforcement/Emergency Response
2714 Media Center Drive
Los Angeles, CA 90065

---

**Adel Hagekhalil** <adel.hagekhalil@lacity.org>                      Mon, Sep 22, 2014 at 5:06 PM
To: Steven Pedersen <steven.pedersen@lacity.org>

Plead check with solids first.
[Quoted text hidden]

---

**Steven Pedersen** <steven.pedersen@lacity.org>                      Mon, Sep 22, 2014 at 5:09 PM
To: Adel Hagekhalil <adel.hagekhalil@lacity.org>

Will do.
[Quoted text hidden]

---

**Adel Hagekhalil** <adel.hagekhalil@lacity.org>                      Mon, Sep 22, 2014 at 7:00 PM
To: Steven Pedersen <steven.pedersen@lacity.org>

Thanks Steve

[Quoted text hidden]



Steven Pedersen <steven.pedersen@lacity.org>

## Personal belongings from yesterday clean up
1 message

**Steven Pedersen** <steven.pedersen@lacity.org>                                    Wed, Sep 11, 2013 at 11:25 AM
To: howard.wong@lacity.org, gonzalo.barriga@lacity.org

Adel wants the personal items picked up from the storage bin at the Solids
yard. (The bin was moved). Pepe of Solids will have the location of the
bin. The items need to be delivered to Chrystalis storage facility down
town.

EXHIBIT B

| | |
|---|---|
| **From:** | Estela Lopez |
| **Sent:** | Saturday, April 30, 2011 11:28 AM |
| **To:** | afish1@americanfish.com (afish1@americanfish.com); Alexander Palermo; bill@ore-cal.com (bill@ore-cal.com); dkanner530@aol.com (dkanner530@aol.com); Don Steier; Howard Klein (howard.klein@OceanBeauty.com); lrauch@lacold.com (lrauch@lacold.com); marks@ore-cal.com (marks@ore-cal.com); Matt Klein; Michael Tansey; pvert@youngsmarket.com (pvert@youngsmarket.com); richard gardner; ricmeruelo@aol.com (ricmeruelo@aol.com) |
| **Cc:** | CCEA Staff |
| **Subject:** | Judge's order stops LAPD from removing homeless' personal property off skid row sidewalks |

We are in contact with the City Attorney's office regarding their efforts to overturn this injunction:

# Ruling Protects Homeless' Property

Published: Friday, April 29, 2011 4:08 PM PDT

DOWNTOWN LOS ANGELES - A recently granted temporary restraining order prohibits city entities from seizing property from the homeless in Skid Row.

The order, granted April 22 by U.S. District Court Judge **Philip S. Gutierrez**, bars the LAPD, the Department of Public Works and other city agencies from taking property in the area unless it is clearly abandoned, is a threat to public health or safety or is evidence in a crime. Additionally, any property seized must be kept for 90 days. The order was secured by attorney **Carol Sobel**, with support from the Los Angeles Community Action Network and the Los Angeles Catholic Worker. The suit named eight plaintiffs, all homeless individuals, who alleged that the LAPD took their property while they, among other things, visited a mission for a shower or used a public restroom. A hearing to determine whether to issue the order is set for June 20.

Estela Lopez, Executive Director
Central City East Association
725 S. Crocker Street
Los Angeles, CA  90021
213 228 8484  ext. 200
213 228 8484  fax

CCEA-A000016

| | |
|---|---|
| **From:** | Greg Fischer <greg.fischer@lacity.org> |
| **Sent:** | Wednesday, July 21, 2010 2:21 PM |
| **To:** | Estela Lopez |
| **Cc:** | kathy.godfrey@lacity.org |
| **Subject:** | Re: San Pedro St. crime/trees |
| | |
| **Categories:** | Print and Release |

I'll see what, if anything, can be done.

---

**From:** Estela Lopez <elopez@centralcityeast.org>
**To:** Greg Fischer <greg.fischer@lacity.org>; Arturo Gonzalez <arturo.gonzalez@lacity.org>
**Cc:** Kathy Godfrey <kathy.godfrey@lacity.org>; ana.cubas@lacity.org <ana.cubas@lacity.org>
**Sent:** Wed Jul 21 14:18:50 2010
**Subject:** San Pedro St. crime/trees

As you may recall, our office is working with Union Rescue Mission, Midnight Mission, Volunteers of America, and the LAPD to address a host of issues leading to growing criminal activity on San Pedro between 5th & 7th Sts. I want to update you on two key action items:

- **Parking regulations**: large groups of people loiter all day and night along the east side of the 500 block, where URM President Andy Bales observes drug sales, beer sales, fights, assaults, etc. The sale of beer and stolen items involves vehicles parked all day on that block.
  **UPDATE:** With assistance from LAPD Off. Jack Richter, we've obtained the necessary signatures on a petition to change the parking on that block to <u>Passenger Loading Only</u>. CCEA and LAPD will each submit a support letter along with this petition to CD 14.

- **Trees**: there are 26 street trees between 5th & 7th Sts, nearly all of them with large canopies that provide hiding places for drugs and stolen merchandise. We are desperately in need of having these trimmed to as small a canopy as possible. They were last trimmed in Fall of 2006 as part of the Safer Cities Initiative. Presently, we have gang members hiding drugs in the trees on the east side of the 600 block. We submitted a request to the Mayor's office for emergency tree trimming for this public safety reason, but were told there is no funding.
  **UPDATE:** Two of the trees had a few branches cut overnight, apparently by the DWP. We are attempting to confirm this. On at least one tree, the branches that have been cut away reveal a ledge or shelf built inside the tree that is used by gang members to hide drugs.

Estela Lopez, Executive Director
Central City East Association
725 S. Crocker Street
Los Angeles, CA 90021
213 228 8484 - tel
213 228 8488 - fax
elopez@centralcityeast.org

CCEA-A000147

| | |
|---|---|
| **From:** | Estela Lopez |
| **Sent:** | Wednesday, July 18, 2012 5:38 PM |
| **To:** | HORACE FRANK |
| **Subject:** | FW: IMPORTANT - City clean up today on Towne Ave. |
| | |
| **Categories:** | Print and Release |

Dear Captain Frank,

Sorry to reach out to you again with this, but I am at my wits end.  I do the best I can to explain to the merchants why Occupy is allowed to live on their sidewalk but their patience is wearing thin.  The population on the 400 block of Towne has exploded.  Not all are Occupy.  Some look like thugs.  My people tell me SCI is out there hitting them hard every night, but it doesn't seem to faze them.

Occupy is laughing in everyone's face.  What is the plan for Towne Ave?

Cordially,

Estela Lopez, Executive Director
Central City East Association (CCEA)
*Arts District BID / Downtown Industrial District BID*
725 Crocker Street
Los Angeles, CA  90021
213 228 8484 - tel
213 228 8488 - fax
elopez@centralcityeast.org

---

**From:** Yaron [mailto:rtirosh@sbcglobal.net]
**Sent:** Wednesday, July 18, 2012 4:22 PM
**To:** Estela Lopez
**Cc:** bnelatfish@yahoo.com; jim merry; john quach; johnclementi@hotmail.com; polykings@att.net; ed_fukumoto@yahoo.com; EleanorAhdoot; ron@gamesourceinc.com
**Subject:** Re: IMPORTANT - City clean up today on Towne Ave.

Estela I just passed by town between 4th and 5th .... I know you are doing your best but the street looks like shit , I really don't understand this any more , we don't need a clean street we need this people to be moved from there not clean the street for them

ADVANCE KNITTING MILLS
527 Ceres ave.
Los Angeles ca 90013
(213)624-9229
(213)624-9223-fax

1

**From:**        HORACE FRANK <frankh@lapd.lacity.org>
**Sent:**        Thursday, April 05, 2012 10:34 AM
**To:**          Estela Lopez
**Subject:**     Fw: SCI Presentation

**Categories:**  Print and Release


FYI below.
Captain 3 Horace E. Frank
Commanding Officer
Central Area, LAPD
213-276-2411 Cell
213-972-1290 Office

>>> JOHN SHERMAN 4/5/2012 8:47:56 AM >>>
Fyi
John A. Sherman, Commander
Assistant Commanding Officer
Operations-Central Bureau
213-485-3101

>>> RICHARD TEFANK 4/5/2012 8:06:54 AM >>>
Hi John,

After speaking with Chief Jacobs this morning I am pulling the presentation at this time.  We will schedule in the near future.

Thanks,

Richard

Richard M. Tefank, Executive Director
Board of Police Commissioners
Los Angeles Police Department
100 W. First St., Suite 135
Los Angeles, CA 90012
213-236-1400
richard.tefank@lapd.lacity.org

>>> JOHN SHERMAN 4/4/2012 9:09 AM >>>
Mr Tefank,
Roger all and thank you for the heads-up. I will see you Tuesday.

John
John A. Sherman, Commander
Assistant Commanding Officer
Operations-Central Bureau
213-485-3101

>>> RICHARD TEFANK 4/4/2012 8:45:54 AM >>>
Hi John,

1

Trust all is well.  Chief Paysinger advised me this morning that you will be doing the verbal presentation to the Commission on Tuesday, April 10th re the current status of Central Area's SCI "Skid Row".

Commissioners requested the presentation as a result of the news articles that describe some slippage in the progress that had been made.

I would suggest addressing the current situation (crime stats, appearance, etc), reasons if any for the slippage, and strategy going forward.

Any questions please let me know.

Richard


Richard M. Tefank, Executive Director
Board of Police Commissioners
Los Angeles Police Department
100 W. First St., Suite 135
Los Angeles, CA 90012
213-236-1400
richard.tefank@lapd.lacity.org

| | |
|---|---|
| **From:** | EARL PAYSINGER <paysinge@lapd.lacity.org> |
| **Sent:** | Wednesday, March 28, 2012 7:59 AM |
| **To:** | Estela Lopez |
| **Cc:** | Earl.Thomas@lacity.org; Eileen.Decker@lacity.org; mc.molidor@lacity.org; William.Carter@lacity.org; MATT BLAKE; perezj@lapd.lacity.org |
| **Subject:** | Re: LA Times:  Skid Row population surges |
| **Importance:** | High |
| **Categories:** | Print and Release |

Estela:

Please be aware that the group to whom you addressed this message have had a series of productive conversations over the past week, all geared towards identifying credible and lasting solutions to this challenge. All of us are keenly aware that both Jones and Lavan have compelling implications not only in the downtown region, but also in all other parts of the City as well.

Be assured that we deem this one of the most important issues in the City and will continue to work diligently towards developing a sustainable strategy that involves several agencies of the City family as well as the members of your group. Your concerns will not be de-prioritized nor are they being ignored. All of us have a stake in a positive outcome and my best sense suggests that we will find answers in the weeks to come.

Know that I'm grateful for your strong advocacy and resolve....

ECP

>>> Estela Lopez <elopez@centralcityeast.org> 3/28/2012 7:12:01 AM >>>
Dear Friends,

Here is the story we've been expecting on our current situation.  We most desperately need your help.  The acts being committed on the sidewalk in broad daylight are exactly what we had several years ago before SCI.  Not only narcotics use and sales, but sex on the sidewalk with no fear of police.

What is it going to take?

Cordially,

Estela Lopez, Executive Director
Central City East Association (CCEA)
*Arts District BID / Downtown Industrial District BID*
725 Crocker Street
Los Angeles, CA  90021

213-228-8484 - ph
213-228-8488 - fax

| | |
|---|---|
| **From:** | HORACE FRANK <frankh@lapd.lacity.org> |
| **Sent:** | Thursday, January 05, 2012 11:40 PM |
| **To:** | Estela Lopez |
| **Subject:** | Re: Jan Perry motion re: surveillance cameras |
| | |
| **Categories:** | Print and Release |

LOL. I will never cross out partners. Even those who are critical because they serve a valuable purpose to keep us on top of our game. And as you so well put it, we need him for access to the Almighty. In fact, I need to meet with him. I will have Deon reach out to him on my behalf. In speaking with Sergeant Chavez, there are actually 4 cameras in Skid Row that are working and that the SCI uses. The problem is that when the cameras are not actively being monitored/manipulated by a person, they revert back to their default home positioning; whatever that may be for that particular camera.

Horace E. Frank, Captain 3
Commanding Officer
Central Area
Los Angeles Police Department
Cell 213-276-2411
Office 213-972-1290

>>> Estela Lopez <elopez@centralcityeast.org> 1/5/2012 11:26:06 PM >>>
Perfect. we're on for the 18th.

The camera nearest the stabbing was working? Well this just adds to my complete confusion. I thought the only functioning skid row camera is at 6th & San Pedro. As for Andy Bales, he is a good soul and means well. You won't find a stronger LAPD supporter. But he is incorrect; there is no way things are as bad as they were on the Row prior to 2006, although I assure you the area right now is at its worst since SCI began. Some streets in our area are scary bad...and I think we are all afraid of the slippery slope. But in Andy's particular case, remember that the back of his property is on San Julian and you gotta admit that is a horrible sight. So I think for him, it does look like we've taken a giant step backward. And he's afraid. But don't cross him off your list. You will see. He is on our side. And he spends more time in prayer than I do, so I figure he's got a direct line to the Big Guy.

The John North piece mentions the officers at the start of the video.

Estela Lopez, Executive Director
Central City East Association
725 S. Crocker Street
Los Angeles, CA  90021
213 228 8484  ext. 200
213 228 8488  fax

**From:** HORACE FRANK [mailto:frankh@lapd.lacity.org]
**Sent:** Thursday, January 05, 2012 11:16 PM
**To:** Estela Lopez
**Subject:** Re: Jan Perry motion re: surveillance cameras

The 18th works best for me. How about 11:45AM. I will pick a nice place.

1

Also, Thanks for sharing the ABC piece with me. She is wrong on two fronts; first the camera was working; It was pointed in the opposite direction. Secondly, we do have the suspect in custody on an unrelated charge while we develop the case on the murder. But that is our secret. Regarding the John North piece; sometimes we as cops are our worst enemy. For cops to agree with Bales that crime on skid row is back to what it was a decade ago is ignorance at its best. Seems like John North could have done some due diligence by checking the statistics. Though, in reading the article, I didn't see the part about the officers agreeing with Bales.
Horace E. Frank, Captain 3
Commanding Officer
Central Area
Los Angeles Police Department
Cell 213-276-2411
Office 213-972-1290


>>> Estela Lopez <elopez@centralcityeast.org> 1/5/2012 9:59:54 PM >>>
Open for lunch on the 18th, 19th & 20th.

In case you didn't see the Channel 7 story on the cameras, here it is:
http://abclocal.go.com/kabc/story?section=news/local/los_angeles&id=8492578


Also this one in which Union Rescue Mission director Rev. Andy Bales says crime on skid row is back to what it was a decade ago (reporter John North says some Central Area police officers who spoke "anonymously" agree):
http://abclocal.go.com/kabc/story?section=news/local/los_angeles&id=8491738


Estela Lopez, Executive Director
Central City East Association
725 S. Crocker Street
Los Angeles, CA  90021
213 228 8484  ext. 200
213 228 8488  fax


**From:** HORACE FRANK [mailto:frankh@lapd.lacity.org]
**Sent:** Thursday, January 05, 2012 9:31 PM
**To:** Estela Lopez
**Subject:** Re: Jan Perry motion re: surveillance cameras

Thank you, I will be sure to be there. I really do appreciate your support. BTW, we are due for lunch. How does your calendar look for week after next?
Horace E. Frank, Captain 3
Commanding Officer
Central Area
Los Angeles Police Department
Cell 213-276-2411
Office 213-972-1290


>>> Estela Lopez <elopez@centralcityeast.org> 1/5/2012 4:05:03 PM >>>
Item is tentatively set for Public Safety Committee on February 17th at 8:30am in room 1010 of City Hall.


Estela Lopez, Executive Director
Central City East Association

| | |
|---|---|
| **From:** | JOSE PEREZ <perezj@lapd.lacity.org> |
| **Sent:** | Friday, June 25, 2010 8:47 PM |
| **To:** | Estela Lopez |
| **Subject:** | Re: Reassignment of Skid Row Senior Lead Officer |
| | |
| **Categories:** | Print and Release |

How about Monday around 9.  Where would u like to meet?
JOSE PEREZ, Jr., Commander
Commanding Officer
Operations-Central Bureau
Office:  (213) 485-3101
Fax:  (213) 485-1865
-----Original Message-----
From: Estela Lopez <elopez@centralcityeast.org>
To: PEREZ, JOSE <jose.perezjr@lapd.lacity.org>

Sent: 6/25/2010 5:44:48 PM
Subject: RE: Reassignment of Skid Row Senior Lead Officer

Only at 9am or 2:30pm.  Monday is much better.  I'm open until 3pm.


Estela Lopez, Executive Director
Central City East Association
725 S. Crocker Street
Los Angeles, CA  90021
213 228 8484 - tel
213 228 8488 - fax
elopez@centralcityeast.org


-----Original Message-----
From: JOSE PEREZ [mailto:perezj@lapd.lacity.org]
Sent: Friday, June 25, 2010 5:34 PM
To: Estela Lopez
Subject: Re: Reassignment of Skid Row Senior Lead Officer

Mija,
Are you free Tuesday?
JOSE PEREZ, Jr., Commander
Commanding Officer
Operations-Central Bureau
Office:  (213) 485-3101
Fax:  (213) 485-1865
-----Original Message-----
From: Estela Lopez <elopez@centralcityeast.org>
To: PEREZ, JOSE <jose.perezjr@lapd.lacity.org>

CCEA-A000138

Cc: CHOW, BLAKE <blake.chow@lapd.lacity.org>

Sent: 6/25/2010 5:29:08 PM
Subject: RE: Reassignment of Skid Row Senior Lead Officer

Just wondering if there's any update?


Estela Lopez, Executive Director
Central City East Association
725 S. Crocker Street
Los Angeles, CA 90021
213 228 8484 - tel
213 228 8488 - fax
elopez@centralcityeast.org


-----Original Message-----
From: JOSE PEREZ [mailto:perezj@lapd.lacity.org]
Sent: Tuesday, June 22, 2010 5:37 PM
To: Estela Lopez
Cc: chowb@lapd.lacity.org
Subject: Re: Reassignment of Skid Row Senior Lead Officer

Mija,
Thanks for the email. Captain Chamberlain are to discuss the SLO position Wed or Thurs.  We will get back to you afterwards.

Jose
JOSE PEREZ, Jr., Commander
Commanding Officer
Operations-Central Bureau
Office:  (213) 485-3101
Fax:  (213) 485-1865
-----Original Message-----
From: Estela Lopez <elopez@centralcityeast.org>
To: PAYSINGER, EARL <earl.paysinger@lapd.lacity.org>
To: PEREZ, JOSE <jose.perezjr@lapd.lacity.org>
Cc: CHAMBERLAIN, TODD <todd.chamberlain@lapd.lacity.org>
To: CHOW, BLAKE <blake.chow@lapd.lacity.org>
Cc: Perry, Jan <jan.perry@lacity.org>
Cc: Godfrey, Kathy <kathy.godfrey@lacity.org>


Sent: 6/22/2010 4:16:19 PM
Subject: Reassignment of Skid Row Senior Lead Officer

Friends, I've been informed that due to LAPD personnel limitations the skid row Senior Lead Officer position is being temporarily merged with two separate areas:  Little Tokyo and the Arts District.

The level of criminal activity in skid row is, to say the least, different from any other district in Central Area.  It requires a level of attention that, if not dealt with by its own SLO, will have a negative impact not only on skid row but on the attention that one SLO can give to either Little Tokyo or Arts.  As you well know, skid row has the highest concentration

CCEA-A000139

of parolees, sex offenders...and homeless victims. Officers from the Safer Cities Initiative are outstanding in their mission. But a SLO works a different mission, one that focuses on the quality of life issues that arise daily and require dedicated follow-up in partnership with stakeholders directly.

Capt. Todd Chamberlain and I have an excellent working relationship. We are in complete agreement on every issue and he has maintained a consistent communication with CCEA from day one. This is not a criticism of Capt. Chamberlain. He is an outstanding commanding officer with whom we are all delighted.

I am writing to seek your help so that he doesn't have to collapse this SLO position and merge it with other areas. No one will be helped by this arrangement, and the consequences could be significant as we move into the summer with heightened public safety needs throughout downtown.

Please let me know your thoughts. Thank you for your consideration and help.

Estela Lopez, Executive Director

Central City East Association

725 S. Crocker Street

Los Angeles, CA 90021

213 228 8484 - tel

213 228 8488 - fax

elopez@centralcityeast.org

CCEA-A000140

EXHIBIT C

GUZIN & STEIER
ATTORNEYS AT LAW
4525 WILSHIRE BOULEVARD
SUITE 201
LOS ANGELES, CALIFORNIA 90010

DONALD H. STEIER
LAWRENCE N. GUZIN

TEL. (323) 932-1600
FAX (323) 932-1873
GSLAW@IX.NETCOM.COM

March 6, 2014

By Email and U.S. Mail

Hon. Mike Feuer
City Attorney
City of Los Angeles
200 N. Main Street, 8th Fl.
Los Angeles, CA 90012

RE: *Lavan vs. City of Los Angeles*

Dear City Attorney,

On behalf of the Board of Directors of the Central City East Association (CCEA), I want to thank you for your invitation to meet with us again to discuss our deep reservations regarding settlement of *Lavan vs. City of Los Angeles*, and our very serious concerns regarding the deterioration of public health and safety conditions on Skid Row while settlement negotiations are underway.

We have reviewed both the United States District Court ruling and the Ninth Circuit Court of Appeal opinion and, although we are not privy to the terms being negotiated, we respectfully disagree that the City's best and only option is a settlement.

In *Lavan*, the evidence before the Court was the City's practice of seizing the personal property of homeless people when the property was left unattended on sidewalks and other public places, and <u>destroying it promptly and without prior notice</u>. The facts were essentially undisputed. The City's main argument was that property becomes "abandoned" whenever its owner walks away from it; as abandoned property, it is trash that can be destroyed. Alternatively, the City argued that the Municipal Code prohibits leaving "*any article of personal property*" on any sidewalk [§56.11] or leaving any shopping cart off its owner's premises [§ 41.45] (and such property could be seized as "evidence of a crime.")

The District Court rejected both arguments. Walking away from property does not necessarily mean that the property is abandoned (as in a parked car), and if the property was actually "evidence" it would not have been destroyed.

CCEA 00776

Hon. Mike Feuer

Page 2

The Court also concluded that the property was destroyed without "Due Process" or adequate notice in advance and an opportunity for the property's owner to be heard or to contest the destruction.

Finally, the Court noted that the City failed to comply with California law (Civil Code § 2080 *et seq.*) that requires "found property" exceeding $100 in value be held for 90 days. The district judge ruled that even if the City has a legitimate reason to seize property in violation of LAMC (§ 56.11 or § 41.45), the immediate destruction of the property is prohibited and preempted by both the Constitutional Due Process clause and the standards imposed under California statute.

In June, 2011, the District Court enjoined the City from:

- Seizing property in Skid Row absent an objectively reasonable belief that it is abandoned, presents an immediate threat to public health or safety, or is evidence of a crime or contraband; and,

- Absent an immediate threat of public health or safety, destruction of said seized property without maintaining it in a secure location for a period of less than 90 days.

The injunction language permits the homeless to maintain "*the few necessary personal belongings they might have.*" (*Lavan,* 797 F.Supp. 2d 1005, at 1019)  The primary legal authority cited by Judge Gutierrez in the injunction is *Pottinger v City of Miami* (810 F. Supp. 1551 (S.D. Fla. 1992). *Pottinger* states that "*typical possessions of homeless individuals include bedrolls, blankets, clothing, toiletry items, food and identification, and are usually contained in a plastic bag, cardboard box, suitcase or some other type of container.*" (at 1571).  "*[T]he City would not be expected to gather and store mattresses, cardboard shelters, lumber or illegally possessed shopping carts.*" (at 1573). [Emphasis added]

In addition, Judge Gutierrez was clear about the limits of this injunction when he wrote: "*The City [is] able to lawfully seize and detain property, as well as remove hazardous debris and other trash.  Issuance of the injunction merely prevent[s the City] from unlawfully seizing and destroying personal property that is not abandoned without providing any meaningful notice and opportunity to be heard.*"  (*Lavan* at 1019) [Emphasis added]

In other words, if the City has a legitimate reason to remove items it can do so as long as the City complies with California law.  The judge mentioned favorably CCEA's check-

Hon. Mike Feuer

Page 3

in center (voluntary property storage) as an example of a facility that holds property for 90 days (*Fn 7*).

In 2012 the City appealed the injunction on only one ground.  As noted in the decision by the Ninth Circuit Court, "*The City does not challenge the scope of the injunction, nor does it ask us to modify its terms; instead, the City argues only that the district court applied the wrong legal standard.*" (*Lavan*, 693 F.3d 1022 [9th Circ. 2012]) The City's position was that the taking of unattended property of homeless does not violate the Fourth/Fourteenth Amendment prohibiting unlawful seizures because there can be no legitimate expectation of privacy in property left unattended on public sidewalks.

However in Footnote 1, the Ninth Circuit repeated that "*the injunction does not require the City to allow hazardous debris to remain on Skid Row*" and that any interpretation suggesting that the City desert its responsibilities "*mischaracterized the breadth of the district court's order.*"

Finally, in its one paragraph conclusion the Ninth Circuit once again makes it clear that:

> [t]his appeal does not concern the power of the federal courts to constrain municipal governments from addressing the deep and pressing problem of mass homelessness or to otherwise fulfill their obligations to maintain public health and safety. In fact, this court would urge Los Angeles to do more to resolve that problem and to fulfill that obligation. **Nor does this appeal concern any purported right to use public sidewalks as personal storage facilities.** [797 Fed.Supp.2nd 1005 at 1019] (Emphasis added)

We are not aware of any case that recognizes a "right" of the homeless to store their possessions on sidewalks or other public property.  [The dissent at the Circuit Court of Appeals in *Lavan* recognized the same thing at 693 Fed.3rd 1022 at 1036, saying, "No circuit court has expanded the right to be free from unreasonable searches and seizures to a right to leave unattended personal property on public land in violation of a law prohibiting that conduct." ]

Indeed, courts have upheld municipal ordinances that prohibit such activity.  In *Tobe v. City of Santa Ana* [1995] 9 Cal.4th 1069, the California Supreme Court upheld ordinances that prohibited public camping and leaving personal property in public places, noting that the Constitution does not "endow citizens with a 'right to live or stay where one will.'"

In *Church v. City of Huntsville* [1994] 30 Fed.3rd 1332, the Court said, "Nor is there any constitutional right to store one's personal possessions on public lands."  The

Hon. Mike Feuer

Page 4

very recent case of *De-Occupy Honolulu v. City and County of Honolulu* [2013] ___ Fed. Supp.2[nd] ___ , 2013 US Dist LEXIS 71968 upheld an ordinance that prohibits storing personal property of any kind on public or publicly-maintained property.

Notwithstanding the clear intent of both the District Court and the Court of Appeal, and the solid body of case law that denies existence of a right for individuals to store personal property on sidewalks and similar public areas, the City has interpreted the rulings to justify restrictions on police enforcement and sanitation services in Skid Row, with dire consequences.   While settlement talks are underway, much of Skid Row has become a virtual garbage dump with block after block of sidewalks completely covered around-the-clock with soiled, contaminated, bug-infested items being hoarded by individuals living on the street.  Rats abound, human waste is evident, and we fail to understand why.  The City's duty to keep streets clean and safe was not abolished or limited by the Court.

The City now seeks to enter into a voluntary agreement that we believe will institutionalize the use of some portion of the public sidewalks for storage of personal possessions essentially allowing permanent encampments, and will bind the City to limit its enforcement of laws governing the public right-of-way. Moreover, the City would be the only party bound to this agreement because the homeless are not an "identifiable class" for enforcement purposes.

Ultimately, such a settlement will have citywide impact and cannot be limited only to Skid Row.  Case law is clear that constitutional protections cannot be limited geographically; homeless people are allowed to exercise the same "rights" throughout the entire City.  See *Fullerton Joint Union High School District v. State Board of Equalization* [1982] 32 Cal.3[rd] 779.  Geographic redlining constitutes illegal discrimination, *NAACP v. American Mutual Family Insurance Co.* [1992] 978 Fed.2[nd] 287.  In *Hawkins v. Town of Shaw* [1971] 437 Fed.2[nd] 1286, geographic inequalities in providing municipal services violated the Equal Protection Clause. California's landmark case condemning geographic discrimination is *Serrano v. Priest* [1971] 5 Cal.3[rd] 584.

In our view, a more reasonable alternative would be <u>not</u> to enter into any settlement agreement, allow the District Court to enter its order, then for the City properly and consistently to enforce code violations in conformity with the Due Process Clause and state law, and, if necessary, proceed with an appeal based upon the well-reasoned dissenting opinion in *Lavan*.

CCEA 00779

Hon. Mike Feuer

Page 5

The 46-block area known as Central City East is home to more than 12,000 industrial jobs and is the industry cluster for produce, fish and seafood, and cold storage with more than $1.34 billion in annual sales. Studies have calculated the area's contribution of significant revenues to the City of Los Angeles by utility taxes ($2.5 million) and business taxes ($1.5 million). Since 1999 Central City East property owners have also funded the Downtown Industrial Business Improvement District through property tax assessments of nearly $2 million annually for services including private security, sidewalk sweeping, pressure washing and tree trimming.

A settlement that clearly sanctions the creation of a permanent class of street inhabitants with the attendant health and safety issues would adversely and in perpetuity affect the public health and safety of Central City East and will forever change the economic viability of this area. Residents, business, and property owners in the area will all suffer serious impairment of their rights.

Such an agreement does nothing to advance the City's efforts to address the plight of homelessness. It is a question of balance, as stated in the dissenting opinion of the Ninth Circuit Court, between the homeless having an interest in their unattended property left on public streets and whether that interest is reasonable in light of the City's obligations to maintain safe and healthy public areas.

Further, a voluntary action by the City may present certain potential risks that a judicial ruling does not, such as challenges from property owners based upon the reduction of the value of their property as a result of the settlement and the statutory requirement of environmental review.

It is well accepted that a public agency must pay reasonable compensation when it "takes" or "damages" private property for a public purpose. Whether addressed by eminent domain before the taking or damage, or by inverse condemnation afterwards, a government cannot disproportionately burden a select group of property owners for a public object without paying for the damage caused. It is inevitable that my clients will suffer enormous compensable damage to their property interests if the City consents to a settlement which will result in streets and sidewalks being covered with unsafe, unsanitary property and conditions that discourage patronage, and even jeopardize the continued existence of their businesses. While we have not yet quantified that damage, it is foreseeable that a jury would assess a high value on it.

Another important consideration before such a settlement is undertaken is the necessity of compliance with the California Environmental Quality Act [Public Resources Code § 21000 et seq.] Clearly the settlement contemplated by the City will constitute a "project"

Hon. Mike Feuer

Page 6

as defined by PRC § 21065 that affects the environment, and compliance with the statutory investigation, reporting, and public discussion provisions is mandatory.  We believe that a review should be undertaken by the Planning Department prior to any presentation of a settlement to the councilmembers.

We also believe there is a responsibility to open this issue to greater input from the communities Citywide that will be affected by your decision.

From our conversations and your involvement in this matter, I know that you are personally concerned over the current gridlock in enforcement and sanitation services in Skid Row.  We believe the City is allowing an unhealthy and unsafe environment to proliferate with consequences for everyone, sheltered and unsheltered.  Again, thank you for your time and your consideration.  We look forward to discussing this with you in the near future.

Sincerely,

GUZIN & STEIER

Donald H. Steier

DHS:jk

CCEA 00781



**HILL, FARRER & BURRILL** LLP
ATTORNEYS · ESTABLISHED 1923

REVIEWED
By DHS at 2:39 pm, Mar 26, 2014

One California Plaza
37th Floor
300 South Grand Avenue
Los Angeles, California
90071-3147

PHONE: (213) 620-0460
FAX: (213) 624-4840
DIRECT: (213) 621-0809
E-MAIL: ddennis@hillfarrer.com
WEBSITE: www.hillfarrer.com

March 18, 2014

Via Hand Delivery

The Honorable Council President and
Members of the City Council
of the City of Los Angeles
City Hall
200 N. Spring Street
Los Angeles, CA 90012

    Re:    **Closed Session March 19, 2014, *Lavan, et al. v. City of Los Angeles*, U.S.D.C. Case No. CV11-02874 PSG (AJWx), Ninth Circuit Case No. 11-56253.**

Dear Council President and Members:

    We have been asked by several property owners in the Skid Row and Central City East area to investigate the implications of the City Council adopting a settlement in the above referenced action that would permit homeless residents of the City's sidewalks in this area to leave their belongings unattended for periods of time and would prevent City sanitation or police from removing the belongings. We understand that the proposed settlement may be discussed in closed session so it is difficult to evaluate the precise terms and conditions on which any settlement would be based. We therefore request and encourage the Council to make public any debate on any settlement proposal for this matter so that all stakeholders can consider it and be heard.

    The question before the Council involves reaching a balance between the legitimate rights of the homeless residents to protect their belongings against unreasonable seizures and the rest of the public, property owners, residents, business owners, and visitors in the Skid Row Central City East area to clean, safe and healthy public sidewalks. There are ways to achieve this without permitting anyone to leave unattended belongings on the sidewalks for periods of time. Some of those remedies have already been implemented with the assistance of property owners in the area, specifically the Homeless Property Possession Check-in Center run by the Central City East Association. But the extreme homelessness we see in the Skid Row area is a problem that must be addressed as a citywide issue and should not be borne exclusively by the individual property owners in the area. Any action by the Council in the nature of a settlement, or otherwise, that allows unattended belongings to remain on public sidewalks for periods of time in violation of current City ordinances will have a

The Honorable Council President and Members of the City Council of the City of Los Angeles
March 18, 2014
Page 2

negative impact on the public, health and safety and on property values and business.  It will disproportionately impact property owners and businesses to remedy a citywide homeless problem.  This may be in the nature of inverse condemnation and subject the City to numerous damage claims from adversely affected owners and businesses.  Damages for inverse condemnation compensate a property owner who otherwise would be forced to bear more than a proportionate share of the cost of a public project. *Albers v. County of Los Angeles* (1965) 62 Cal.2d 250, 262.

It also may be that the proposed settlement is a "project" as defined by the California Environmental Quality Act since it "may cause either a direct physical change in the environment or a reasonably foreseeable indirect change in the environment." Pub. Res. Code 21065.  Any discretionary settlement by the City that permits unattended belongings to remain on public sidewalks for periods of time in violation of current City ordinances will have a negative impact on the physical environment of the area and trigger a requirement that the City comply with CEQA.  We are not aware of any CEQA review of any proposed settlement.

Very truly yours,

KEVIN H. BROGAN
OF
HILL, FARRER & BURRILL LLP

DED

HFB 1399166.1 D3274001

CCEA 00783

# EXHIBIT D

## Los Angeles Catholic Worker v. Downtown Industrial District

| Date | Task Code | Time | Description | code |
|---|---|---|---|---|
| 9/28/2015 | DR | 2.6 | Draft meet and confer letter | ltr |
| 10/8/2015 | DR | 0.8 | draft letter to City re: Disco responses, meet and confer | ltr |
| 10/9/2015 | dr | 0.6 | draft meet/confer letter re: D's responses | ltr |
| 10/9/2015 | PP | 0.4 | review discovery, plan for m&c | mtg |
| 10/9/2015 | mt | 1.8 | mtg w/ OPC | mtg |
| 10/15/2015 | dr | 1.6 | draft m&c letter re: D's responses | ltr |
| 10/16/2015 | mt | 1.8 | mtg w/ OPC | mtg |
| 10/16/2015 | pp | 0.3 | review disco, letters in advance of mtg | mtg |
| 10/28/2015 | dr | 0.3 | edit m&c letter | ltr |
| 10/30/2015 | ra | 0.2 | review dec from City | ra |
| 11/2/2015 | ra | 0.5 | review LAPD dec., draft letter re: same | ltr |
| 11/2/2015 | dr | 0.4 | draft M&C letter re: amended responses | ltr |
| 11/2/2015 | dr | 1.4 | draft MTC re: RFPs | mtn |
| 11/14/2015 | dr | 3.1 | draft MTC re: RFPs | mtn |
| 11/15/2015 | dr | 4.2 | legal research, draft MTC | mtn |
| 11/16/2015 | dr | 2.8 | draft MTC re: RFPs | mtn |
| 11/17/2015 | dr | 1.4 | draft MTC re: RFPs | mtn |
| 11/19/2015 | dr | 1.9 | draft MTC re: RFPs | mtn |
| 11/22/2015 | dr | 1.3 | draft MTC re: RFPs | mtn |
| 11/23/2015 | dr | 4.6 | draft MTC re: RFPs | mtn |
| 11/24/2015 | dr | 1.3 | draft declaration re: MTC | mtn |
| 11/24/2015 | dr | 2.1 | draft MTC re: RFPs | mtn |
| 11/24/2015 | dr | 0.4 | draft decl of Myers in support of MTC | mtn |
| 11/24/2015 | dr | 0.6 | prepare exhibits in support of MTC | mtn |
| 11/24/2015 | dr | 0.2 | review emails in preparation for MTC | mtn |
| 11/24/2015 | dr | 0.3 | review time for mtn for attorneys fees | mtn |
| Total | | 36.9 | | |