Fernando Gaytan (SBN 224712) fgaytan@lafla.org
Shayla R. Myers (SBN 264054) smyers@lafla.org
Jeanne Nishimoto (SBN 280064)
**LEGAL AID FOUNDATION OF LOS ANGELES**
7000 S. Broadway
Los Angeles, CA 90003
Tel: (213) 640-3983
Fax: (213) 640-3988

Paul L. Hoffman (SBN 71244) hoffpaul@aol.com
Catherine Sweetser (SBN 271142) catherine.sdshhh@gmail.com
**SCHONBRUN SEPLOW HARRIS & HOFFMAN, LLP**
723 Ocean Front Walk, Suite 100
Venice, CA 90291
Tel: (310) 396-0731
Fax: (310) 399-7040

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| LOS ANGELES CATHOLIC WORKER, UNINCORPORATED ASSOCIATION; CANGRESS, NON-PROFIT CORPORATION; HARRY JAMES JONES, LOUIS GRADY, LLOYD HINKLE, WALTER SHOAF, INDIVIDUALS,<br><br>Plaintiff(s),<br><br>vs.<br><br>LOS ANGELES DOWNTOWN INDUSTRIAL DISTRICT BUSINESS IMPROVEMENT DISTRICT, CENTRAL CITY EAST ASSOCIATION, INC., CITY OF LOS ANGELES; DOES 1-10,<br><br>Defendant(s). | CASE NO. CV 14-07344 PSG (AJW)<br><br>**DISCOVERY MATTER**<br><br>PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' EX PARTE APPLICATION FOR SANCTIONS<br><br>Hearing Date: March 21, 2016<br>Time: 11:00 A.M.<br><br>Discovery Cut-off: April 4, 2016<br>Trial: July 19, 2016, 9:00 a.m. |

## I. INTRODUCTION

Despite this Court's unambiguous order to Defendant City of Los Angeles that it complete its production of all documents by March 11, 2016 and that "further delay is simply not acceptable," the City of Los Angeles still has failed to produce a significant number of documents responsive to Plaintiff's' Requests for Production. Since this Court issued its latest order on February 24, 2016, the City has produced only a portion of responsive City emails. The City still has not produced any additional Los Angeles Police Department emails or any additional documents from any other City departments. Further, the City has not produced either a privilege log or written discovery responses, indicating the scope of its search for responsive documents or that the searches have been completed and the City has produced all responsive documents.

Specifically, the City of Los Angeles has failed to produce:

1. All Los Angeles Police Department emails (with the exception of the emails of eight officers, sent and received after March 2013, which were produced on February 1 and 3, 2016);
2. Documents from the following City Departments responsive to Plaintiffs' Requests for Production Nos. 4, 10, 11, 12, 13, 16, 17, 23, 24, 36, 40, 47, 48, 51, 58:
    a. Office of the City Attorney
    b. Department of Public Works
    c. Bureau of Sanitation
    d. City Controller's Office
    e. Office of the Chief Administrative Office;
    f. City Council offices;
    g. The Mayor's office

3. Email communications from City Attorneys whose first names begin with the letters D-Z, as well as emails from Carmen Trutanich, Bernie Brown, and others;
4. Email communications sent by/received from the following City departments:
    a. Office of the Controller
    b. Office of the Chief Administrative Office
    c. Office of the City Clerk
5. Email communications from a number of individual City employees, including important Council staff from Council District 14;
6. Internal email communications between City employees, and emails between the City and third parties;
7. An updated privilege log;
8. Written responses describing the scope of the searches and verifying under penalty of perjury that all responsive documents have been produced.

## II. THE CITY HAS FAILED TO PRODUCE THE MAJORITY OF THE HIGHLY RELEVANT DOCUMENTS IT PROMISED TO PRODUCE ON JANUARY 11, 2016

The City has failed to produce the vast majority of documents responsive to Plaintiffs' requests, and has provided no explanation for its ongoing failure to do so, other than to blame City departments for failing to respond to its requests.

### a. LAPD emails

Since this Court ordered the City to complete production by March 11, 2016, the City has not produced a single additional LAPD email. To date, the City has produced only the emails of eight specific officers, and only from the time period of March 2013 to the present. Even that production contained significant issues, which

Plaintiffs addressed in a letter to the City Attorney, and to which the City Attorney has never responded.

Plaintiffs were forced to depose the City's PMK on the LAPD email system, who confirmed that 1) the City could run a global search of emails; 2) that a backup system of emails sent and received prior to March 2013 exists and that this backup system is frequently used to respond to discovery requests, CPRA litigation, and internal investigations; 3) there was no technical reason why the City could not have conducted the search at any time since January 11, 2016; and 4) the LAPD had not received a request to search for responsive emails, and as a result, they had not yet begun searching for emails.

Even with this testimony, the City continued to dispute the fact that a global search could be run for responsive emails sent and received after March 2013. On February 26, 2016 the City Attorney's office finally agreed that the City could in fact run a global search of LAPD emails. Despite this acknowledgement, the City still has not run the searches or produced any additional documents.

On February 23, 2016, in order to expedite the production of documents, Plaintiffs offered to further limit the number of emails that needed to be searched for responsive documents. Defendant agreed to provide Plaintiffs with a proposed list of custodians, which Plaintiffs agreed to consider, provided the list included all supervisory officers within the Central Division for the relevant time period. Defendant agreed to provide Plaintiffs with the list immediately. To date, and despite a number of requests for this list, the City has not provided Plaintiffs with this list, any additional documents, or any further information about when or if it intends to provide any additional emails.

### b. City emails

Defendant produced approximately 40,000 emails and attachments from the City of Los Angeles on the afternoon of Monday, March 14, 2016; however, despite the volume, the production remains incomplete.

The production did not include emails from the City Clerk's office, the Chief Administrative Office, and the Controller's Office. The production also left out the emails of any City Attorney whose first name starts with the letters D-Z, as well as a number of City Attorneys whose names begin with letters A-C (notably, Carmen Trutanich); emails from City Council member Jose Huizar's Chief of Staff, Ana Cuba; and any emails from the office of former Mayor Antonio Villaraigosa. Nor did the production include any emails that were not sent and/or received by CCEA staff.

In addition, the City did not produce any internal City email communications about subjects germane to this litigation, despite agreeing on February 23, 2016 that these documents would be responsive to Plaintiffs' requests and that the City would produce them.[1] Instead, the City appears to have limited its search for responsive documents to only those sent or received by CCEA staff.

Plaintiffs and Defendant City have already met and conferred numerous times on this issue. Plaintiffs agreed that the City could use search terms to search for responsive documents; however, Plaintiffs took issue with the City's proposed terms "CCEA" and "Central City East", because as the City agreed on February 23, such terms would leave out a large number of responsive documents.

Plaintiffs provided Defendant City a list of proposed search terms on February 25, to which Defendant did not respond. Despite Defendant's agreement to use these terms, the production on March 14 appears to have been the result of the both under- and over-inclusive search terms "CCEA" and "Central City East". As a result, Plaintiffs have had to wade through thousands of documents not requested and

---

[1] The production did include, however, a significant number of emails and attachments that were not responsive to Plaintiffs' requests. They included, for example, no less than 15 emails and attachments of an invitation to a birthday happy hour in 2013; spam emails advertising products endorsed by Oprah Winfrey; and all email blasts sent by the Planning Department regarding every new development in the downtown area.

not relevant to this litigation, and worse yet, still have not received other email communications that are highly relevant.

### c. Other Documents

Since Plaintiffs' counsel filed our supplemental declaration in support of the application, the City has not produced any additional documents responsive to Requests for Production 4, 10, 11, 16, 36, 40, 47, 48, and 51 since this Court issued its latest order on February 24, 2016.  Nor has the City produced any non-email written communications, or documents referring to or recording oral communications, responsive to Requests 12, 13, 17, 23, 24, 47 or 58.  As discussed above, even the production of some limited emails on March 14, three days past the deadline set by the court, was woefully deficient.

### d. Privilege Log and Written Responses

Finally, the City has not provided an updated privilege log or written responses.

At the hearing on January 11, 2016, this Court criticized Defendant for its failure to produce an adequate privilege log, which included only statements that the City had withheld "various" documents on the basis of a number of privileges.  This Court stopped short of finding that the City had waived privileges; however, despite this Court's admonition, the City still has not produced anything even remotely resembling a privilege log.

The City has also not produced the written responses with a description of the searches conducted and a verified statement that the City has produced all documents in its possession, custody or control.  This information is critical, and was an important part of Plaintiffs' Motion to Compel.  In particular, the City's initial and supplemental responses were extremely ambiguous, and the City refused to provide any information about the searches it had conducted to find responsive documents.  After meeting and conferring on January 11, and explaining to Mr. Whitaker in particular, that the City's answers were unacceptable, the City agreed to provide these

1 written responses. In light of the City's past responses and the fact that the City has
2 now produced responsive documents that it had refused to produce, these responses
3 are critical, and the City agreed to produce them.

### III. A CONTEMPT ORDER AND FURTHER SANCTIONS ARE MORE THAN JUSTIFIED AT THIS POINT

The City's complete disregard for this Court's multiple orders and its failure to produce these documents is inexcusable. Plaintiffs have made every effort to obtain these documents and have expended significant resources in the process-- first by meeting and conferring for two months to no avail, then by filing a motion to compel, to which the City filed no substantive response to justify its refusal to produce these documents and which resulted in the City agreeing to produce all documents sought by Plaintiffs, based on agreements reached in October 2016. Even since this Court ordered the production of documents in January, which the City has ignored, Plaintiffs have had to continue to fight for these documents, to no avail. Defendant's failure to abide by this Court's orders and its failure to produce discovery has prejudiced Plaintiffs, who have now had to take a number of depositions without these documents and have had to complete discovery as to CCEA without the benefit of City discovery. Moreover, without the production of documents, which are extremely important to this litigation, Plaintiffs will be irreparably prejudiced.

Therefore, evidentiary sanctions are appropriate at this point. In determining whether evidentiary sanctions are appropriate, the relevant question is whether an evidentiary sanction is just and is related to the specific documents withheld or destroyed. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 709 (1982). In *Insurance Corporation of Ireland,* the Supreme Court found a sanction to be just when an initial request was made in July and in December the sanctioned party had not even attempted to retrieve the information. *Id*. In that case, the sanctioned party repeatedly failed to comply after agreeing to comply within specific time periods. *Id*. At 707-08. Evidentiary sanctions finding against the

sanctioned party on the claim at issue (there, the issue of personal jurisdiction) were upheld by the Supreme Court as both just and sufficiently related to the claim. *Id*. at 707-09. The repeated failure to produce the documents after agreeing to do so was seen as a concession of the merits as to that claim. *Id*.

In *Chilcutt v. United States*, 4 F.3d. 1313 (5th Cir. 1993), the court similarly ordered evidentiary sanctions under Federal Rule of Civil Procedure 37 after finding that the government had purposely withheld an accident log and informed Plaintiffs that it did not exist, although one of the witnesses later testified under oath that it did exist. The court in that case deemed that the prima facie case had been established by plaintiffs. This case resembles that one as here, Plaintiffs were repeatedly informed that a global email search of LAPD emails could not be completed and that no emails could be retrieved for prior to March 2013. When Plaintiffs' counsel deposed Defendants' IT expert for the LAPD, he then informed Plaintiffs that emails could be retrieved prior to March 2013 and that a global email search of LAPD emails could be done and would take roughly a week. Myers Decl, Exh.B.

Given the continued refusal to produce emails from the former Mayor's office, the City Clerk's office, and the City Attorney's office (from any city attorneys whose names do not begin with A through C), the court should enter the following facts as true: The City was aware of the Central City East Association's policies and procedures regarding the handling of homeless people's unattended property in the Downtown Industrial District; and City policymakers at the highest levels, including at the City Attorney's office, City Clerk's office, and the Mayor's office, encouraged the policies and procedures used by CCEA in 2014 to handle homeless people's unattended property. These facts are reasonably related to the City's continued refusal to produce emails from these specific offices and reasonably related to the City's refusal to produce any internal City documents that were not emails with CCEA.

Moreover, the court should enter an order finding the following fact as true, given that the City has currently refused to produce and has obfuscated the truth about its ability to produce LAPD emails prior to March 2013: LAPD officers had a custom, policy, or practice of requesting that LADID officers seize unattended property.

At this point, Plaintiffs request that this Court exercise its discretion and issue orders that will either compel Defendants to respond, or if not, remedy the prejudices caused by Defendant's malfeasance. Specifically, Plaintiffs request:

1. This Court issue a Report and Recommendation to the District Court, finding the City of Los Angeles in Contempt of this Court's January 11, January 29, and February 25, 2016 orders;
2. Levy fines payable to the Court in the amount set by this Court and accruing day to day as long as the City remains in Contempt of this Court's orders;
3. The court should enter some or all of the following facts as true:
    a. The City was aware of the Central City East Association's policies and procedures regarding the handling of homeless people's unattended property in the Downtown Industrial District; and
    b. City policymakers at the highest levels, including at the City Attorney's office, City Clerk's office, Chief Administrative Office, and the Mayor's office, encouraged the specific policies and procedures used by CCEA between 2011 and 2014 to handle homeless people's unattended property; and
    c. LAPD officers had a custom, policy, or practice of requesting that LADID officers seize unattended property.
4. Enter Default Judgment against the City of Los Angeles.

In addition, Plaintiffs request the Court award Plaintiffs the full cost of obtaining this discovery, including Fees and Costs in the amount of $38,818.49 for the time and expense incurred by Plaintiffs in obtaining this discovery. Plaintiffs further request

1 that the Court award the Plaintiffs the costs of three future second-sessions of
2 depositions of Miranda Paster, Sergeant Walker, and Captain Oreb. Defendant City
3 of Los Angeles has already agreed to provide these three people for a second session
4 due to the delay in production. Plaintiffs expect the costs of these depositions to be
5 $7750.00. *See* Declaration of Shayla Myers in Support of Reply ¶17. Thus, Plaintiffs
6 are requesting a total of $46, 568.00 in fees and costs.

Dated: March 16, 2016         Legal Aid Foundation of Los Angeles
                              Schonbrun Seplow Harris & Hoffman, LLP


                              By:   /s Shayla R. Myers
                                    Shayla R. Myers
                                    Attorneys for Plaintiffs

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' APPLICATION FOR SANCTIONS**